IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| MALIBU LIGHTING CORPORATION, et al.,[1] | ) | Case No. 15-12080 (___) |
| | ) | |
| Debtors. | ) | (Joint Administration Requested) |

**APPLICATION FOR AN ORDER**
**APPOINTING KURTZMAN CARSON CONSULTANTS LLC**
**AS CLAIMS AND NOTICING AGENT FOR THE DEBTORS PURSUANT TO**
**28 U.S.C. § 156(C), 11 U.S.C. § 105(A) AND LOCAL BANKRUPTCY RULE 2002-1(F)**

The debtors and debtors in possession in the above-captioned cases (collectively,

the "Debtors") hereby move for entry of an order, substantially in the form of **Exhibit C** hereto

(the "Retention Order") pursuant to section 156(c) of title 28 of the United States Code and

section 105(a) of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy

Code"), appointing Kurtzman Carson Consultants LLC ("KCC") as claims and noticing agent in

the Debtors' cases (the "Section 156(c) Application"). In support of the Section 156(c)

Application, the Debtors respectfully represent as follows:

**Jurisdiction And Venue**

1.      The United States Bankruptcy Court for the District of Delaware (the

"Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the

*Amended Standing Order of Reference from the United States District Court for the District of*

---

[1]    The Debtors, together with the last four digits of each Debtor's tax identification number, are: Malibu Lighting Corporation (8205); Outdoor Direct Corporation f/k/a The Brinkmann Corporation (9246); National Consumer Outdoors Corporation f/k/a Dallas Manufacturing Company, Inc. (1153); Q-Beam Corporation (1560); Smoke 'N Pit Corporation (9951); Treasure Sensor Corporation (9938); and Stubbs Collections, Inc. (6615). The location of the Debtors' headquarters and service address is 4215 McEwen Road, Dallas, TX 75244.

*Delaware*, dated February 29, 2012.  This matter is a core proceeding within the meaning of 28

U.S.C. § 157(b)(2), and the Debtors confirm their consent pursuant to Rule 9013-1(f) of the

Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the

District of Delaware (the "Local Rules") to the entry of a final order by the Court in connection

with this Motion to the extent that it is later determined that the Court, absent consent of the

parties, cannot enter final orders or judgments in connection herewith consistent with Article III

of the United States Constitution.

      2.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

      3.      The statutory basis for the relief requested herein are section 156(c) of title

28 of the United States Code, Section 503(b) of title 11 of the United States Code, Rules 2002-

1(f) and 9013-(m) of the Local Rules.

<h3 style="text-align:center"><u>Background</u></h3>

      4.      On the date hereof (the "Petition Date"), the Debtors each filed with this

Court a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  The Debtors are

operating their businesses and managing their properties as debtors and debtors in possession

pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

      5.      The factual background regarding the Debtors, including their current and

historical business operations and the events precipitating the chapter 11 filing, is set forth in

detail in the *Declaration of David M. Baker in Support of First Day Motions* (the "First Day

Declaration") filed concurrently herewith and fully incorporated herein by reference.[2]

---

[2] Capitalized terms not otherwise defined herein shall have the meaning ascribed to them in the First Day
Declaration.

## Relief Requested

6.      This Section 156(c) Application is made pursuant to 28 U.S.C. § 156(c),

section 105(a) of the Bankruptcy Code and Rule 2002-1(f) of the Local Rules for an order

appointing KCC to act as the claims and noticing agent in order to assume full responsibility for

the distribution of notices and the maintenance, processing, and docketing of proofs of claim

filed in the Debtors' cases.  The Debtors' selection of KCC to act as the claims and noticing

agent has satisfied the Court's *Protocol for the Employment of Claims and Noticing Agents*

*under 28 U.S.C. § 156(c)*, in that the Debtors have obtained and reviewed engagement proposals

from at least two (2) other court-approved claims and noticing agents to ensure selection through

a competitive process.  Moreover, the Debtors submit, based on all engagement proposals

obtained and reviewed, that KCC's rates are competitive and reasonable given KCC's quality of

services and expertise.  The terms of retention are set forth in the Engagement Agreement

annexed hereto as **Exhibit A** (the "Engagement Agreement"); provided, however, that KCC is

seeking approval solely of the terms and provisions as set forth in this Application and the

proposed order attached hereto.

