IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| MALIBU LIGHTING CORPORATION, et al.,[1] | ) Case No. 15-12080 (KG) |
| | ) |
| Debtors. | ) (Jointly Administered) |

**Hearing Date: October 27, 2015, at 10:00 a.m. prevailing Eastern time**
**Objection Deadline: October 26, 2015, at 9:00 a.m. prevailing Eastern time**

## MOTION OF DEBTORS MALIBU LIGHTING CORPORATION AND OUTDOOR DIRECT CORPORATION F/K/A THE BRINKMANN CORPORATION FOR THE ENTRY OF AN ORDER AUTHORIZING THE DEBTORS TO CONTINUE THEIR PREPETITION BONUS PROGRAM FOR CERTAIN NON-INSIDER EMPLOYEES

Malibu Lighting Corporation ("MLC") and Outdoor Direct Corporation f/k/a The Brinkmann Corporation ("ODC" and, together with MLC, the "Debtors"), two of the debtors and debtors in possession in the above-captioned chapter 11 cases, file this motion (the "Motion") for the entry of an order authorizing the Debtors to continue their prepetition bonus program for certain non-insider employees pursuant to sections 363(b)(1) and 503(c) of Title 11 of the United States Code (the "Bankruptcy Code"). In support of this Motion, the Debtors respectfully state as follows:

### Jurisdiction and Venue

1. The United States Bankruptcy Court for the District of Delaware (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the

---

[1] The Debtors, together with the last four digits of each Debtor's tax identification number, are: Malibu Lighting Corporation (8205); Outdoor Direct Corporation f/k/a The Brinkmann Corporation (9246); National Consumer Outdoors Corporation f/k/a Dallas Manufacturing Company, Inc. (1153); Q-Beam Corporation (1560); Smoke 'N Pit Corporation (9951); Treasure Sensor Corporation (9938); and Stubbs Collections, Inc. (6615). The location of the Debtors' headquarters and service address is 4215 McEwen Road, Dallas, TX 75244.

*Amended Standing Order of Reference from the United States District Court for the District of Delaware*, dated February 29, 2012. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2), and the Debtors confirm their consent pursuant to Rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules") to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

2. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3. The statutory bases for the relief sought herein are sections 363(b)(1) and 503(c) of the Bankruptcy Code.

**Background**

A. **General Case Background**

4. On October 8, 2015 (the "Petition Date"), the Debtors, and certain of their affiliates, each filed with this Court a voluntary petition for relief under chapter 11 of the Bankruptcy Code. The Debtors are operating their businesses and managing their properties as debtors and debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

5. The factual background regarding the Debtors, including their current and historical business operations and the events precipitating their chapter 11 filings, is set forth in

2

detail in the *Declaration of David M. Baker in Support of First Day Motions* (the "First Day Declaration") filed on the Petition Date and fully incorporated herein by reference.[2]

**B. The Bonus Program**

6. MLC and ODC each commenced a chapter 11 case to implement an orderly liquidation of their remaining assets and complete a wind down of their operations (the "Liquidation").

7. The Liquidation is critical to maximizing recoveries for the Debtors' creditors. The Liquidation cannot be completed without the continued efforts, dedication, and support of certain of the Debtors' corporate and plant supervisory level employees (collectively, the "Key Employees"). The Key Employees have in-depth knowledge of the Debtors' prepetition businesses, assets, liabilities, counterparties, and operations, and are absolutely essential to the Debtors' ability to effectuate the Liquidation in an efficient and expeditious manner that will maximize value.

8. In this context, and prior the Petition Date, the Debtors and their advisors worked closely to develop a narrowly-tailored bonus program for essential non-executive Key Employees (the "Bonus Program") who are not "insiders" as such term is defined in the Bankruptcy Code. The Bonus Program is summarized below.[3] The maximum aggregate amount that may be paid out under the Bonus Program is $455,311, subject to the satisfaction of specified criteria. The breakdown of the Bonus Program by employer is as follows:

---

[2] Capitalized terms used but not defined herein shall have the meaning ascribed to them in the First Day Declaration.
[3] The Debtors will supply additional detail to the Office of the United States Trustee and the Court, upon request, and to certain other parties in interest, including any Official Committee of Unsecured Creditors, upon execution of a satisfactory confidentiality agreement. The Debtors are concerned that, even a public disclosure by title or category of employee could be sufficient to identify a particular employee.

