IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| MALIBU LIGHTING CORPORATION, et al.,[1] | ) | Case No. 15-12080 (KG) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |

**Hearing Date:  October 27, 2015, at 10:00 a.m. prevailing Eastern time**
**Objection Deadline:  October 26, 2015, at 9:00 a.m. prevailing Eastern time**

**APPLICATION FOR AN ORDER PURSUANT TO 11 U.S.C. §§ 327 AND 328(A), FED. R. BANKR. P. 2014 AND 5002, AND LOCAL RULE 2014-1, AUTHORIZING THE RETENTION AND EMPLOYMENT OF HILCO IP SERVICES, LLC D/B/A HILCO STREAMBANK AS INTELLECTUAL PROPERTY MARKETING AGENT FOR THE DEBTORS, *NUNC PRO TUNC* TO THE PETITION DATE**

The above-captioned debtors and debtors in possession (the "Debtors") file this application (the "Application") for entry of an order, substantially in the form attached hereto as **Exhibit A**, authorizing the employment and retention of Hilco IP Services, LLC d/b/a Hilco Streambank ("Hilco Streambank") as intellectual property marketing agent ("IP Agent") for the Debtors, *nunc pro tunc* to the Petition Date, in accordance with the terms and conditions set forth in that certain engagement letter, dated as of October 6, 2015 (the "Engagement Letter"), attached hereto as **Exhibit B**. In support of this Application, the Debtors submit the Declaration of David Peress of Hilco Streambank (the "Declaration"), attached hereto as **Exhibit C**. In further support of the Application, the Debtors respectfully state as follows:

---

[1]  The Debtors, together with the last four digits of each Debtor's tax identification number, are:  Malibu Lighting Corporation (8205); Outdoor Direct Corporation f/k/a The Brinkmann Corporation (9246); National Consumer Outdoors Corporation f/k/a Dallas Manufacturing Company, Inc. (1153); Q-Beam Corporation (1560); Smoke 'N Pit Corporation (9951); Treasure Shop Corporation (9938); and Stubbs Collections, Inc. (6615).  The location of the Debtors' headquarters and service address is 4215 McEwen Road, Dallas, TX 75244.

**Jurisdiction**

1.      The United States Bankruptcy Court for the District of Delaware (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware*, dated February 29, 2012.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2), and the Debtors confirm their consent pursuant to Rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules") to the entry of a final order by the Court in connection with this Application to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

2.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3.      The statutory bases for the relief requested herein are sections 327(a) and 328(a) of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code"), Rule 2014(a) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Rule 2014-1 of the Local Rules.

**Background**

4.      On October 8, 2015 (the "Petition Date"), the Debtors each filed with this Court a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  The Debtors are operating their businesses and managing their properties as debtors and debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

2

5.     The factual background regarding the Debtors, including their current and historical business operations and the events precipitating the chapter 11 filing, is set forth in detail in the *Declaration of David M. Baker in Support of First Day Motions* (the "First Day Declaration").[2]

## Relief Requested

6.     The Debtor requires highly specialized assistance of an intellectual property sales and disposition agent in order to optimally monetize the valuable trademarks, patents, copyrights domain names, customer lists and related data (the "Intellectual Property") and related assets, including tooling, equipment, inventory, accounts receivable and other assets (the "Related Assets," and along with the Intellectual Property, the "Assets") of Debtors Outdoor Direct Corporation f/k/a The Brinkman Corporation ("ODC") and Malibu Lighting Corporation ("MLC") as part of these chapter 11 cases.  To this end and by this Application, the Debtors seek to employ and retain Hilco Streambank as their IP Agent in accordance with the terms and conditions of the Engagement Letter, *nunc pro tunc* to the Petition Date, to work with the Debtors' investment banker Piper Jaffray & Co. ("PJC") to market and sell, assign, license or otherwise monetize the Assets as the exclusive agents of the Debtors for the sale of the Assets.

## Hilco Streambank's Qualifications

7.     The Debtors chose Hilco Streambank as their IP Agent because of Hilco Streambank's extensive experience in marketing and sales of intellectual property in and out of bankruptcy proceedings, its knowledge of the relevant industry, its personal familiarity, and

---

[2] Capitalized terms not otherwise defined herein shall have the meaning ascribed to them in the First Day Declaration.

