**THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

|  |  |  |
|---|---|---|
|  | : |  |
| In Re: | : | Case No. 15-12080 (KG) |
|  | : |  |
| MALIBU LIGHTING CORPORATION, *et al.*,[1] | : | Chapter 11 |
|  | : |  |
| Debtors. | : | Jointly Administered |

**Objection Deadline: October 30, 2015, at 4:00 p.m. ET**
**Hearing Date: November 4, 2015, at 2:00 pm ET**

**RESPONSE OF THE U.S. INTERNATIONAL TRADE COMMISSION TO MOTION OF THE DEBTOR OUTDOOR DIRECT CORPORATION F/K/A THE BRINKMANN CORPORATION FOR AN ORDER PURSUANT TO SECTION 362 OF THE BANKRUPTCY CODE DETERMINING THAT THE AUTOMATIC STAY IS INAPPLICABLE TO PENDING LITIGATION AND GRANTING RELIEF FROM THE STAY WITH RESPECT THERETO**

The United States International Trade Commission ("the Commission") respectfully

submits this response to the motion ("the Motion") [Docket No. 96] of Debtor Outdoor Direct

Corporation f/k/a The Brinkmann Corporation (the "Debtor" or "ODC") for an order pursuant to

section 362 of the Bankruptcy Code lifting the automatic stay as to two appeals pending before

the U.S. Court of Appeals for the Federal Circuit ("the Federal Circuit").  Counsel for ODC and

counsel for A&J Manufacturing, LLC and A&J Manufacturing, Inc. (collectively, "A&J") have

informed the Commission that they agree to lift the stay as to the two appeals.  ODC and A&J

also agree to the Commission's proposed amendment to the proposed Order lifting the stay.  As

amended, the proposed Order takes no position on whether Commission proceedings and appeals

therefrom are excepted from the automatic stay.  In view of the fact that the parties have agreed

---

[1]  The Debtors, together with the last four digits of each Debtor's tax identification number, are: Malibu Lighting Corporation (8205); Outdoor Direct Corporation f/k/a The Brinkmann Corporation (9246); National Consumer Outdoors Corporation f/k/a Dallas Manufacturing Company, Inc. (1153); Q-Beam Corporation (1560); Smoke 'N Pit Corporation (9951); Treasure Sensor Corporation (9938); and Stubbs Collections, Inc. (6615). The location of the Debtors' headquarters and service address is 4215 McEwen Road, Dallas, TX 75244.

to lift the stay, a detailed legal analysis of Commission proceedings and whether they are

excepted from the automatic stay need not be reached in this proceeding.

To the extent this Court denies the Commission's request to amend the proposed Order

lifting the stay, the Commission, in the alternative, seeks a ruling that, under the terms of 11

U.S.C. § 362(b)(4), the automatic stay is inapplicable because the two pending Federal Circuit

appeals arise from the Commission's exercise of its police and regulatory authority under the

trade laws of the United States pursuant to 19 U.S.C. § 1337.

## I.    ODC'S PROPOSED ORDER LIFTING THE STAY SHOULD BE GRANTED AS AMENDED BY THE COMMISSION

### A.    ODC's Motion to Lift the Stay Should Be Granted

Subject to the Commission's proposed amendment, the Commission supports ODC's

request for entry of an order to lift the automatic stay as to the two pending Federal Circuit

appeals arising from the same underlying Commission investigation undertaken pursuant to

section 337 of the Tariff Act of 1930, as amended, 19 U.S.C. § 1337.  The Commission

investigation was instituted on September 26, 2013, based on allegations brought by A&J of

violations of section 337 in the sale for importation, importation, or sale within the United States

after importation of certain multiple mode outdoor grills and parts thereof by reason of

infringement of U.S. Patent No. 8,381,712.  ODC was one of several respondents named in the

notice of investigation.  Following an evidentiary hearing presided over by an administrative law

judge ("ALJ"), the Commission found certain grills imported by ODC and other respondents to

infringe one or more of the asserted patent claims, and found that the respondents did not prove

those claims to be invalid.  The Commission received written submissions from the parties on the

issues of remedy, the public interest, and bonding, and solicited responses from the public.

Based on the written submissions and other record evidence, the Commission concluded that the

trade laws warrant the exclusion from the United States of the infringing grills and that exclusion of these grills does not harm "the public health and welfare, competitive conditions in the United States economy, the production of like or directly competitive articles in the United States, and United States consumers."  19 U.S.C. § 1337(d).  On February 3, 2015, the Commission issued an exclusion order and cease and desist orders against ODC and other respondents.  The President of the United States, who may reject the Commission's orders for "policy reasons," 19 U.S.C. § 1337(j)(2), did not do so here.

A&J and ODC filed separate petitions for review of the Commission's February 3, 2015, determination with the Federal Circuit.  A&J sought further relief, while ODC argued that the asserted patent claims are invalid.  ODC informed the Federal Circuit of its voluntary petition under Chapter 11 of the Bankruptcy Code earlier this month.  On October 16, 2015, the Clerk of the Federal Circuit, acting *sua sponte* and without briefing from the parties, assumed that the appeals were subject to the automatic stay under 11 U.S.C. § 362(a).  *See* Order attached as Exhibit A.

### B.    The Proposed Order Should Be Modified

As explained below, the Commission disputes whether the automatic stay under section 362(a) applies to the two pending Federal Circuit appeals.  However, should this Court grant the Commission's request to amend the proposed Order lifting the stay, that substantive issue— whether these appeals are excepted from the automatic stay—need not be reached in this proceeding.

Specifically, the Commission moves that the Court grant the proposed Order amended as follows:

> "3.    Whether or not the ~~The~~ automatic stay applies, the stay is lifted as to the ITC Appeals so that such appeals may proceed."

ODC and A&J have informed the Commission that they do not oppose this amendment to the proposed Order.  The effect of this amendment is to take no position on whether the automatic stay applies to Commission investigations and appeals therefrom.  Absent the amendment, the proposed Order suggests that the automatic stay does apply to the two pending appeals.  Such a conclusion, without legal analysis in support therefor, poses substantial concerns for the Commission in the operation of its statutory duties and conflicts with determinations of the district courts that have reached this issue, as will be discussed further, *infra*.

### C.    The Stay Should Be Lifted Simultaneously as to Both Appeals

In June 2015, the Commission, A&J, ODC, and intervening parties moved jointly before the Federal Circuit for companion case treatment—*i.e.*, to have the two appeals briefed simultaneously, and calendared for oral argument before the same merits panel on the same day—in view of the substantial factual and legal overlap between the two appeals.  On July 10, 2015, the Federal Circuit granted the joint motion and indicated that both appeals would be assigned to the same merits panel.  *See* Order attached as Exhibit B.  In light of the Federal Circuit's order, this Court should lift the stay as to both appeals so that they both may proceed simultaneously before the Federal Circuit.

## II.    IF THE ISSUE OF THE APPLICABILITY OF THE AUTOMATIC STAY IS REACHED, THE COMMISSION SUBMITS THAT SECTION 337 INVESTIGATIONS AND APPEALS THEREFROM ARE EXCEPTED FROM THE AUTOMATIC STAY UNDER 11 U.S.C. § 362(B)(4)

Absent a decision by this Court lifting the stay in the manner requested by the Commission, the Court must decide whether the appeals in dispute are excepted from the automatic stay.  Under the terms of 11 U.S.C. § 362(b)(4), the automatic stay is inapplicable to the exercise of police and regulatory authority by the Commission when it investigates potential violations of the trade laws of the United States pursuant to 19 U.S.C. §1337.  The scope and

purpose of section 337 proceedings such as those at issue here do not, and statutorily cannot, include the pursuit of money damages. Rather, the goal of these Commission investigations is the exclusion from importation of articles that are found to infringe U.S. intellectual property and unfair competition laws. In this way, the Commission, working with United States Customs and Border Protection ("Customs"), works to safeguard the integrity of commerce, and the system of intellectual innovation upon which much of the modern United States economy is built. As explained below, the Commission's section 337 investigations fall squarely within the plain meaning of the statutory exception for police and regulatory authority, the intent of Congress, the purpose of the bankruptcy statute, and applicable precedent.

### A.    The Statutory and Regulatory Framework Governing Section 337 Proceedings

The U.S. International Trade Commission is an independent federal agency created by Congress with broad investigative responsibilities in matters of international trade. The agency's governing statute, 19 U.S.C. § 1337, tasks the Commission with investigating, *inter alia*, the importation into the United States of articles that "infringe a valid and enforceable United States patent" or articles that "are made, produced, processed, or mined under, or by means of, a process covered by the claims of a valid and enforceable United States patent." 19 U.S.C. § 1337(a)(1)(B). Specifically, the Commission is required by statute to "investigate any alleged violation of [section 1337] on complaint under oath or upon its initiative." *Id.* § 1337(b)(1). Significantly, a Commission "investigation" is defined as "a formal Commission inquiry instituted to determine whether there is a violation of section 337 of the Tariff Act of 1930." 19 C.F.R. § 210.3.