7.      Although the Debtors have not yet filed their schedules of assets and

liabilities, they anticipate that there will be in excess of 5,000 entities to be noticed.  In view of

the number of anticipated claimants and the complexity of the Debtors' businesses, the Debtors

submit that the appointment of a claims and noticing agent is both necessary and in the best

interests of both the Debtors' estates and their creditors.

DOCS_DE:202313.1 10821/001

8.     KCC has acted as the claims and noticing agent in numerous cases of comparable size, including several cases currently pending in the United States Bankruptcy Court for this District. *See, e.g.*, *In re Quiksilver, Inc.*, Case No. 15-11880 (BLS) (Bankr. D. Del. Sept. 10, 2015); *In re Haggen Holdings, LLC*, Case No. 15-11874 (KG) (Bankr. D. Del. Sept. 8, 2015); *In re Cal Dive Int'l, Inc.*, Case No. 15-10458 (CSS) (Bankr. D. Del. Mar. 3, 2015); *In re FCC Holdings, Inc.*, Case No. 14-11987 (CSS) (Bankr. D. Del. Aug. 25, 2014); *In re Source Home Entm't, LLC*, Case No. 14-11553 (KG) (Bankr. D. Del. June 24, 2014); *In re Dolan Co.*, Case No. 14-10614 (BLS) (Bankr. D. Del. Mar. 25, 2014); *In re Sorenson Commc'ns, Inc.*, Case No. 14-10454 (BLS) (Bankr. D. Del. Mar. 4, 2014); *In re Physiotherapy Holdings, Inc.*, Case No. 13-12965 (KG) (Bankr. D. Del. Nov. 14, 2013); *In re Synagro Techs. Inc.*, Case No. 13-11041 (BLS) (Bankr. D. Del. Apr. 24, 2013); *In re Otelco Inc.*, Case No. 13-10593 (MFW) (Bankr. D. Del. Mar. 26, 2013); and *In re Ormet Corp.*, Case No. 13-10334 (MFW) (Bankr. D. Del. Feb. 27, 2013).[3]

9.     By appointing KCC as the claims and noticing agent in these cases, the distribution of notices and the processing of claims will be expedited, and the clerk's office will be relieved of the administrative burden of processing what may be an overwhelming number of claims. In support of this Section 156(c) Application, the Debtors submit the Declaration of Evan Gershbein attached hereto as **Exhibit B** (the "Gershbein Affidavit").

10.     This Section 156(c) Application pertains only to the work to be performed by KCC under the Clerk's delegation of duties permitted by 28 U.S.C. § 156(c) and

---

[3] Because of the voluminous nature of the orders cited herein, they are not attached to the Section 156(c) Application. Copies of these orders, however, are available on request.

4

Rule 2002-1(f) of the Local Rules, and any work to be performed by KCC outside of this scope

is not covered by this Section 156(c) Application or by any Order granting approval hereof.

11.    By separate application, the Debtors will seek authorization to retain and

employ KCC as administrative advisor in these chapter 11 cases pursuant to section 327(a) of the

Bankruptcy Code because the administration of these chapter 11 cases will require KCC to

perform duties outside the scope of 28 U.S.C. § 156(c).