3

DOCS_DE:202333.2

| Employer | Bonus Program Pool |
|---|---|
| Malibu Lighting Corporation | $26,522 |
| Outdoor Direct Corporation | $428,789 |
| **Total** | **$455,311.00** |

9. Specifically, under the terms of the Bonus Program, a Key Employee is eligible to receive a payment (the "Bonus Payment") equal to a half-week's pay, based on his or her current annual salary for each full or partial week that the Key Employee remains employed by the Company (less applicable withholdings). The Bonus Program generally started the week beginning August 10, 2015, and expected separation dates vary from the end of October 2015 through the end of December 2015, which means that the applicable continuation periods for which employees are being compensated run from approximately 11 weeks to approximately 19 weeks. Four employees of MLC are covered by the Bonus Program, and twenty-five employees of ODC are covered by the Bonus Program. Payments to the MLC employees range from a low of $3,400 to a high of $10,625 and average approximately $6,630. Payments to the ODC employees range from a low of $2,998 to a high of $50,000 (of which only two employees are entitled to a bonus in excess of $40,000) and average approximately $17,150.

10. To be eligible to receive a Bonus Payment, the Key Employee must, among other things:

    i. Remain actively employed by the Debtors until a termination date is selected by the Debtors;

    ii. Not engage in any of the following conduct in connection with their employment: misconduct, insubordination, neglect of their job duties, unexcused absenteeism, gross negligence fraud,

4

                misappropriation, embezzlement, sabotage, breach of contract, or other conduct undertaken in bad faith or injurious to the Debtors; and

iii.      Upon termination, timely execute and return to the Debtors a *Separation Agreement and General Release*, which will contain standard terms such as a release of all claims against the Debtors, confidentiality of proprietary information, and non-disparagement.

11.      The Bonus Payment, if earned by a Key Employee, will be paid in a lump sum within ten (10) business days following the date on which the Debtors timely receive a signed *Separation Agreement and General Release*.

12.      Prior to the Petition Date, each Key Employee signed a letter agreement acknowledging and agreeing to the terms and conditions of the Bonus Program.

13.      As further explained below, the Bonus Program is a sound and absolutely necessary exercise of the Debtors' business judgment under the circumstances. The applicable statutory requirements under the Bankruptcy Code are satisfied.

### C.    The Key Employees

14.      Given the nature of the Debtors' businesses, the success of the Liquidation is directly correlated to the industry knowledge, experience, and skillset of the Debtors' workforce. The Debtors have identified essential employees that possess institutional knowledge and familiarity with the Debtors' day-to-day operations and who are critical to the Debtors' wind down and liquidation process. As noted above, the Key Employees consist of 4 MLC employees and 25 ODC employees. These 29 employees are primarily responsible for managing MLC's and ODC's accounting, finance, logistics, and manufacturing operations.

15.      In identifying the Key Employees, the Debtors undertook a thorough review of their staffing requirements in the context of the Liquidation. Given the Debtors' need

5

to efficiently wind down their businesses, potential eligible employees were evaluated on their level of familiarity with the Debtors' businesses, their experience working with the Debtors' vendor and customer base, and the extent of their role in the Debtors' operations.

16. The Key Employees work across a variety of disciplines and are responsible for facilitating a range of tasks critical to the Debtors' operations, including matters relating to warehouse operations, purchasing, inventory management, finance, human resources, and information technology.

17. None of the Key Employees are "insiders" as such term is defined in section 101(31) of the Bankruptcy Code. Although certain of the Key Employees hold titles such as "vice president" or "director," each such employee must obtain approval from an appropriate senior manager before taking any significant action with respect to the Debtors' corporate policies or the disposition of significant assets. Importantly, none of the Key Employees had any input on any aspect of the Bonus Program, including who would be eligible to participate in the Bonus Program or the criteria and the payments proposed to be made. Further, none of the Key Employees are currently officers of the Debtors or are members of the Debtors' management team or board.

**Relief Requested**

18. The Debtors request the entry of an order, pursuant to sections 363(b)(1) and 503(c)(3) of the Bankruptcy Code, approving the Bonus Program for Key Employees who are not "insiders," as such term is defined in section 101(31) of the Bankruptcy Code. A

proposed form of order granting the relief requested in the Motion is annexed hereto as **Exhibit A**.