DOCS_DE:202418.1 10821/001

access to the main players in the relevant market, its excellent professional standing and

reputation in the industry, as well as the scores of great results achieved by Hilco Streambank for

its clients.  The Debtors believe that Hilco Streambank will significantly maximize the overall

recovery to the Debtors' estate through properly developed and targeted marketing campaign of

the Intellectual Property, along with the Related Assets.

8.      Hilco Streambank is highly qualified to serve as the Debtors' IP Agent

because it is the intellectual property valuation and disposition arm of Hilco Global, a family of

companies that are recognized as national leaders in the provision of appraisal and disposition

services, many of which are bankruptcy-related.  Hilco Streambank is an indirect subsidiary of

and ultimately controlled by Hilco Trading, LLC.  Hilco Streambank has significant expertise in

monetizing intellectual property assets.

9.      The principals of Hilco Streambank have provided similar disposition

services to companies experiencing operational and financial difficulties across a broad spectrum

of industries, including in chapter 11 restructuring and other distressed company circumstances.

Specifically, Hilco Streambank or its principals have coordinated the marketing and sale of

intellectual property assets for numerous retailers and consumer products companies, including,

but not limited to, Anchor Blue Holding Corp., Borders, Mervyn's, Heilig Meyers, Montgomery

Ward, KB Toys, Kids Brands, Goody's Family Clothing, Circuit City, Whitehall Jewelers,

Movie Gallery/Hollywood Video, RadioShack, and Linens 'N Things.  As part of those

engagements, Hilco Streambank was responsible for, among other things, identifying buyers,

4

marketing the intellectual property assets, conducting bidding auctions, negotiating the terms of sales and working to ensure closing execution.

10.    Hilco Streambank is highly qualified to maximize the value of the Debtors' Intellectual Property. Indeed, an experienced firm such as Hilco Streambank will fulfill a critical need for essential, highly specialized services that will complement those provided by the Debtors' other bankruptcy professionals such as PJC. Hilco Streambank's resources and capabilities will greatly assist the Debtors' efforts to achieve the maximum return for creditors and other stakeholders. Accordingly, the Debtors submit that the retention of Hilco Streambank on the terms and conditions set forth herein and in the Engagement Letter is necessary and appropriate, in the best interests of the Debtors' estates, creditors, and all other parties in interest, and should be granted in all respects.

### Hilco Streambank's Disinterestedness

11.    To the best of the Debtors' knowledge, information and belief, Hilco Streambank is not related to or connected with and neither holds nor represents any interest adverse to the Debtors, their estates, their creditors or any other party in interest herein or their respective attorneys or the United States Trustee or anyone employed in the Office of the United States Trustee in the matters for which Hilco Streambank is proposed to be retained.

12.    Consequently, Hilco Streambank is a "disinterested person," as that term is defined in section 101(14) of the Bankruptcy Code and as required by section 327(a) of the Bankruptcy Code. The Declaration, executed on behalf of Hilco Streambank in accordance with section 327(a) of the Bankruptcy Code and Bankruptcy Rule 2014, is appended hereto and

incorporated herein by reference.  The Debtors' knowledge, information and belief regarding the

matters set forth in this paragraph are based, and made in reliance, upon the Declaration.  Hilco

Streambank has informed the Debtors that it has researched the client databases of Hilco

Streambank to determine and to disclose, whether it is performing or has performed services for

any significant creditors, equity security holders or insiders in unrelated matters.

13.     Hilco Streambank has indicated that it will promptly update the

Declaration, disclosing any material developments regarding the Debtors or any other pertinent

relationships that require disclosure in the above-referenced cases, if and when any such

developments or relationships come to Hilco Streambank's attention.

<u>**Services to be Rendered**</u>

14.     Hilco Streambank has agreed to provide assistance to the Debtors in

accordance with the terms and conditions which are set forth in the Declaration filed in support

of this Application and in the Engagement Letter which is appended hereto as **Exhibit B** and

incorporated herein by reference.

15.     Subject to the approval of the Court, the Debtor proposes to retain Hilco

Streambank as its IP Agent on the terms and conditions set forth herein and in the Engagement

Letter. Pursuant to the Engagement Letter,[3] Hilco Streambank is engaged to market and sell,

assign, license, or otherwise dispose of the Assets by:

      a.     collecting and securing all available information and data concerning the
          Assets;

---

[3] This Application includes various summaries of, and is qualified in its entirety by, the Engagement Letter.  In the event there is a discrepancy or conflict between this Application and the Engagement Letter, the Engagement Letter shall control in all respects.