Where, as here, the Commission investigation relies on information submitted in a complaint by a private party, it is noteworthy that the filing of the complaint does not initiate a

formal section 337 investigation; rather, the action simply results in a "preinstitution proceeding," in which the Commission "examine[s] the complaint for sufficiency and compliance," and performs a preliminary investigation. *Id*. §§ 210.8, 210.9. Importantly, the formal investigation based a complaint does not begin until the Commission "determine[s] whether the complaint is properly filed and whether an investigation should be instituted on the basis of the complaint," and thereafter provides official notice by publication in the Federal Register. *Id.* § 210.10.

The matter is then referred to an ALJ for an initial determination on whether a violation of section 337 has occurred. The process is adversarial in nature, and is governed by the Administrative Procedure Act's requirements for formal adjudications, 5 U.S.C. §§ 554, 556-57, including the taking of discovery and the presentation of evidence at a formal hearing. 19 C.F.R. §§ 210.15-18, 210.26-38. The parties often include, as it did in this investigation, a Commission investigative attorney. *Id.* § 210.3. That investigative attorney participates in the pre-trial and trial aspects of the investigation, representing the public interest. At the conclusion of this process, the ALJ certifies the record to the Commission and makes an initial determination concerning whether a section 337 violation has occurred. *Id.* § 210.42. In reviewing the initial determination *sua sponte* or on a party's petition, the Commission accepts written submissions from the parties, other government agencies, and interested members of the public on issues including remedy and the public interest. *Id.* § 210.46.

When the Commission determines that a violation of section 337 has occurred, it may direct that the articles concerned be excluded from entry into the United States and/or that the respondent cease and desist from continuing to violate section 337. 19 U.S.C. § 1337(d), (f). Neither an exclusion order nor a cease and desist order includes any monetary damages or

penalty.  Failure to obey a cease and desist order, however, can result in a future enforcement proceeding in which civil penalties can be assessed.  *Id*. § 1337(f)(2); 19 C.F.R. § 210.75(b)(4)(ii).  Notwithstanding the finding that a violation has occurred, the Commission may conclude that relief is not warranted on the ground that it may adversely affect "the public health and welfare, competitive conditions in the United States economy, the production of like or directly competitive articles in the United States, and United States consumers."  19 U.S.C. §§ 1337(d)(1), (f)(1).

Pursuant to section 337, Commission orders are reviewed by the President to ensure that they comport with trade policies and are subject to the President's disapproval for "policy reasons."  *Id*. § 1337(j)(2); *see also* 70 Fed. Reg. 43251 (July 26, 2005) (Presidential delegation of authority to the United States Trade Representative).  Absent Presidential action, the Commission's determination becomes final.  19 U.S.C. § 1337(j)(4).  Any person adversely affected by the Commission's final determination may appeal such determination to the Federal Circuit for review.  *Id.* § 1337(c).

### B.    Legal Background Concerning the Statutory Exception to the Automatic Stay for Governmental Units Exercising Police and Regulatory Authority

#### *1.    Statutory Text and Legislative History*

When a debtor files for bankruptcy, section 362(a) of the Bankruptcy Code imposes a broad automatic stay prohibiting "all entities" from, *inter alia*, "the commencement or continuation . . . of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title;" 11 U.S.C. § 362(a)(1), and "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate;" *id.* § 362(a)(3).

Congress, however, has created certain statutory exceptions that prevent the operation of the automatic stay. The police and regulatory power exception at issue here states, as follows:

> (b) The filing of a petition under section 301, 302, or 303 of this title . . . does not operate as a stay—
> . . .
> (4) under paragraph (1), (2), (3), or (6) of subsection (a) of this section, of the commencement or continuation of an action or proceeding by a governmental unit . . . to enforce such governmental unit's . . . police and regulatory power, including the enforcement of a judgment other than a money judgment, obtained in an action or proceeding by the governmental unit to enforce such governmental unit's . . . police or regulatory power;

*Id.* § 362(b)(4). The Bankruptcy Code, thus, by its plain terms provides that a governmental unit may commence an action or continue an action to enforce the governmental unit's police or regulatory power. Enforcement is defined in terms of police power and is defined in contradistinction to a money judgment.

The legislative history of the Bankruptcy Reform Act of 1978, explains that:

> Paragraph (4) excepts commencement or continuation of actions and proceedings by governmental units to enforce police or regulatory powers. Thus, where a governmental unit is suing a debtor to prevent or stop a violation of fraud, environmental protection, consumer protection, safety or similar police or regulatory laws, or attempting to fix damages for violation of such a law, the action or proceeding is not stayed under the automatic stay.

S. Rep. 95-989 at 52, S. Rep. No. 989, 95th Cong., 2d Sess. 1978, 1978 U.S.C.C.A.N. 5787, 1978 WL 8531; s*ee also In re Bankr. Appeal of Allegheny Health, Educ., and Research Found.*, 252 B.R. 309, 325 (W.D. Pa. 1999). The situation here falls exactly within that legislative history.

2.        *Relevant Case Law*

In deciding whether a proceeding falls within the parameters of the police or regulatory

powers exception, the U.S. Court of Appeals for the Third Circuit generally applies two "related

and somewhat overlapping" tests:

> The pecuniary purpose test asks whether the government primarily
> seeks to protect a pecuniary governmental interest in the debtor's
> property, as opposed to protecting the public safety and health. The
> public policy test asks whether the government is effectuating
> public policy rather than adjudicating private rights. If the purpose
> of the law is to promote public safety and welfare or to effectuate
> public policy, then the exception to the automatic stay applies. If,
> on the other hand, the purpose of the law is to protect the
> government's pecuniary interest in the debtor's property or
> primarily to adjudicate private rights, then the exception is
> inapplicable.

*In re Nortel Networks, Inc.*, 669 F.3d 128, 139-40 (3d. Cir. 2011); *see also United States v.*

*Nicolet, Inc.*, 857 F.2d 202, 209 (3d Cir. 1988).

In *Nortel*, the Court of Appeals for the Third Circuit had to decide whether the police and

regulatory exception to the automatic stay applied to certain ongoing pension proceedings in the

United Kingdom.  669 F.3d at 130.  The Court of Appeals noted that neither of the appellants

was a governmental unit but, rather, was a private party or a government-created but privately

funded entity.  *Id.* at 138-39.  The Court of Appeals also found that, because the United Kingdom

proceedings primarily sought to adjudicate private rights and to determine the liability for a

financial shortfall in a private pension plan, the proceedings did not protect the public safety and

health as those terms have been applied in the context of the exception.  *Id.* at 141-142.   Unlike

the appellants in *Nortel*, there can be no dispute that the Commission is a "governmental unit" as

defined under 11 U.S.C. § 101(27).  In further contrast to *Nortel*, the Commission investigates

potential violations of our trade laws to determine whether Customs should prevent importation

of articles subject to certain public policy exceptions, which is an issue of public, not private,

rights.  *See infra* at 15-17.

In *Nicolet*, the complaint brought by the United States pursuant to the Comprehensive

Environmental Response, Compensation, and Liability Act (CERCLA), 42 U.S.C. § 9604,

sought reimbursement of environmental response costs expended and to be expended in the

future to clean-up an asbestos site.  857 F.2d at 207.  The Court of Appeals for the Third Circuit

examined whether the government sought redress for private wrongs as opposed to regulatory

compliance.  *Id.* at 209.  Despite the fact that the United States sought monetary relief for past

actions, the Court looked to the primary purpose of CERCLA and determined that the suit

constituted a police and regulatory function:

> In pressing this lawsuit, the United States is not seeking redress for
> private wrongs or a remedy for a private contract breach. It is not
> suing in its role as a consuming participant in the national
> economy, *i.e.*, suing a negligent motorist for damage to a GSA van
> or a paperclip manufacturer for a defective order. *Cf. Mora*, 805
> F.2d 440 [(1st Cir. 1986)].  Rather, the government brought suit
> against Nicolet in compliance with its explicit mandate under
> CERCLA "to remove or arrange for the removal of ... [any]
> hazardous substance, pollutant, or contaminant."