12.    Specifically, KCC will perform the following tasks in its role as claims

and noticing agent (the "Claims and Noticing Services"), as well as all quality control relating

thereto:

    a.    Prepare and serve required notices and documents in the cases in accordance with the Bankruptcy Code and the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") in the form and manner directed by the Debtors and/or the Court, including (i) notice of the commencement of the cases and the initial meeting of creditors under 11 U.S.C. § 341(a), (ii) notice of any claims bar date, (iii) notices of transfers of claims, (iv) notices of objections to claims and objections to transfers of claims, (v) notices of any hearings on a disclosure statement and confirmation of the Debtors' plan or plans of reorganization, including under Bankruptcy Rule 3017(d), (vi) notice of the effective date of any plan, and (vii) all other notices, orders, pleadings, publications and other documents as the Debtors or Court may deem necessary or appropriate for an orderly administration of the cases.

    b.    Maintain an official copy of the Debtors' schedules of assets and liabilities and statement of financial affairs (collectively, "Schedules"), listing the Debtors' known creditors and the amounts owed thereto;

    c.    Maintain (i) a list of all potential creditors, equity holders, and other parties-in-interest; and (ii) a "core" mailing list consisting of all parties described in Rules 2002(i), (j) and (k) and those parties that have filed a notice of appearance pursuant to Bankruptcy Rule 9010; update said lists and make said lists available upon request by a party-in-interest or the Clerk;

    d.    Furnish a notice to all potential creditors of the last date for the filing of proofs of claim and a form for the filing of a proof of claim, after such notice and form are approved by this Court, and notify said potential creditors of

5

the existence, amount and classification of their respective claims as set forth in the Schedules, which may be effected by inclusion of such information (or the lack thereof, in cases where the Schedules indicate no debt due to the subject party) on a customized proof of claim form provided to potential creditors;

      e.     Maintain a post office box or address for the purpose of receiving claims and returned mail, and process all mail received;

      f.     For all notices, motions, orders, or other pleadings or documents served, prepare and file or caused to be filed with the Clerk an affidavit or certificate of service within seven (7) business days of service which includes (i) either a copy of the notice served or the docket numbers(s) and title(s) of the pleading(s) served, (ii) a list of persons to whom it was mailed (in alphabetical order) with their addresses, (iii) the manner of service, and (iv) the date served;

      g.     Process all proofs of claim received, including those received by the Clerk's Office, and check said processing for accuracy, and maintain the original proofs of claim in a secure area;

      h.     Maintain the official claims register for each Debtor (the "Claims Registers") on behalf of the Clerk; upon the Clerk's request, provide the Clerk with certified, duplicate unofficial Claims Registers; and specify in the Claims Registers the following information for each claim docketed: (i) the claim number assigned, (ii) the date received, (iii) the name and address of the claimant and agent, if applicable, who filed the claim, (iv) the amount asserted, (v) the asserted classification(s) of the claim (*e.g.*, secured, unsecured, priority, *etc.*), (vi) the applicable Debtor, and (vii) any disposition of the claim;

      i.     Implement necessary security measures to ensure the completeness and integrity of the Claims Registers and the safekeeping of the original claims;

      j.     Record all transfers of claims and provide any notices of such transfers as required by Bankruptcy Rule 3001(e);

      k.     Relocate, by messenger or overnight delivery, all of the court-filed proofs of claim to the offices of KCC, not less than weekly;

      l.     Upon completion of the docketing process for all claims received to date for each case, turn over to the Clerk copies of the claims register for the Clerk's review (upon the Clerk's request);

      m.     Monitor the Court's docket for all notices of appearance, address changes, and claims-related pleadings and orders filed and make necessary notations on and/or changes to the claims register;

      n.     Assist in the dissemination of information to the public and respond to requests for administrative information regarding the case as directed

by the Debtors or the Court, including through the use of a case website and/or call center.

       o.     If the cases are converted to chapter 7, contact the Clerk's Office within three (3) days of the notice to KCC of entry of the order converting the cases;

       p.     Thirty (30) days prior to the close of these cases, to the extent practicable, request that the Debtors submit to the Court a proposed Order dismissing KCC and terminating the services of such agent upon completion of its duties and responsibilities and upon the closing of these cases;

       q.     Within seven (7) days of notice to KCC of entry of an order closing the chapter 11 cases, provide to the Court the final version of the claims register as of the date immediately before the close of the cases; and

       r.     At the close of these cases, box and transport all original documents, in proper format, as provided by the Clerk's Office, to (i) the Federal Archives Record Administration, located at Central Plains Region, 200 Space Center Drive, Lee's Summit, MO 64064 or (ii) any other location requested by the Clerk's Office.