### Basis for Relief

A. **The Implementation of the Bonus Program Is a Valid Exercise of the Debtors' Business Judgment**

19. The Bonus Program constitutes a sound exercise of the Debtors' business judgment and should be approved under section 363(b)(1) of the Bankruptcy Code. Section 363(b)(1) provides that "[t]he [debtor], after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). Use of estate property outside the ordinary course of business is entrusted to the sound business judgment of a debtor. *See, e.g., Official Comm. Of Unsecured Creditors v. LTV Corp. (In re Chateaugay)*, 973 F.2d 141, 143 (2d Cir. 1992) (affirming the bankruptcy's courts approval of debtors' asset sale pursuant to section 363(b) as a reasonable exercise of business judgment); *In re Global Crossing Ltd.*, 295 B.R. 726, 743 (Bankr. S.D.N.Y. 2003) (emphasizing the business judgment rule).

20. The Debtors' decision to implement the Bonus Program is a reasonable exercise of business judgment. The Debtors' immediate need to retain Key Employees is self-evident. The Debtors have determined that implementing the Bonus Program will appropriately incentivize and motivate the Key Employees to remain engaged and focused on the Liquidation and carry out the Debtors' objectives and obligations during these chapter 11 cases. As noted herein, the Key Employees possess the special knowledge and expertise necessary to allow MLC and ODC to effectuate a successful wind down strategy. The loss of critical employees will have

7

DOCS_DE:202333.2

a severe adverse impact on the Debtors' businesses as, among other things, it will have a detrimental impact on the morale of the remaining employees and the Debtors' ability to maximize value. The Debtors have concluded that hiring additional professionals or recruiting replacement candidates who not only have experience in the Debtors' industry, but also possess the requisite expertise regarding the Debtors' businesses, would be extremely challenging and more costly than the Bonus Program. Accordingly, implementing the Bonus Program is a valid exercise of the Debtors' business judgment and approval of the Bonus Program is in the best interests of the Debtors and their estates.

**B. The Bonus Program Satisfies the Requirements of Section 503(c) of the Bankruptcy Code**

21. The Bonus Program should also be approved pursuant to section 503(c)(3) of the Bankruptcy Code. For the reasons stated herein, the Bonus Program is justified by the facts and circumstances of these cases. Moreover, the prohibitions and restrictions under section 503(c)(1) do not apply here. Section 503(c)(1) restricts the ability of "insiders" to receive payments as part of retention plans. However, none of the Key Employees are "insiders" (as such term is defined by section 101(31) of the Bankruptcy Code).

a. Section 503(c)(1) Does Not Apply

22. The Bankruptcy Code defines an "insider" to include, among other things, "an officer of the debtor" and a "person in control of the debtor." 11 U.S.C. § 101(31). Courts also have concluded that an employee may be an "insider" if such employee has "at least a controlling interest in the debtor or . . . exercise[s] sufficient authority over the debtor so as to unqualifiably dictate corporate policy and the disposition of corporate assets." *In re Velo*

8

*Holdings, Inc.*, 472 B.R. 201, 208 (Bankr. S.D.N.Y. 2012) (citation omitted). It is well established that an employee's job title, alone, does not make such employee an "insider" as defined by the Bankruptcy Code. *See In re Borders Grp., Inc.*, 453 B.R. 459, 469 (Bankr. S.D.N.Y. 2011) (noting that "[c]ompanies often give employees the title 'director' or 'director-level,' but do not give them decision-making authority akin to an executive" and concluding that certain "director level" employees in that case were not insiders).

23. None of the Key Employees are "insiders," as such term is defined by section 101(31) of the Bankruptcy Code. First, none of the Key Employees have discretionary control over substantial budgetary amounts. Second, all Key Employees must seek authority before taking any significant action relating to strategic decision-making or corporate policy and asset disposition. Third, none of the Key Employees receive equity of the Debtors as part of their compensation structure or are members of the Debtors' board of directors, the executive management team, or participate in the Debtors' corporate governance. Additionally, none of the Key Employees are executive officers of the Debtors. Finally, none of the Key Employees had any say or input whatsoever on any aspect of the Bonus Program. Therefore, none of the Key Employees is an "insider" of the Debtors. As such, the restrictions of section 503(c)(1) of the Bankruptcy Code are inapplicable to the Bonus Program.

b. Section 503(c)(3) Is Satisfied

24. Section 503(c)(3) of the Bankruptcy Code permits payments to a debtor's employees outside the ordinary course of business if such payments are justified by "the facts and circumstances of the case." 11 U.S.C. § 503(c)(3). The majority of courts have found that

9

DOCS_DE:202333.2

this standard is no different from the business judgment standard under section 363(b) of the Bankruptcy Code. *See In re Global Home Prods., LLC*, 369 B.R. 778, 783-87 (Bankr. D. Del. 2007); *In re Velo Holdings, Inc.*, 472 B.R. at 212 (collecting cases); 4 Collier on Bankruptcy ¶ 503.17[4] (Henry J. Sommer & Alan N. Resnick eds. 16th ed. rev. 2012); *see also In re Nobex Corp.*, Case No. 05-20050 (MFW), 2006 Bankr. LEXIS 417, at *6-8 (Bankr. D. Del. Jan. 19, 2006) (finding that "sale-related" incentive pay satisfied the business judgment test requirements of section 363 of the Bankruptcy Code). Accordingly, whether a bonus program is justified by the facts and circumstances of the case and the analysis of whether the approval of such plan is a sound exercise of the debtors' business judgment remains the same.