6

     b.      preparing marketing materials designed to inform potential purchasers of the availability of the Assets for sale, assignment, license, or other disposition;

     c.      developing and, jointly with PJC, executing a sales and marketing program designed to elicit proposals to acquire the Assets from qualified acquirers with a view toward completing one or more sales, assignments, licenses, or other disposition of the Assets potentially following an auction or auctions under section 363 of the Bankruptcy Code; and

     d.      assisting the Debtors in connection with the conduct of a potential auction and the transfer of the Assets to the acquirer(s) who offer the highest or otherwise best consideration for the Assets.

Hilco Streambank shall work with PJC and the Debtors to execute all marketing and sales activities related to the Assets.

### No Duplication of Services

16.     All of the services that Hilco Streambank will provide to the Debtors will be at the request of the Debtors and performed in accordance with customary market practice of its sales agents. The services to be provided by Hilco Streambank are highly specialized, and, therefore, any duplication with work performed by other professionals retained by the Debtors is unlikely. To the contrary, Hilco Streambank's employment will enable the other professionals to focus on their competencies and core tasks related to the efficient and successful navigation through the chapter 11 process. Hilco Streambank will work cooperatively with other professionals, including (without limitation) PJC, to integrate any respective work conducted by the professionals on behalf of the Debtors and coordinate such work with the working group of the Debtors' management, employees, and other professionals to eliminate any unnecessary duplication or overlap of work. The above services are imperative to enable the Debtors to maximize the value of their estates.

7

## **Compensation**

17.    Hilco Streambank will seek the Court's approval of its compensation for

services rendered and reimbursement of expenses incurred in connection with the Debtors'

chapter 11 cases pursuant to applicable provisions of the Bankruptcy Code, the Bankruptcy

Rules, the Local Rules, the guidelines established by the Office of the United States Trustee for

the District of Delaware (the "U.S. Trustee Guidelines"), and any other applicable procedures

and orders of the Court, and consistent with the proposed compensation set forth in the

Engagement Letter.

18.    Hilco Streambank has received no retainer or other payment from the

Debtors.  In the one year prior to the Petition Date, Hilco Streambank received no payment from

the Debtors.  Hilco Streambank does not hold any prepetition claim against the Debtors for fees

or expenses.

19.    Subject to the provisions of paragraph 4 of the Engagement Letter

(regarding reimbursement of expenses), for its services hereunder, Hilco Streambank shall be

paid all or a portion of a transaction fee (the "Transaction Fee") in the form of a commission.

The Transaction Fee, which shall be equal to 10% of the gross proceeds generated from the sale,

assignment, license, or other dispositions of the Assets, shall be allocated equally between PJC

and Hilco Streambank, provided that Hilco Streambank shall be entitled to the first $100,000 of

the Transaction Fee, if any.

20.    The Transaction Fee shall be paid upon the successful consummation of

any transaction or transactions involving the sale, assignment, license, or other disposition of the

DOCS_DE:202418.1 10821/001

Assets from the proceeds of such transaction(s) notwithstanding any liens, claims, or other encumbrances on the Assets or the proceeds thereof.

21.    The Engagement Letter provides that the Debtors shall indemnify Hilco Streambank and hold it harmless against any and all losses, claims, damages, liabilities and expenses incurred by Hilco Streambank, including without limitation, reasonable legal expenses, arising from, related to, or in any way connected with the negotiation, execution and/or rendering of services by Hilco Streambank for this engagement, unless such losses, claims, damages, liabilities and expenses resulted from the fraud, negligence or willful misconduct of Hilco Streambank in breach of its employment under this Application and the Engagement Letter.

22.    The Debtors negotiated the terms of the Engagement Letter, including the indemnification provision, with Hilco Streambank in good faith and at arm's length. The Debtors believe that the terms are customary and reasonable for professional engagements, both out-of-court and in this chapter 11 case.

### Time Keeping

23.    It is not Hilco Steambank's general practice to keep detailed time records similar to those customarily kept by attorneys. Notwithstanding the foregoing, Hilco Steambank will file fee applications for the allowance of compensation for services rendered and reimbursement of expenses incurred pursuant to the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, the U.S. Trustee Guidelines, and any applicable orders of the Court.