*Id*.  The Court of Appeals in *Nicolet* thus recognized that some government actions properly

subject to the police or regulatory powers exception to the automatic stay may result in a benefit

to a private individual as well as the intended remedy for harm to the public.  *See EEOC v. Rath*

*Packing Co.*, 787 F.2d 318, 325 (8th Cir. 1986) ("[W]hen the EEOC acts, albeit at the behest of

and for the benefit of specific individuals, it acts also to vindicate the public interest in

preventing employment discrimination.") (quoting *Gen. Tel. Co. v. EEOC*, 446 U.S. 318, 326

(1980)).  As in *Nicolet*, the underlying Commission proceeding at issue here is excepted from the

automatic stay because the Commission is seeking compliance with its explicit mandate to

investigate any alleged violation of section 337 on complaint under oath or upon its initiative.  19 U.S.C. § 1337(b)(1).

Other Courts of Appeals have also applied the "pecuniary interest" test and the "public policy" test to determine whether a proceeding falls within the police and regulatory power exception to the automatic stay.  *See Safety-Kleen, Inc. (Pinewood) v. Wyche*, 274 F.3d 846, 865 (4th Cir. 2001); *see also*, *U.S. ex rel. Doe v. X, Inc.*, 246 B.R. 817, 820 (E.D. Va. 2000) (*qui tam* action brought by a private party against debtor under False Claims Act considered to be an exercise of government police and regulatory power).  The Court of Appeals for the First Circuit has explained that the exception is for actions enforcing generally applicable regulatory laws. *See In re Corporacion de Servicios Medicos Hosp*., 805 F.2d 440, 445 (1st Cir. 1986).  And the Court of Appeals for the Sixth Circuit held that "courts should examine the type of enforcement action brought and the relationship between a particular suit and Congress's (or a state's) declared public policy."  *Chao v. Hosp. Staffing Serv., Inc.*, 270 F.3d 374, 389 (6th Cir. 2001). "When an action furthers both public and private interests and the private interests do not significantly outweigh the public benefit from enforcement, courts should defer to the legislature's decision to vest enforcement authority in the executive and recognize such actions as within 'such governmental unit's police and regulatory power,' as that term is used in § 362(b)(4)."  *Id.*

The first tribunal to consider and directly address the issue in connection with Commission section 337 proceedings determined that the automatic stay did not apply. Specifically, in 2001, the Bankruptcy Court for the Southern District of Ohio held that Commission investigations are not subject to automatic stay under the Bankruptcy Code. *Innovative Home Prods., Inc. v. Chamberlain Grp. Inc*., Case No. 01-33239, Adv. Pro. No. 01-

3161, Order (Bankr. S.D. Ohio Oct. 18, 2001) and Oral Decision, Tr. at 55 (Bankr. S.D. Ohio

Oct. 9, 2001). In holding that Commission investigations are police and regulatory actions, the

Court considered and specifically held that the filing of a complaint by a private party does not

change the public character of the Commission action:

> The court is aware of the fact there are certainly a number of plain
> meaning authorities recently have been issued by the Supreme
> Court in the context of interpreting the Bankruptcy Code, but such
> a reading of 362(b)(4), the court believes, would be at odds with
> reality. As Ms. Goldberg pointed out the state and federal
> regulatory agencies are not omniscient and that typically regulatory
> proceedings by state governmental agencies or federal agencies are
> initiated by the filing of a complaint by a private party. The court
> would cite the Equal Employment Opportunity Commission v.
> Rath Packing Company case which is reported at 787 F.2d 318,
> which I believe was cited in one of the defendant's papers, where
> the court noted that in the context of an EEO investigation that was
> initiated by the filing of complaints by employees of the company,
> when the EEOC acts, albeit, for the benefit of specific individuals,
> it acts also to vindicate the public interest. And I believe [that]
> statement applies with equal force here.

*Id.* at Oral Decision, Tr. at 55 (attached as Exhibit C).

More recently, the United States District Court for the Eastern District of Virginia

reversed a bankruptcy court order applying the automatic stay to a section 337 investigation

involving a respondent in bankruptcy. *U.S. Int'l Trade Comm'n v. Jaffe*, 433 B.R. 538, 547

(E.D. Va. 2010). Initially, the Bankruptcy Court for the Eastern District of Virginia rejected the

Commission's argument that its section 337 investigation was exempt from the automatic stay

under the police and regulatory power exception because (1) the investigation was brought by

private party, LSI Corporation, not the Commission; and (2) the Commission was not acting in a

regulatory capacity. *Id.* at 540. On appeal, the District Court for the Eastern District of Virginia

rejected both bases for the bankruptcy court's order and reversed the bankruptcy court. First, the

district court concluded that the Commission controlled whether or not to commence a section

337 investigation and defined the scope of the investigation (*id.* at 544):

> [A]s the Federal Register confirms, the ITC took affirmative steps to order the commencement of a § 337 investigation. *See* 73 Fed. Reg. at 29634. Although information forming the basis of the investigation was initially provided by LSI in its complaint, it is important to note that the investigation did not begin with the filing of the LSI complaint. Indeed, 19 C.F.R. § 210.8 defines the filing of the complaint to be a "*pre*institution proceeding" that simply prompts the ITC to examine the complaint and conduct "*informal* investigatory activity." 19 C.F.R. §§ 210.8 to 210.9 (emphases added). Rather, the ITC § 337 investigation commenced only after the ITC considered the LSI complaint and concluded that an investigation was warranted. *See* 73 Fed. Reg. at 29634 (explaining that investigation would commence given the ITC's consideration of the complaint).

433 B.R. at 543 (emphasis original).  Second, the district court concluded that there is no doubt

that the Commission investigation is an action that promotes public safety and welfare and

effectuates public policy, rather than an action that protects the government's pecuniary interest

in the debtor's property or adjudicates private rights (*id.* at 544):

> To begin with, the ITC's investigation is not an attempt to protect its pecuniary interest in the debtor's property, and indeed no party has represented that the ITC in fact has any pecuniary interest in Qimonda's estate. Furthermore, the statutes and regulations governing ITC § 337 investigations plainly evidence an objective purpose of protecting the public interest at each stage of the ITC investigation. For example, the ITC—in consultation with various other federal agencies, *see* 19 U.S.C. § 1337(b)(2)—is required to consider the effect its determinations will "have upon the public health and welfare, competitive conditions in the U.S. economy, the production of like or directly competitive articles in the United States, and U.S. consumers." 19 C.F.R. § 210.50(a)(2). To that end, the ITC may decline to order exclusion of products that violate § 337 of the Tariff Act of 1930 on the ground that exclusion would not further "public health and welfare, competitive conditions in the United States economy, the production of like or directly competitive articles in the United States, and United States consumers." 19 U.S.C. § 1337(d)(1). And finally, the President is empowered to disapprove an ITC determination specifically on public policy grounds. *See id.* § 1337(j)(2).

433 B.R. at 544-45 (footnote omitted).  Accordingly, the District Court for the Eastern District of Virginia held that the Commission investigation involving violations of section 337 was an action brought by a governmental unit to enforce the governmental unit's police and regulatory power within the meaning of section 362(b)(4).  *Id.* at 547.

The Commission is aware of a decision by the Bankruptcy Court for the District of Delaware finding that a section 337 investigation was subject to the automatic stay.  *See In re Spansion, Inc.*, 418 B.R. 84, 95 (Bankr. D. Del. 2009), *vacated sub nom. Samsung Elecs. Co. v. Ad Hoc Consortium of Floating Rate Noteholders*, No. 09-0836 (RBK), 2010 WL 2636115 (D. Del. June 29, 2010).  However, that decision relied on the incorrect reasoning of the Bankruptcy Court for the Eastern District of Virginia, which was subsequently reversed as explained above. *See In re Spansion, Inc.*, 418 B.R. at 95 (citing *In re Qimonda AG*, No. 09-14766, 2009 WL 2210771, at *6 (Bankr. E.D. Va. July 16, 2009)); *Jaffe*, 433 B.R. at 547.  Further, the Commission appealed the Delaware bankruptcy court's orders staying the section 337 investigation.  During the pendency of the appeal to the district court, the bankruptcy court lifted the stay pursuant to a stipulation between the debtors and the complainant of the Commission investigation.  *Samsung Elecs. Co.*, 2010 WL 2636115, at *1.  Thereafter, the District Judge found the appeal of the bankruptcy orders moot and vacated those orders.  *Id.* at *2.  Thus, the substantive basis for this Court's orders in *In re Spansion* was reversed (by the District Court for the Eastern District of Virginia), and the orders themselves have been vacated for mootness (by the District Court for the District of Delaware).