13.     The Claims Registers shall be opened to the public for examination without charge during regular business hours and on a case-specific website maintained by KCC.

14.     KCC shall not employ any past or present employee of the Debtors for work that involves the Debtors' bankruptcy cases.

15.     The Debtors respectfully request that the undisputed fees and expenses incurred by KCC in the performance of the above services be treated as administrative expenses of the Debtors' estates pursuant to 28 U.S.C. § 156(c) and 11 U.S.C. § 503(b)(1)(A) and be paid in the ordinary course of business without further application to or order of the Court. KCC agrees to maintain records of all services showing dates, categories of services, fees charged and expenses incurred, and to serve monthly invoices on the Debtors, the office of the United States Trustee, counsel for the Debtors, counsel for any official committee, if any, monitoring the

expenses of the Debtors and any party-in-interest who specifically requests service of the

monthly invoices.  If any dispute arises relating to the Engagement Agreement or monthly

invoices, the parties shall meet and confer in an attempt to resolve the dispute; if resolution is not

achieved, the parties may seek resolution of the matter from the Court.

    16.    The Debtors provided KCC with a prepetition retainer in the amount of

$25,000.  KCC seeks to first apply the retainer to all pre-petition invoices, and thereafter, to have

the retainer replenished to the original retainer amount, and thereafter, to hold the retainer under

the Engagement Agreement during the cases as security for the payment of fees and expenses

incurred under the Engagement Agreement.

    17.    KCC has informed the Debtors that, subject to Court approval, it will bill

at its standard hourly rates, which are set forth in the KCC Agreement for Services attached as

**Exhibit A** to this Section 156(c) Application.

    18.    In connection with its retention as claims and noticing agent, KCC

represents in the Gershbein Affidavit, among other things, that:

    a.    KCC will not consider itself employed by the United States

government and shall not seek any compensation from the United States

government in its capacity as the claims and noticing agent in the cases;

    b.    By accepting employment in the cases, KCC waives any rights to

receive compensation from the United States government in connection with the

Debtors' cases;

8

c.      In its capacity as the claims and noticing agent in the cases, KCC will not be an agent of the United States and will not act on behalf of the United States; and

d.      It is a "disinterested person" as that term is defined in section 101(14) of the Bankruptcy Code with respect to the matters upon which it is to be engaged.

19.      To the extent that there is any inconsistency between this Application, the Retention Order and the Engagement Agreement, the Retention Order shall govern.

20.      This Section 156(c) Application complies with the *Protocol for the Employment of Claims and Noticing Agents Under 28 U.S.C. § 156(c)* and conforms to the standard Section 156(c) Application in use in this Court.

### Notice

21.      The Debtors will provide notice of this Motion to the following parties, or their counsel, if known: (a) the Office of the United States Trustee; (b) the Debtors' thirty-five (35) largest unsecured creditors on a consolidated basis; (c) the Debtors' prepetition and postpetition lenders; and (d) any party that has requested notice pursuant to Bankruptcy Rule 2002. As the Motion is seeking "first day" relief, within two business days of the hearing on the Motion, the Debtors will serve copies of the Motion and any order entered respecting the Motion as required by Local Rule 9013-1(m). The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

WHEREFORE, the Debtors request entry of an order, in the form annexed hereto

as **Exhibit C**, authorizing KCC to act as claims and noticing agent for the maintenance and

processing of claims and the distribution of notices.

Dated:  October ___, 2015

MALIBU LIGHTING CORPORATION, *et al.*

By:  David M. Baker
Chief Restructuring Officer