25. Courts frequently consult a multi-factor test in considering whether an incentive plan is justified by the facts and circumstances of a particular case. For instance, the court in *In re Global Home Products, LLC* examined the following factors:

    a.    whether the plan was calculated to achieve the desired performance;

    b.    whether the costs of the plan were reasonable in the context of the debtor's assets;

    c.    whether the plan was consistent with industry standards;

    d.    whether the debtor engaged in due diligence related to the need for the plan, investigated which key employees needed to be incentivized and what types of plans were generally available in the debtor's particular industry; and

    e.    whether the debtor received independent counsel in performing due diligence and in creating and authorizing the incentive compensation.

*See In re Global Home Prods.*, 369 B.R. at 786. All of these factors are satisfied as to the Bonus Program.

26. First, following an extensive analysis, the Debtors implemented the Bonus Program. As noted above, the Bonus Program was designed to ensure that the Key Employees remain with the Debtors as they implement the Liquidation and wind down of the businesses. The Debtors implemented the Bonus Program after a number of Key Employees expressed a desire to leave the Debtors' employ. Accordingly, the Debtors legitimately believe that failure to implement the Bonus Program will result in a loss of Key Employees. The Key Employees have years of industry experience and a wealth of institutional knowledge and are indispensable to the success of the Debtors' wind down process. Further, a failure to retain the Key Employees would cause the Debtors to incur significant time and money to hire and train replacement employees (assuming it is a possibility), which would, in turn, hinder and/or significantly delay the Liquidation and wind down of the companies.

27. Second, the Bonus Program is judicious in light of the Debtors' assets, liabilities, and earning potential. The maximum cost of the payments under the Bonus Program is $455,311 in the aggegate and covers 29 employees. The Debtors and their professionals concluded that the Bonus Program's cost is well within the range of reasonableness, with each payment reflecting an amount equal to ½ week's pay, based on current annual salary, for each week the Key Employee remains in the employ of the Debtors.

28. Third, the scope of the Bonus Program is fair and reasonable. As noted herein, in identifying participants for the Bonus Program, the Debtors undertook a careful selection process and received input from their professionals in determining the criteria for eligibility. In doing so, the Debtors were able to ensure that the Bonus Program is available only

to those employees who are essential to the Debtors' chapter 11 efforts and to their continued efficient operation.

29. Accordingly, the Bonus Program satisfies section 503(c)(3) of the Bankruptcy Code as it is justified by the facts and circumstances of the chapter 11 cases of MLC and ODC, and should be approved.

C. **Waiver Under Bankruptcy Rule 6004(h) is Appropriate**

30. Bankruptcy Rule 6004(h) provides that an "order authorizing the use, sale, or lease of property is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise." The Debtors request that the order approving this Motion be effective immediately by providing that the fourteen day stay under Bankruptcy Rule 6004(h) is waived.

**Notice**

31. The Debtors will provide notice of this Motion to the following parties, or their counsel, if known: (a) the Office of the United States Trustee; (b) counsel to the Committee, when appointed; (c) the Debtors' prepetition and postpetition lenders; and (d) any party that has requested notice pursuant to Bankruptcy Rule 2002. The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

**No Prior Request**

32. No previous motion or application for the relief sought herein has been made to this or any other court.

WHEREFORE the Debtors respectfully request the entry of an order, granting the relief requested herein and such other and further relief as is just and proper.

Dated: October 9, 2015          PACHULSKI STANG ZIEHL & JONES LLP

/s/ Jeffrey N. Pomerantz
Jeffrey N. Pomerantz (CA Bar No.143717)
Maxim B. Litvak (CA Bar No. 215852)
Michael R. Seidl (DE Bar No. 3889)
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, DE  19899-8705
Telephone: 302/652-4100
Facsimile: 302/652-4400
E-mail:    jpomerantz@pszjlaw.com
           mlitvak@pszjlaw.com
           mseidl@pszjlaw.com

Proposed Counsel for the Debtors