DOCS_DE:202418.1 10821/001

24.    Because Hilco Steambank does not ordinarily maintain contemporaneous time records in one-tenth hour increments or provide or conform to a schedule of hourly rates for its professionals, Hilco Steambank should, pursuant to Local Rule 2016-2(d), be excused from compliance with such requirements.  This Court has issued orders in previous cases excusing Hilco Streambank from maintaining time records.  *See In re Ritz Camera & Image, L.L.C.*, Case No. 12-11868 (KG) (Bankr. D. Del. Aug. 24, 2012) (Hilco Streambank and its professionals excused from maintaining time records, and shall instead submit a certification of commissions and expenses to Court and United States Trustee); *In re Berkline/BenchCraft Holdings, LLC*, Case No. 11-111369 (MFW) (Bankr. D. Del. May 1, 2011) (excused from filing interim or final fee applications and complying with monthly, quarterly or final compensation procedures applicable to professionals); *In re Anchor Blue Holding Corp.*, Case No. 11-10110 (PJW) (Bankr. D. Del. Feb. 2, 2011) (same).

## Basis for Relief

25.    Section 327(a) of the Bankruptcy Code provides that a debtor is authorized to employ professional persons "that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the [Debtors] in carrying out [their] duties under this title."  11 U.S.C. § 327(a).  Additionally, section 328(a) of the Bankruptcy Code, which provides, in relevant part, that the Debtors "with the court's approval, may employ or authorize the employment of a professional person under section 327 . . . on any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, on a fixed or percentage fee basis, or on a contingent fee basis . . . ."  11 U.S.C. § 328(a).

10

Accordingly, section 328(a) of the Bankruptcy Code permits the compensation of investment bankers on more flexible terms that reflect the nature of their services and market conditions.

26.     The Debtors submit that the Court's approval of the Debtors' retention of Hilco Steambank in accordance with the terms and conditions of the Engagement Letter is warranted. First, the requirements of section 327 of the Bankruptcy Code are satisfied. The Debtors believe the services of PJC and Hilco Streambank collectively are necessary to market and effectuate the Asset Sale. Hilco Steambank has extensive experience and an excellent reputation in providing high-quality intellectual property marketing and sales services. The Debtors submit that Hilco Steambank is well qualified to provide its services to the Debtors in a cost-effective, efficient, and timely manner.

27.     The Debtors believe that the Transaction Fee is market-based, fair, and reasonable under the standards set forth in section 328(a) of the Bankruptcy Code. The Transaction Fee reflects Hilco Streambank's commitment to the variable level of time and effort necessary to perform the services to be provided, its particular expertise, and the market prices for its services for engagements of this nature both out of court and in the chapter 11 context.

28.     Courts in this and other jurisdictions have approved similar arrangements to the Transaction Fee under section 328 of the Bankruptcy Code. *See, e.g.*, *In re Vertis Holdings, Inc.*, Case No. 12-12821 (CSS) (Bankr. D. Del. Nov. 20, 2012) (approving a flexible fee structure and engagement letter under section 328 on the grounds that both were reasonable); *In re Neb. Book Co.*, Case No. 11-12005 (PJW); (Bankr. D. Del. Aug. 10, 2011) (same); *In re Appleseed's Intermediate Holdings LLC*, Case No. 11-10160 (KG) (Bankr. D. Del. Feb. 23,

11

2011) (same); *In re Local Insight Media Holdings, Inc.*, Case No. 10-13677 (KG) (Bankr. D.

Del. Dec. 20, 2010) (same); *In re Landsource Communities Dev. LLC*, Case No. 08-11111 (KJC)

(Bankr. D. Del. Aug. 27, 2008) (same).

## Notice

29.    The Debtors will provide notice of this Motion to the following parties, or

their counsel, if known: (a) the Office of the United States Trustee; (b) the Debtors' thirty-five

(35) largest unsecured creditors on a consolidated basis; (c) the Debtors' prepetition and

postpetition lenders; and (d) any party that has requested notice pursuant to Bankruptcy Rule

2002.  The Debtors submit that, in light of the nature of the relief requested, no other or further

notice need be given.

## No Prior Request

30.    No previous application for the relief requested herein has been made in

these chapter 11 cases.

WHEREFORE, the Debtors respectfully requests that the Court enter an order in

the form attached hereto as **Exhibit A**, granting the relief requested herein and such other and

further relief as the Court deems appropriate.

*[Remainder of page intentionally left blank]*

12

Dated:  October 9, 2015

MALIBU LIGHTING CORPORATION, et al.

By:  David M. Baker
Chief Restructuring Officer