C.    **Section 337 Investigations Are an Exercise of Police and Regulatory Powers Subject to the Automatic Stay Exception**

1.    *Section 337 Investigations Are Brought by a "Governmental Unit"*

The two pending Federal Circuit appeals arise from a Commission section 337 investigation brought by a "governmental unit," which is defined by the Bankruptcy Code to include a "department, agency, or instrumentality of the United States." 11 U.S.C. § 101(27). This is so because the U.S. International Trade Commission is an independent federal agency created by Congress.  Even though the Commission may rely on information submitted in a complaint by a private party, the Commission chooses independently to commence the investigation and it controls the investigation through the Federal Register notice defining the scope of the investigation.  *See* 19 C.F.R. § 210.10(b).

2.    *The Underlying Section 337 Investigation Is Non-Pecuniary in Nature and Effectuates Public Policy in Fair Trade*

Under the pecuniary purpose test, the Commission's exercise of its section 337 authority is non-pecuniary in nature and, therefore, falls within the police or regulatory powers exception to the automatic stay.  The appeals of the Commission determinations are non-pecuniary as they do not seek affirmance of a monetary judgment.  Unlike private suits brought to vindicate intellectual property rights, the underlying Commission investigation was not and could not be directed towards any recovery of assets or money from ODC or its creditors.  *See Bio-Tech. Gen. Corp. v. Genentech, Inc.*, 80 F.3d 1553, 1564 (Fed. Cir. 1996) ("[T]he ITC does not have the power to award damages for patent infringement.").  Rather, the Commission's role, as here, when it issues an exclusion order for violation of section 337, is to exclude goods from entry into the United States after considering policy factors.[2]  19 U.S.C. §§ 1337(d)(l), (f)(1).

---

[2]  As noted earlier, the Commission also issued a cease and desist order prohibiting ODC from conducting any of the following activities in the United States: importing, selling,

In addition to being non-pecuniary, the Commission's interest in proceeding with the appeals is founded on public interest in fair trade and also includes public health, safety, and welfare concerns.  In enacting section 337, Congress determined the importance of the Commission's role in safeguarding the domestic industry, trade, and the U.S. economy against the effects of unfair importation.  For example, the Commission plays a role in antidumping investigations, countervailing duty investigations, safeguard investigations, and investigations relating to unfair competition based on intellectual property violations.  *See*, *e.g. id.* §§ 1337, 1671a, 1673a, 2252, 2436, 2451.  For investigations relating to intellectual property, as in the instant case, there must be a domestic industry in the United States which can be defined by employment and investment in infrastructure and development. *Id.* §§ 1337(a)(2),(3).  The Commission's role in safeguarding the public interest is independent of, and in addition to, any private rights afforded patent holders.  *See id.*

Even if the Commission finds a violation of section 337, the Commission may decline to order relief on the ground that it would adversely affect "public health and welfare, competitive conditions in the United States economy, the production of like or directly competitive articles in the United States, and United States consumers."  *Id.* §§ 1337(d)(1), (f)(1).

---

marketing, advertising, distributing, transferring (except for exportation), and soliciting U.S. agents or distributors for multiple mode outdoor grills and parts thereof that infringe one or more asserted patent claims in violation of Section 337.  A separate enforcement proceeding, as distinct from the underlying violation/remedy proceeding involved here, could, in theory, assess civil penalties against ODC for violating the cease and desist order.  *See* 19 U.S.C. § 1337(f); 19 C.F.R. § 210.75(b)(4)(ii).  The Court need not address whether such a subsequent proceeding would be excepted from the automatic stay.  Nevertheless, the Commission notes that courts throughout this Circuit have recognized that efforts by government agencies to fix a penalty constitute a valid exception under section 362(b)(4).  *See*, *e.g.*, *In re W.R. Grace & Co.*, 412 B.R. 657, 663 (D. Del. 2009) (Civil penalties are "one of the primary regulatory enforcement tools Congress included in the legislation and falls squarely within the ordinary meaning of 'police and regulatory power.'") (quoting *United States v. LTV Steel Co.*, 269 B.R. 576 (W.D. Pa. 2001) (citing *Nicolet*, 857 F.2d at 207)).

Moreover, the President is empowered to disapprove of a Commission determination on public policy grounds. *See id.* § 1337(j)(2). Just two years ago, the President, through his United States Trade Representative, disapproved of the Commission's determination to issue an exclusion order in connection with a section 337 investigation of Apple's iPhone. *See* Disapproval of the U.S. International Trade Commission's Determination in the Matter of *Certain Electronic Devices, Including Wireless Communication Devices, Portable Music and Data Processing Devices, and Tablet Computers*, Investigation No. 337-TA-794 (Aug. 3, 2013) (attached as Exhibit D).

Here, the Commission found a violation of section 337 by ODC and other respondents, and, after considering the public health and welfare, competitive conditions in the United States economy, the production of like or directly competitive articles in the United States, and United States consumers, ordered relief to prevent the continued violation of our trade laws through unfair importation of infringing grills. The President did not disapprove of that relief.

To the extent that the Commission does act in a quasi-adjudicatory capacity, it is adjudicating public rights, *i.e.*, whether there has been a violation of the trade laws of the United States. In turn, the remedy issued by the Commission is public in nature as it invokes the policing powers of Customs, which enforces its order to exclude goods from importation.

In conclusion, the Commission respectfully requests that the Court amend the proposed Order lifting the stay as proposed by the Commission and grant that amended Order, or, in the alternative, determine that the two pending appeals fall within the police or regulatory powers exception to the automatic stay.

Date: October 30, 2015                    Respectfully submitted by:

                                          /s/ Cathy Chen

                                          OFFICE OF THE GENERAL COUNSEL
                                          U.S. INTERNATIONAL TRADE COMMISSION

                                          Dominic L. Bianchi
                                          General Counsel

                                          Wayne W. Herrington
                                          Assistant General Counsel

                                          Cathy Chen
                                          Attorney-Advisor
                                          500 E Street, S.W.
                                          Washington, D.C. 20436
                                          Tel: (202) 205-2392
                                          Fax: (202) 205-3111
                                          cathy.chen@usitc.gov

                                          OFFICE OF THE UNITED STATES ATTORNEY

                                          Charles M. Oberly, III
                                          United States Attorney

                                          Ellen W. Slights
                                          Assistant United States Attorney
                                          Delaware State Bar No. 2782
                                          1007 Orange Street, Suite 700
                                          P.O. Box 2046
                                          Wilmington, DE 19801
                                          Tel: (302) 573-6277
                                          Fax: (302) 573-6220

                                          *Counsel to the United States International Trade
                                          Commission*

**EXHIBIT A**

NOTE: This order is nonprecedential.

# United States Court of Appeals
# for the Federal Circuit

_____

**A&J MANUFACTURING, LLC, A&J
MANUFACTURING, INC.,**
*Appellants*

**v.**

**UNITED STATES INTERNATIONAL TRADE
COMMISSION,**
*Appellee*

**CHAR-BROIL, LLC, OUTDOOR LEISURE
PRODUCTS, INC., OUTDOOR DIRECT
CORPORATION,**
*Intervenors*

_____

2015-1494

_____

Appeal from the United States International Trade
Commission in Investigation No. 337-TA-895.

_____

**ON MOTION**

_____

**O R D E R**

The Brinkmann Corporation moves without opposi-
tion to modify the caption to reflect its new name, Out-

door Direct Corporation.  It separately notifies the court of bankruptcy proceedings.

Upon consideration thereof,

IT IS ORDERED THAT:

(1)  The motion to modify the caption is granted.  The revised official caption is reflected above.

(2)  The appeal is stayed.  Outdoor Direct Corporation is directed to file a status report every 60 days and to inform the court within 21 days after the bankruptcy proceedings are completed or the automatic stay pursuant to 11 U.S.C. § 362 has been lifted.

FOR THE COURT

/s/ Daniel E. O'Toole
Daniel E. O'Toole
Clerk of Court

s26

**EXHIBIT B**

NOTE: This order is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**A&J MANUFACTURING, LLC, A&J MANUFACTURING, INC.,**
*Appellants*

**v.**

**UNITED STATES INTERNATIONAL TRADE COMMISSION,**
*Appellee*

**CHAR-BROIL, LLC, OUTDOOR LEISURE PRODUCTS, INC., THE BRINKMANN CORPORATION,**
*Intervenors*

---

2015-1494

---

Appeal from the United States International Trade Commission in Investigation No. 337-TA-895.

--------------------------------------------------------------------------------

**THE BRINKMANN CORPORATION,**
*Appellant*

**v.**

**UNITED STATES INTERNATIONAL TRADE**

**COMMISSION,**
*Appellee*

**A&J MANUFACTURING, LLC, A&J
MANUFACTURING, INC.,**
*Intervenors*

————————————

2015-1751

————————————

Appeal from the United States International Trade
Commission in Investigation No. 337-TA-895.

————————————

**O R D E R**

The above captioned appeals are related, and the par-
ties move jointly for companion case treatment and to
modify the briefing schedule such that both opening briefs
are due September 16, 2015. A&J Manufacturing, LLC
and A&J Manufacturing, Inc. (collectively, "A&J") move
unopposed for leave to intervene in 2015-1751.

Upon consideration thereof,

IT IS ORDERED THAT:

(1) The motion for companion case treatment is
granted. The appeals will be considered companion cases
and assigned the same merits panel. The opening brief in
each appeal is due no later than September 16, 2015.

(2) A&J's motion for leave to intervene is granted.
The revised official caption in 2015-1751 is reflected
above.

A&J MANUFACTURING, LLC v. ITC                                    3

                                        FOR THE COURT

                                        /s/ Daniel E. O'Toole
                                        Daniel E. O'Toole
                                        Clerk of Court

        s31

**EXHIBIT C**

RECEIVED

2002 JAN 14 P 12: 04

GENERAL COUNSEL

FILED

01 OCT 18 PM 1:14

MICHAEL D. WEBB, CLERK
U.S. BANKRUPTCY COURT
DAYTON, OHIO

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

In re:

INNOVATIVE HOME PRODUCTS, INC.

Debtor.

INNOVATIVE HOME PRODUCTS, INC.

Plaintiff,

vs.

THE CHAMBERLAIN GROUP, INC.,

and

THE UNITED STATES INTERNATIONAL
TRADE COMMISSION

Defendants.

Case No: 01-33239

Adv. Pro. No: 01-3161

Chapter 11

Judge John E. Hoffman, Jr.

Distribution:
General Counsel
Deputy General Counsel
Attorney _Jackson_

ENTERED OCT 19 2001

## ORDER DENYING INJUNCTIVE RELIEF
## AND DISMISSING ADVERSARY PROCEEDING

This matter is before the court pursuant to the Plaintiff, Innovative Home Products, Inc.'s

Complaint for Injunctive Relief and Motion of Innovative Home Products, Inc. for Order

Enjoining Proceedings of the United States International Trade Commission Pending Disposition

of Property, both filed herein on September 27, 2001.

Having considered the arguments set forth by the Plaintiff in its Motion, Memorandum

and Reply Memorandum; those set forth by Defendants The Chamberlain Group, Inc. and the

United States International Trade Commission in their Memoranda in Opposition to the Motion,

as well as the evidence and arguments presented by all parties at the expedited hearing of this

action held on October 9, 2001, the court hereby overrules Plaintiff's request for injunctive relief

_for the reasons stated in the Court's oral decision on October 9, 2001._   JEH

**IT IS ORDERED** that the Motion for Injunctive Relief is denied, and this Adversary

Proceeding is hereby dismissed.

JOHN E. HOFFMAN, JR.
United States Bankruptcy Judge    10/18/01

cc:   John A. Gleason, Esq.
      Tim Robinson, Esq.
      Ronald S. Pretekin, Esq.
      Dale A. Goldberg, Esq.
      Lawrence Walter, Esq.

2

1    opposed to an action in the district court, if that were to go

2    forward that would only apply to those parties, but the ITC has

3    broader powers in respect.

4        THE COURT: Of course there could be collateral estoppal

5    type findings in that state court litigation that would have

6    the same effect.

7        MR. GLEASON:  That's all I have, Your Honor.

8        THE COURT: All right, the Court will take about a no

9    more than a 30 minute recess. If we're going to need more time

10   than we'll so advise the parties.  We intend to come back on

11   the record at approximately 4:30 and announce the courts

12   decision.  The court will adjourn until 4:30.

13   ( Recess taken at 4:00.)

14       THE COURT: We are back on the record in the Innovative

15   Home Products, Inc, Chapter 11 case and the adversary

16   proceeding of Innovative Home Products versus Chamberlain Group

17   Inc. and United States International Trade Commission.  The

18   Court is mindful of the fact that the injunctive relief

19   is sought here and while perhaps a written decision may better

20   articulate the Court's reasoning I understand that time is of

21   the essence,so I will do this orally this afternoon.

22       This is the court's decision.  This proceeding arises in a

23   case referred to this court by the standing order of reference

24   entered in this district and is determined to be a core

25   proceeding pursuant to 28 U.S.C. Section 157(b)(2).  The

OCT-31-2001 WED 10:26 AM FROM:US ATTORNEY DAYTON FAX:9372252564 PAGE 5
Case 09-14 Case BK12036 46-1 Doc 807/18/09 10 Entered Page 09 06:56:22 Desc
Exhibit(s) Opinion Page 4 of 14

52

1    court's authorized to enter a final judgment in this adversary

2    proceeding. The following constitutes the courts findings of

3    fact and conclusion of law in accordance with the Federal Rule

4    of Bankruptcy Proceeding 7052. In reaching its decision this

5    afternoon, the court has considered the demeanor and

6    credibility of Mr. Pound,who was the only witness offered, has

7    considered the exhibits offered and admitted without

8    objection,and the specific pleadings in the International Trade

9    Commission proceeding were appended to the various

10   pleadings that were filed. Without changing its final judgment

11   the court reserves the right to add, alter or delete any

12   language, grammar or punctuation in this oral decision so it

13   accurately reflects the courts intention in determining this

14   proceeding. In the event of an appeal, following the court's

15   review of the transcript of the oral decision, a complete

16   transcript of the decision will be entered as a separate filing

17   in this adversary proceeding.

18       The debtor has commenced this adversary proceeding seeking

19   entry of an injunction that will stay the United States Trade

20   Commission -- International Trade Commission investigation that

21   is currently pending. The debtor seeks the stay pursuant to

22   both Section 362 and Section 105(a) of the Bankruptcy Code. In

23   fact,the debtor asserts by commencing the International Trade

24   Commission proceeding and filing a complaint with the

25   Internationl Trade Commission, Chamberlain has violated the

OCT-31-2001 WED 10:27 AM FROM:US ATTORNEY DAYTON    FAX:9372252564        PAGE 4
Case 09-1477-SBK1208-MG-1 Doc 807/18/09 10 Entered 07/10/09 16:56:22   Desc
Exhibit(s) Opinion   Page 5 of 14

53

```
 1    automatic stay imposed by Section 362.  The debtor
 2    argues alternatively that 362 does not apply and the court
 3    should exercise its discretion to enter the stay pursuant to
 4    Section 105(a).  In response to this request for relief,
 5    essentially, three arguments have been asserted by the
 6    defendants, Chamberlain and the International Trade Commission.
 7    First of all, defendants argue the stay imposed by Section
 8    362(a) does not apply at all. First, they point out that
 9    because this proceeding that is pending in Washington does not
10    seek to bar the debtor from selling any existing inventory and
11    it is undisputed that the debtor doesn't have any products that
12    were imported that are the subject of the this investigation
13    currently in its possession, this is not an action to
14    possess or exercise control over property of the estate within
15    the meaning of Section 362(a)(3).  The court agrees with that
16    argument.  The record is essentially undisputed that the debtor
17    is not holding any property or seeking to sell any property
18    that is subject matter of the ITC investigation.
19        Chamberlain and the ITC also argue that Section
20    362(a)(1)is not applicable here because this is not an action
21    to recover claims against a debtor that arose before the
22    commencement of the case as Section 362(a)(1) provides. The
23    court, however, disagrees with this contention. Section
24    362(a)(1) provides a stay operates to, the automatic stay,
25    rather, imposed by Section 362(a)(1) of the bankruptcy code,
```

OCT-31-2001 WED 10:27 AM FROM:US ATTORNEY DAYTON          FAX:9372252564          PAGE 5
Case 09-1472 EB K120 CL 46-1 Doc 607/16/09 10 Entered 07/16/09 16:55:22  Desc
Exhibit(s) Opinion  Page 6 of 14

54

 1  operates as a stay of the commencement or continuation,

 2  including issuance or employment of process of a judicial,

 3  administrative or other action or proceeding against the

 4  debtor, that was or could have been commenced before the

 5  commencement of the case under this title or to recover a claim

 6  against a debtor that arose before the commencement of the case

 7  under this title. Since Section 362(a)(1) is phrased in the

 8  disjunctive,this action is indeed an action against the debtor

 9  -- the debtor was named as a party and one of the forms of

10  relief requested here is a cease and desist order -- the court

11  rejects the defendant's argument that the stay does not apply.

12  The court finds that Section 362(a)(1) does apply. takes us to

13  the second argument asserted by the defendants and that is

14  that, notwithstanding the applicability of the stay pursuant to

15  Section 362(a)(1), the exception to the automatic stay

16  contained in Section 362(b)(4) applies.  That provision

17  provides in pertinent part, again, referring to Section

18  362(b)(4),that the stay imposed by Section 362(a)(1) does not

19  operate as the stay of the commencement or continuation of an

20  action or proceeding by a governmental unit to enforce such

21  governmental unit's or organization's or police or regulatory

22  power, including the  enforcement of a judgment,other than a

23  money judgment obtained in an action or proceeding by the

24  governmental unit to enforce those governmental unit's or

25  organization's, police or regulatory power.  The debtor urges

OCT-31-2001 WED 10:27 AM FROM:US ATTORNEY DAYTON FAX:9372252504 PAGE 6
Case 09-14726-EPK12080 Doc 46-1 Doc 807/16/09 10:00:00:00 0:00 16:56:22 Desc
Exhibit(s) Opinion Page 7 of 14

55

1    the court to apply this statute literally and argues because

2    the ITC proceeding was commenced by the filing of the complaint

3    by Chamberlain that Section 362(b)(4) is not applicable

4    and exception does not control here.

5    The court believes that this would constitute an unduly

6    restrictive reading of Section 362(b)(4). The court is aware of

7    the fact there are certainly a number of plain meaning

8    authorities recently have been issued by the Supreme Court in

9    the context of interpreting the Bankruptcy Code, but such a

10   reading of 362(b)(4), the court believes, would be at odds with

11   reality.As Ms. Goldberg pointed out the state and federal

12   regulatory agencies are not omniscient and that typically

13   regulatory proceedings by state governmental agencies or

14   federal agencies are initiated by the filing of a complaint by

15   a private party.  The court would cite the Equal Employment

16   Opportunity Commission v. Rath Packing Company case which is

17   reported at 787 F. 2d 318, which I believe was cited in one of

18   the defendant's papers, where the court noted that in the

19   context of an EEO investigation that was initiated by the

20   filing of complaints by employees of the company, when the EEOC

21   acts,albeit, for the benefit of specific individuals,it acts

22   also to vindicate the public interest. And I believe statement

23   applies with equal force here. So,  the court believes the

24   argument that the Section 362(b)(4)exception is not applicable

25   here, because the ITC Investigation was commenced by the filing

OCT-31-2001 WED 10:28 AM  FROM US ATTORNEY DAYTON        FAX:9372252564        PAGE 7
Case 09-14726-BK1-2000-46-1 Deded807/16/09 10:35ered Page 04 16:56:22  Desc
Exhibit(s) Opinion   Page 8 of 14

56

1    of the complaint by Chamberlain, is not well-taken.

2        The courts have applied, essentially, a two-prong test to

3    determine whether or not the police or regulatory power

4    exception of Section of 362(b)(4) is applicable in a given

5    case. test was set out in a recent decision of the United

6    States District Court for the Western District of Tennessee in

7    Herman v. Hospital Staffing Service,  Inc. which was reported

8    at 236 Bankruptcy Reporter 377 and I'm quoting now from Page

9    382,  "these tests, which are referred to as the pecuniary

10   interest test and the private rights test provide, and I quote,

11   "that an action will only be exempt from the automatic stay of

12   the bankruptcy code if the action has been instituted to

13   effectuate the public policy goals of the governmental entity

14   as opposed to actions instituted to protect the pecuniary

15   interest in the debtor's property or to adjudicate private

16   rights. Neither in the initial papers filed by debtor that

17   commenced this adversary  proceedings, or in their motion, or

18   in their reply brief, nor here on the record today, was it

19   argued that these two tests would militate against the

20   applicability of Section 362(b)(4). In fact, it was essentially

21   conceded these two tests have been established and, therefore,

22   Section 362(b)(4) applies.

23       That then leads us to essentially the third argument made

24   by the defendants here, which addresses the debtor's position

25   that notwithstanding the fact that Section 362(b)(4) exception

OCT-31-2001 WED 10:28 AM FROM:US ATTORNEY DAYTON        FAX:9372252564        PAGE 8
Case 09-14...eB...K12...e...46-1 D...c...807/...6/09 1...E...ered ...a...e/...5 ...6:...6:22   Desc
Exhibit(s) Opinion    Page 9 of 14

57

1    may  apply in this case, and the court has now ruled that it

2    does apply, a 105 stay may be issued by the court. And I don't

3    believe that the defendants dispute that general proposition

4    that the legislative history makes clear the court does retain

5    the equitable power under 105 to issue a stay notwithstanding

6    the applicability of the Section 362(b)(4) exception.

7        Recently this court held a hearing in this same Chapter 11

8    case, at that point in time, rather than being aligned as they

9    are today, the committee and the debtor were at sword point

10   over the issue of whether an employee retention program and

11   serverance package should be approved by court. At the end of

12   that hearing, the issue of scheduling this matter came up and I

13   advised counsel for the committee and the debtor that I had

14   reviewed the complaint and the motion and, though I had not yet

15   had an opportunity to take an extensive look at the case

16   law, my initial view was they had a very high hurdle to get

17   over in invoking a 105 stay. Having now had the opportunity to

18   look at the case law, that conclusion by the court has been

19   renforced.  I am citing two decision that were in the papers

20   filed by,  I believe,  Chamberlain and perhaps the ITC,  the

21   decisions of Brennan v. Poritz was reported at 198 Bankruptcy

22   Reporter 445 and in the case of Whitaker v. Interstate Commerce

23   Commission reported at 161 B.R. 524. In the Brennan case the

24   court made it clear that, and I'm quoting now from Page 451 of

25   that decision "an examination of the cases where courts have

OCT-31-2001 WED 10:28 AM  FROM:US ATTORNEY DAYTON          FAX:9377257264                    PAGE 9
Case 09-14736-BK 2026 KG-1 Doc:807/16/09 10:Entered Page 96 06 06:56:22   Desc
Exhibit(s) Opinion   Page 10 of 14

58

1   enjoined state police power regulatory action under Section 105

2   makes clear that injunctions of state regulatory actions are a

3   rare remedy appropriate only in extenuating circumstances where

4   the state regulatory action seriously threatens the bankruptcy

5   process.  A bankruptcy court may enjoin a state

6   regulatory action where the state action seeks control over or

7   severely threatens the assets of the estate, thus directly

8   conflicting with the bankruptcy code.  In the Olympia Holdings

9   case, which is, again, the Whitaker v. Interstate Commerce

10   Commission adversary proceeding reported at 161 B.R. 524, that

11   court, again, echoes the statements of the Brennan court, just

12   read into the record, stating that the Section 105 stay should

13   be imposed in circumstance where the Section 362(b)(4)

14   exception to the stay applies only in the most rare cases where

15   very serious threat to the bankruptcy process has been

16   demonstrated.

17       The court now turns to the four-prong test to the issuance

18   of injunctions and with the admonition of mine that the debtor

19   has a very high hurdle to get over here.   The first test is

20   the probability of success on the merits.  The court is not

21   really clear what that mean in this context. Some of the

22   reported case law refers the court to probability of success in

23   the core bankruptcy case or, in this case, what is the

24   probability of a successful reorganization. The court believes

25   the proper focus is really on the probability of success in

OCT-31-2001 WED 10:29 AM   FROM US ATTORNEY DAYTON      FAX:9372252264        PAGE 10
Case 09-14765-BK-12 Doc 46-1 Deci 07/16/09 10 Entered 07/16/09 16:46:22   Desc
Exhibit(s) Opinion   Page 11 of 14

59

1   this adversary proceeding and that is the issue before the

2   court today. And that, in the court's mind reduces down to the

3   irreparable harm prong of the four-prong test.  Here the debtor

4   made essentially three arguments in support of the allegation

5   it will suffer irreparable harm absent issuance of a Section

6   105 injunction.

7        First, the debtor argues that it does not have sufficient

8   human resources to focus simultaneously on the ITC

9   investigation and its efforts to sell the business.  Secondly,

10  the debtor argues it will suffer irreparable harm absent the

11  stay because prospecitve purchasers will be driven away by the

12  pendancy of this proceeding or, alternatively, the purchase

13  price will be depressed because some discount factor will be

14  applied to the sale price because prpspective purchasers

15  will have to closely follow this ITC proceeding over the next

16  several months or essentially be bound, if the debtor

17  elects not to defend that proceeding, by any findings in action

18  or actively monitor the action to determine what course of

19  action it should take if a bidder comes in and buys the assets

20  here.

21       The final arguement in support of irreparable harm is the

22  debtor's lack of financial resources to participate in the ITC

23  proceeding. The court believes that the debtor, which has

24  the burden of proof of establishing irreparable harm on this

25  evidenciary record, has fallen short of meeting burden.  As to

OCT-31-2001 WED 10:29 AM  FROM US ATTORNEY DAYTON        FAX:937/225/2564           PAGE 11
Case 09-14736-BFK 2010 KG-1 Dated 07/16/09 10 Entered Page 08 16:56:22   Desc
Exhibit(s) Opinion   Page 12 of 14

60

1    the issue of sufficient human resources, the court believes

2    that Congress has really already weighed in on this issue by

3    enacting the (b)(4) exception.  Congress certainly recognized

4    that in the bankruptcy context, which by definition

5    involves financially distressed entities, that the interest in

6    reorganization is not necessary always paramount and that the

7    state has a legitimate interest in continuing to regulate and

8    enforce regulatory scheme for the benefit of the public. So, as

9    to the insufficiency of human resources to simultaneously

10    pursue the sale process and remain involved in the ITC

11    investigation, the court does not find either the evidence or

12    the legal argument compelling. As to the argument prospective

13    bidders will either be dissuaded from making a bid for these

14    assets or will offer a bid that is artificially low here

15    because of the pendency of this action,  the court finds that

16    the evidence here doesn't establish those facts. All we have of

17    record here this afternoon is really Mr. Pound's

18    speculation that that will occur. His testimony establishes

19    there are three active bidders, they are still doing due

20    diligence, there are five to eight other prospective purchasers

21    that have investigated the potential purchase and there is

22    really no evidence from any of those potential buyers that the

23    pendency of the ITC action will either chase them away or lower

24    their bids.

25       Finally, as to the issue of attorney fees, again, the

OCT-31-2001 WED 10:29 AM  FROM US ATTORNEY DAYTON      FAX:9372252564           PAGE 12
Case 09-14788-BK1 2001 16-1 Doc 180 07/16/09 10 Entered Page 09 16 56:22   Desc
Exhibit(s) Opinion   Page 13 of 14

61

1    court finds that that issue or argument is not meritorious,

2    both as a matter of law and fact. The United States Supreme

3    Court, in the case of Federal Trade Commission  V. Standard Oil

4    Company of California, which was reported at 449 United States

5    Reporter 232, discussed whether the incurrence of attorney fees

6    will rise to the level of establishing irreparable harm in the

7    context of a proceeding seeking extraordinary relief and

8    concluded that, and I quote "mere litigation expense, even

9    substantial and unrecoupable cost, does not constitue

10   irreparable injury." So, as a matter of law,  the fact that the

11   debtor will have to incur substantial attorney fees here will

12   not establish irreparable harm and also as a matter of fact the

13   court is not convinced that this is indeed the case on this

14   record. We're dealing with testimony from Mr. Pound in the 16

15   months that predate the filing of this case, while the patent

16   infringement action was going forward to district court in

17   Illinois, they were expending a a total of $100,000 to

18   defend action. There was also testimony that most of the

19   discovery was completed in action.

20       So, again, on this record the court is not convinced that

21   the amount of attorney fees that will be incurred over the next

22   two months and the amount of attention that the debtor's

23   personnel needs to focus on this issue rises to the level of

24   establishing irreparable harm. So, for that reason,  the court

25   finds that the debtor has failed to meet its burden of proof to

OCT-31-2001 WED 10:30 AM FROM:US ATTORNEY DAYTON FAX:9372257264 PAGE 13
Case 09-1472-BK 2010 KG-1 Doc 1807/16/09 10 Entered 07/16/09 16:48:22 Desc
Exhibit(s) Opinion    Page 14 of 14

62

1   establish that the issuance of a Section 105 injunction would

2   be appropriate, and hereby denies debtor's motion for issuance

3   of an injunction and grants the request asserted by the ITC to

4   dismiss this adversary proceeding. I would ask Ms. Goldberg

5   and/or Mr. Fink to prepare an appropriate judgment entry.   The

6   court will adjourn for the balance of the day.

7

8

9   (Court adjourned at 5:15 pm.)

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

**EXHIBIT D**

EXECUTIVE OFFICE OF THE PRESIDENT
THE UNITED STATES TRADE REPRESENTATIVE
WASHINGTON, D.C. 20508

RECEIVED

AUG 0 3 2013

OFFICE OF THE SECRETARY
U.S. INTL. TRADE COMMISSION

August 3, 2013

The Honorable Irving A. Williamson
Chairman
United States. International Trade Commission
500 E Street, SW
Washington, DC 20436

RE:  Disapproval of the U.S. International Trade Commission's Determination in the Matter of
Certain Electronic Devices, Including Wireless Communication Devices, Portable Music and
Data Processing Devices, and Tablet Computers, Investigation No. 337-TA-794.

Dear Chairman Williamson:

On June, 4, 2013, the United States International Trade Commission ("Commission") determined
that Apple Inc. ("Apple") had violated Section 337 of the Tariff Act of 1930, as amended, in the
importation of certain devices, e.g., certain smartphones and tablet computers that infringe a U.S.
patent owned by Samsung Electronics Co., Ltd. and Samsung Telecommunications America Inc.
("Samsung").  Following this determination, the Commission issued an exclusion order
prohibiting the unlicensed importation of infringing devices, manufactured for or on behalf of
Apple.  The Commission also issued a cease and desist order that prevents Apple from engaging
in certain activities, such as sale of these products in the United States.

Under section 337, the President is required to engage in a policy evaluation of the
Commission's determinations to issue exclusion and cease and desist orders.  The President may
disapprove an order on policy grounds, approve an order, or take no action and allow the order to
come into force upon the expiration of the 60-day review period.  This authority has been
assigned to the United States Trade Representative.  The legislative history of section 337 lists
the following considerations relevant to the policy review of the Commission's
determination to issue an exclusion order:  "(1) public health and welfare; (2) competitive
conditions in the U.S. economy; (3) production of competitive articles in the United States; (4)
U.S. consumers; and (5) U.S. foreign relations, economic and political."[1]

In addition, on January 8, 2013, the Department of Justice and United States Patent and
Trademark Office issued an important Policy Statement entitled "Policy Statement on Remedies
for Standard-Essential Patents Subject to Voluntary FRAND Commitments" ("Policy
Statement").[2] The Policy Statement makes clear that standards, and particularly voluntary

---

[1] S. Rep. No. 93-1298, 93d Cong. 2d Sess. 199 (1974).
[2] U.S. DEP'T OF JUSTICE AND U.S. PATENT AND TRADEMARK OFFICE. POLICY STATEMENT ON REMEDIES FOR
STANDARD-ESSENTIAL PATENTS SUBJECT TO VOLUNTARY FRAND COMMITMENTS (2013) available at
http://www.justice.gov/atr/public/ guidelines/290994.pdf

The Honorable Irving A. Williamson
August 3, 2013
Page Two

consensus standards set by standards developing organizations ("SDO"), have incorporated important technical advances that are fundamental to the interoperability of many of the products on which consumers have come to rely, including the types of devices that are the subject of the Commission's determination. The Policy Statement expresses substantial concerns, which I strongly share, about the potential harms that can result from owners of standards-essential patents ("SEPs") who have made a voluntary commitment to offer to license SEPs on terms that are fair, reasonable, and non-discriminatory ("FRAND"), gaining undue leverage and engaging in "patent hold-up", *i.e.*, asserting the patent to exclude an implementer of the standard from a market to obtain a higher price for use of the patent than would have been possible before the standard was set, when alternative technologies could have been chosen. At the same time, technology implementers also can cause potential harm by, for example, engaging in "reverse hold-up" ("hold-out"), *e.g.*, by constructive refusal to negotiate a FRAND license with the SEP owner or refusal to pay what has been determined to be a FRAND royalty.

As the Policy Statement makes clear, whether public interest considerations counsel against a particular exclusion order depends on the specific circumstances at issue. The statement also explains that, to mitigate against patent hold-up, exclusionary relief from the Commission based on FRAND-encumbered SEPs should be available based only on the relevant factors described in the Policy Statement.[3] The courts are also engaged on the issue of appropriate remedies for infringement of SEPs and we look forward to the development of appellate jurisprudence on this issue. The SEP Policy Statement is one part of the Administration's continuing efforts to consider the scope of appropriate remedies for owners of SEPs, and encourage the development of strong, innovative standards.

The Administration is committed to promoting innovation and economic progress, including through providing adequate and effective protection and enforcement of intellectual property rights. Relief available to the owners of intellectual property rights through section 337 is an important facet of achieving that objective. At the same time, standards, and particularly voluntary consensus-based standards set by SDOs, have come to play an increasingly important role in the U.S. economy. Important policy considerations arise in the enforcement of those

---

[3] "An exclusion order may still be an appropriate remedy in some circumstances, such as where the putative licensee is unable or refuses to take a FRAND license and is acting outside the scope of the patent holder's commitment to license on FRAND terms. For example, if a putative licensee refuses to pay what has been determined to be a FRAND royalty, or refuses to engage in a negotiation to determine F/RAND terms, an exclusion order could be appropriate. Such a refusal could take the form of a constructive refusal to negotiate, such as by insisting on terms clearly outside the bounds of what could reasonably be considered to be F/RAND terms in an attempt to evade the putative licensee's obligation to fairly compensate the patent holder. An exclusion order also could be appropriate if a putative licensee is not subject to the jurisdiction of a court that could award damages. This list is not an exhaustive one. Rather, it identifies relevant factors when determining whether public interest considerations should prevent the issuance of an exclusion order based on infringement of a F/RAND-encumbered standards-essential patent or when shaping such a remedy." Policy Statement at 7-8 (internal footnotes omitted).

The Honorable Irving A. Williamson
August 3, 2013
Page Three

patents incorporated into technical standards without which such standards cannot be implemented as designed, when the patent holder has made a voluntary commitment to offer to license these SEPs on FRAND terms. Licensing SEPs on FRAND terms is an important element of the Administration's policy of promoting innovation and economic progress and reflects the positive linkages between patent rights and standards setting.

I have reviewed the various policy considerations set out above based on the information provided in this case, including information developed in connection with the Commission's determination. Although the parties dispute the facts vigorously, it is beyond the scope of this policy review to revisit the Commission's legal analysis or its findings based on its record.

After extensive consultations with the agencies of the Trade Policy Staff Committee and the Trade Policy Review Group, as well as other interested agencies and persons, I have decided to disapprove the USITC's determination to issue an exclusion order and cease and desist order in this investigation. This decision is based on my review of the various policy considerations discussed above as they relate to the effect on competitive conditions in the U.S. economy and the effect on U.S. consumers.

I would like to underscore that in any future cases involving SEPs that are subject to voluntary FRAND commitments, the Commission should be certain to (1) to examine thoroughly and carefully on its own initiative the public interest issues presented both at the outset of its proceeding and when determining whether a particular remedy is in the public interest and (2) seek proactively to have the parties develop a comprehensive factual record related to these issues in the proceedings before the Administrative Law Judge and during the formal remedy phase of the investigation before the Commission, including information on the standards-essential nature of the patent at issue if contested by the patent holder and the presence or absence of patent hold-up or reverse hold-up. In addition, the Commission should make explicit findings on these issues to the maximum extent possible. I will look for these elements in any future decisions involving FRAND-encumbered SEPs that are presented for policy review. The Commission is well-positioned to consider these issues in its public interest determinations.

The Honorable Irving A. Williamson
August 3, 2013
Page Four

This policy decision is not an endorsement or a criticism of the Commission's decision or analysis.  My decision to disapprove this determination does not mean that the patent owner in this case is not entitled to a remedy.  On the contrary, the patent owner may continue to pursue its rights through the courts.

Sincerely,

Ambassador Michael B. G. Froman

**THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

|  |  |  |
|---|---|---|
| | : | |
| In Re: | : | Case No. 15-12080 (KG) |
| | : | |
| MALIBU LIGHTING CORPORATION, *et al.*, | : | Chapter 11 |
| | : | |
| Debtors. | : | Jointly Administered |

## AFFIDAVIT OF SERVICE

I, Marissa Ballasy, hereby attest under penalty of perjury that on October 30, 2015, a copy of the "RESPONSE OF THE U.S. INTERNATIONAL TRADE COMMISSION TO MOTION OF THE DEBTOR OUTDOOR DIRECT CORPORATION F/K/A THE BRINKMANN CORPORATION FOR AN ORDER PURSUANT TO SECTION 362 OF THE BANKRUPTCY CODE DETERMINING THAT THE AUTOMATIC STAY IS INAPPLICABLE TO PENDING LITIGATION AND GRANTING RELIEF FROM THE STAY WITH RESPECT THERETO" was served electronically using the CM/ECF system, which will send notification of such filing to all parties appearing in said system, including the following notice parties:

Robert John Miller
**BRYAN CAVE LLP**
2 N. Central Avenue
Suite 2200
Phoenix, AZ 85004
602-364-7043
602-364-7070 (fax)
**Via E-mail** rjmiller@bryancave.com

Brian C. Walsh
**BRYAN CAVE LLP**
211 N. Broadway, Suite 3600
St. Louis, MO 63102
(314) 259-2000
(314) 259-2020 (fax)
**Via E-mail** brian.walsh@bryancave.com

John M. Craig
**RUSSELL R. JOHNSON III, PLC**
2258 Wheatland Drive
Manakin-Sabot, VA 23103
(804) 749-8861
(804) 749-8862 (fax)
**Via E-mail** russj4478@aol.com

Matthew D. Cavenaugh
**JACKSON WALKER LLP**
1401 McKinney Street
Suite 1900
Houston, TX 77010
713-752-4284
**Via E-mail** mcavenaugh@jw.com

Francis A. Monaco Jr.
**WOMBLE CARLYLE SANDRIDGE &
RICE**
222 Delaware Avenue, Suite 1501
Wilmington, DE 19801
302-252-4340
302-661-7730 (fax)
**Via E-mail** fmonaco@wcsr.com

Albert Kass
**KURTZMAN CARSON CONSULTANTS,
LLC**
2335 Alasha Ave.
El Segundo, CA 90245
(310) 823-9000
(310) 751-1549 (fax)
**Via E-mail** ECFpleadings@kccllc.com

Jeffrey N. Pomerantz
**PACHULSKI STANG ZIEHL & JONES
LLP**
10100 Santa Monica Blvd.
13th Floor
Los Angeles, CA 90067-4100
(310) 227-6910
(310) 201-0760 (fax)
**Via E-mail** jpomerantz@pszjlaw.com

Frederick D. Holden, Jr.
**ORRICK, HERRINGTON & SUTCLIFFE,
LLP**
The Orrick Building
405 Howard Street
San Francisco, CA 94105
(415) 773-5985
(415) 773-5759 (fax)
**Via E-mail** fholden@orrick.com

Bruce J. Ruzinsky
**JACKSON WALKER LLP**
1401 McKinney, Suite 1900
Houston, TX 77010
(713) 752-4200
(713) 752-4221 (fax)
**Via E-mail** bruzinsky@jw.com

Helen Elizabeth Weller
**LINEBARGER GOGGAN BLAIR &
SAMPSON, LLP**
2777 N. Stemmons Frwy, Ste 1000
Dallas, TX 75207
(469) 221-5075
(469) 221-5003 (fax)
**Via E-mail** dallas.bankruptcy@publicans.com

Joshua M Fried
**PACHULSKI STANG ZIEHL & JONES
LLP**
150 California Street
15th Floor
San Francisco, CA 94111
(415) 263-7000
**Via E-mail** jfried@pszjlaw.com

Eric S. Chafetz
**LOWENSTEIN SANDLER PC**
1251 Avenue of the Americas
18th Floor
New York, NY 10020
(212) 262-6700
(212) 262-4702 (fax)
**Via E-mail** echafetz@lowenstein.com

2

Ian Connor Bifferato
**BIFFERATO LLC**
800 N. King Street
Plaza Level
Wilmington, DE 19801
302-225-7600
302-254-5383 (fax)
**Via E-mail** cbifferato@bifferato.com

Kevin Charles Gray
**MAYNARD, COOPER & GALE, P.C.**
655 Gallatin Street
Huntsville, AL 35801
256-551-0171
256-512-0119 (fax)
**Via E-mail** kgray@maynardcooper.com

Guy Campbell, III
**SNELLINGS, BREARD, SARTOR,
INABNETT & TRASCHER, LLP**
P.O. Box 2055
Monroe, LA 71207
(318) 387-8000
(318) 387-8200
**Via E-mail** gcampbell@sbsitlaw.com

James S. Brouner
**THE LAW OFFICES OF MARK A.
WEISBART**
12770 Colt Road
Suite 541
Dallas, TX 75251
(972) 628-3692
(972) 628-3687 (fax)
**Via E-mail** brounerj@earthlink.net

Jay Walton Hurst
**Office of the Texas Attorney General**
300 W. 15th Street
Austin, TX 78701
(512) 475-4861
(512) 482 8341 (fax)
**Via E-mail**
jay.hurst@texasattorneygeneral.gov

Linda J. Casey
Office of the United States Trustee
844 King Street
Suite 2207
Wilmington, DE 19801
(302) 573-6491
(302) 573-6497 (fax)
**Via E-mail** Linda.Casey@usdoj.gov

Date: October 30, 2015

Respectfully submitted by:

/s/ _Marissa Ballasy_____