**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| MALIBU LIGHTING CORPORATION, *et al.*,[1] | Case No. 15-12080 (KG) |
| Debtor. | (Jointly Administered) |
| | Re: D.I. 96 |

**OBJECTION BY A&J MANUFACTURING, LLC, TO MOTION OF THE
DEBTOR OUTDOOR DIRECT CORPORATION FOR AN ORDER
DETERMINING THAT AUTOMATIC STAY IS INAPPLICABLE TO
PENDING LITIGATION AND GRANTING RELIEF FROM STAY**

A&J Manufacturing LLC and A&J Manufacturing Inc. (together, "A&J"), by and through their undersigned counsel, hereby submit this objection (the "Objection") to the *Motion Of Debtor Outdoor Direct Corporation f/k/a Brinkmann Corporation for an Order Pursuant to Section 362 of the Bankruptcy Code Determining that Automatic Stay is Inapplicable to Pending Litigation and Granting Relief from Stay with Respect Thereto* (the "Motion"),[2] and in support thereof respectfully states as follows:

**PRELIMINARY STATEMENT**

1. The Court should deny the Motion because of the significant harm that will result to these estates and A&J if the Debtors' selective stay relief is granted. Contrary to

---

[1] The Debtors, together with the last four digits of each Debtor's tax identification number, are: Malibu Lighting Corporation (8205); Outdoor Direct Corporation f/k/a The Brinkmann Corporation (9246); National Consumer Outdoors Corporation f/k/a Dallas Manufacturing Company, Inc. (1153); Q-Beam Corporation (1560); Smoke 'N Pit Corporation (9951); Treasure Sensor Corporation (9938); and Stubbs Collections, Inc. (6615). The location of the Debtors' headquarters and service address is 4215 McEwen Road, Dallas, TX 75244.

[2] Undefined capitalized terms used herein shall have the meanings set forth in the Motion.

the Debtors' characterization of the various proceedings between A&J and Outdoor Direct Corporation f/k/a The Brinkmann Corporation ("ODC"), which are pending in four separate tribunals – the International Trade Commission ("ITC"), the United States Court of Appeals for the Federal Circuit (the "Federal Circuit"), the United States District Court for the Southern District of Georgia (the "Georgia Action"), and the United States Patent and Trademark Office (the "IPR") – permitting the litigation between A&J and ODC to move forward will be incredibly costly, complex, and almost certainly will not be resolved during the short duration of these liquidating Chapter 11 cases.

2.      Even though A&J is the prevailing party in the underlying litigation and thus would not ordinarily oppose stay relief, under the circumstances of these cases – with ODC being liquidated and likely administratively insolvent – A&J submits that "cause" does not exist to permit ODC to pursue litigation that will have no benefit to the estates. To the contrary, granting stay relief will only force A&J and ODC to incur significant additional legal fees in intellectual property disputes over a business that no longer exists, with no ability for A&J to recover damages against ODC due to ODC's administrative insolvency.

3.      If, however, the Court concludes that cause exists to grant stay relief, A&J requests that the Court clarify that A&J is permitted to raise all defenses in the IPR Proceeding, and grant A&J stay relief to seek to prevent ODC from what appears to be a willful violation of orders entered by the ITC enjoining ODC from importing infringing grills and offering such grills for sale in the United States – post-petition infringement actions that give rise to additional administrative claims and potential civil penalties from the ITC. By selectively requesting stay relief only for the appeal from the ITC's ruling and the IPR proceeding, but not the Georgia Action, ODC is seeking to prevent A&J from fully defending its intellectual property rights in

related litigation. Stated differently, ODC is seeking this Court's sanction to use the automatic stay to obtain a litigation advantage against A&J, i.e., as both a "shield and a sword," and unfairly prejudice A&J in the underlying proceedings. As set forth below, the case law from this Circuit dictates that this improper use of the automatic stay should not be permitted.

4. For these reasons, A&J respectfully requests that the Court deny the Motion or condition the granting of the Motion on granting A&J relief to raise all defenses and counterclaims in the pending litigations, continue to prosecute the Georgia Action, as well as pursue all remedies against the Debtors for violating the standing orders entered by the ITC prohibiting infringement of A&J's patents.

**BACKGROUND**

5. A&J is a grill manufacturer resident in Georgia and sells grills under the brand name "Char-griller®." There is extensive litigation between A&J and ODC regarding the infringement by ODC of several of A&J's patents, all of which were stayed following ODC's filing of notices of bankruptcy in each of the actions.

6. On August 21, 2013, A&J filed a complaint with the ITC against several respondents, including ODC, alleging a violation of 19 U.S.C. §1337 by patent infringement. A&J alleged that the respondents were importing dual mode barbecue grills that combine a gas grill and a charcoal grill on a common support structure that infringe A&J's patents. A&J asserted one utility patent, U.S. Patent No.8,381,712 (the "712 patent"), and two design patents, U.S. Patent Nos. D660,646 and D662,773.

7. Also on August 21, 2013, A&J filed a patent infringement action in the Southern District of Georgia against ODC, alleging infringement of the same three patents in the ITC case: *A&J Manufacturing, LLC et al v. The Brinkmann Corporation*, Case 2:13-cv-00114-

LGW-RSB. That case was stayed pending the final disposition of the ITC action, but is now stayed by the automatic stay. Absent the application of the automatic stay, A&J would be free to partially lift the ITC-related stay to seek a domestic injunction, as that specific relief is not available from the ITC. The design patents remain asserted against ODC in the Georgia court.

8. The infringement assertion of the design patents was withdrawn in the ITC, and the ITC proceeded to find that ODC made and sold grills that infringe the '712 patent and entered an exclusion order and a cease and desist order to stop the importation of grills and ongoing infringement by ODC. The Final Determination of the Commission is attached hereto as Ex. A, the Final Initial Determination ("FID") is attached hereto as Ex. B, the Limited Exclusion Order ("LEO") is attached hereto as Ex. C, and the Cease and Desist Order ("CDO") to ODC is attached hereto as Ex. D.³

9. The ITC specifically found that ODC intentionally copied the A&J grill and infringed the '712 patent. Ex. B, p. 80 ("Brinkmann purchased A&J's Char-Griller Duo grill for the purpose of performing a competitive analysis … Brinkmann developed its competing product that has been referred to by another respondent as a 'knockoff of the Char-Griller Duo grill.'").

---

³ By this Objection, ODC also seeks to have to either have the stay declared inapplicable or otherwise lifted to press forward in the Federal Circuit appeals, 15-1494 and 15-1751. A&J understands that the ITC contends the automatic stay is inapplicable in the appeal of an ITC action and will file a pleading to that effect in this case. A&J believes that the ITC is likely correct and the automatic stay does not apply to the appeals of the ITC, but A&J is hesitant to take any action in those appeals that may considered to be adverse to the Debtors without the permission or ruling of this Court providing that the automatic stay does not apply. *See In re Spansion*, 418 B.R. 84, 91-92 (Bankr. D. Del. 2009)(holding that the police and regulatory power exception under section 362(b)(4) did not apply to the ITC's investigation of the importation or sale of imported goods that infringe a valid and enforceable United States patent), *vacated on other grounds, In re Spansion*, 2010 WL 2636115, at *3 (D. Del. June 29, 2010).

10. After receiving the finding of intentional infringement in the FID, which was entered at the ITC on September 26, 2014, ODC filed a petition for *Inter Partes* Review ("IPR") before the USPTO seeking unpatentability of the '712 patent on October 13, 2014, with the case titled *The Brinkmann Corp. v. A&J Manufacturing, LLC*, IPR2015-00056. *See* 35 U.S.C. §§ 311-319. A&J intends to move to dismiss the IPR.

11. Under the rules that govern proceedings in the IPR, even if the IPR proceeds at the initial stage and ODC is successful and all claims of the '712 patent are ultimately declared as unpatentable, such holding would not become final until all appeals of that final decision are exhausted. See 35 U.S.C. §§ 141, 319; 37 C.F.R. § 90.3. ODC tangentially admits this in its Motion. *See* Motion, ¶17. ("Subject to any appeal that A&J then might take to the Federal Circuit []"). Thus, the earliest that any holding of unpatentability could be final – assuming A&J was unsuccessful in all future proceedings – would be the denial of the petition for certiorari, which would occur at the earliest in the middle of **2017**.[4]

12. The ITC will not lift and vacate the LEO and CDO against ODC, or the infringing grills until finality of a holding of invalidity. *See gen.* 19 CFR §210.76; *In re Certain Silicon Microphone Packages and Products Containing Same,* USTIC Inv. No. 337-TA-629, October 28, 2011, p. 2 (determining that only upon finality of finding of invalidity in related proceeding is partial rescission of exclusion order warranted) (attached hereto as Ex. E). Thus, under any possible scenario with respect to the IPR proceeding, the LEO and CDO will stay in place until well into 2017.

13. Moreover, ODC has admitted that following entry of the LEO and CDO, it continued to press forward in yet other ways to import [potentially] infringing grills. ODC states

---

[4] ODC admits that any appeals delay finality, but omits the consequence of the absence of finality.

in its Motion that: "On July 1, 2015, ODC received a favorable ruling from U.S. Customs that ODC is not restricted from importing the Model 6340 because it does not infringe the '712 patent." *See* Motion, ¶11. U.S. Customs is not, however, the arbiter of infringement of potential redesigned grills, the ITC is. Any action of importing grills without first having the ITC determine infringement of the redesigns could have serious consequences for ODC.

15. 14. The way for ODC to have imported a grill that it believes has a redesign that does not infringe the '712 patent was for ODC to request that the ITC determine that the grill was not infringing prior to importation. *See* 19 CFR 210.79(a)("*Advisory opinions*. Upon request of any person, the Commission may, upon such investigation as it deems necessary, issue an advisory opinion as to whether any person's proposed course of action or conduct would violate a Commission exclusion order, cease and desist order, or consent order.[]").

15. Instead, as set forth in the Motion, ODC apparently wanted to avoid a review by the ITC and chose to roll the dice and import the potentially infringing grills after only seeking a ruling from U.S. Customs and Border, an action that enables A&J to move for formal enforcement of the LEO and CDO against ODC, and the ITC itself to seek civil penalties against ODC. *See generally* 19 CFR §210.75, note (b)(4)(2)(" Upon conclusion of a formal enforcement proceeding under this section, *the Commission may*… (ii) Bring civil actions in a United States district court pursuant to paragraph (c) of this section (and section 337(f)(2) of the Tariff Act of 1930) to recover for the United States the civil penalty accruing to the United States under that section for the breach of a cease and desist order or a consent order[].")(emphasis added). A&J understands that the ITC concurs that A&J can immediately move for formal enforcement of the LEO and CDO for the potential importation of infringing grills by ODC once the stay is determined to be inapplicable by this Court.

16. In light of ODC's actions, A&J also has the right to ask the Georgia court to enter a preliminary injunction against infringement by the imported grills. *See generally, Abbott Laboratories v. Sandoz, Inc.*, 544 F.3d 1341 (Fed. Cir. 2008). The ITC does not have the power to compel action of ODC within the United States and may only penalize parties for violations of its orders.

## ARGUMENT

*A. Cause Does Not Exist to Lift the Stay*

17. The Motion should be denied because ODC cannot demonstrate that "cause" exists to selectively lift the automatic stay only for those proceedings where it is attacking A&J's patents. ODC plainly misstates the alleged benefits from obtaining stay relief and the significant adverse consequences to these estates and A&J.

18. "In exercising its power to vacate or modify a stay, the court must consider the particular circumstances of the case and ascertain what is just to the claimants, the debtor, and the estate." *In re Mego Int'l, Inc.*, 28 B.R. 324, 326 (Bankr. S.D.N.Y. 1983), *citing In re Terry*, 12 B.R. 578 (Bankr. E.D. Wis. 1981). "The purpose of the rule granting a debtor relief by reason of the automatic stay is to protect debtors from legal harassment. That purpose has no application where the debtor is in the position of the assailant rather than the victim. Too great a potential for abuse of the bankruptcy procedures exists in such a situation. . . . Such suits could not only impede the progress of the arrangement . . . , *but the costs of the prosecution would further deplete the assets of the estate.*" *Hydramar, Inc. v. Gen. Dynamics Corp.*, 1986 WL 6223, at *4 (E.D. Pa. May 30, 1986)(emphasis added)(inner citations omitted). Here, lifting the stay will result in significant adverse effects to the estates and A&J.

19. Contrary to the Debtors' characterization of the various proceedings between A&J and ODC, which are pending before multiple courts across the country, the litigation between A&J and ODC is and will remain incredibly costly and almost certainly will not be resolved within the near future.[5] As detailed above, there are extensive proceedings, including appellate briefing, motion practice, oral argument, and further appeals, that will need to take place in the ITC, IPR, and Georgia proceedings. Even with respect to the IPR Proceeding alone, with appeals, any order will not become final (regardless of which party prevails) until 2017 at the earliest.

20. This significant cost and delay to ODC and its creditors, when ODC is already in the process of being liquidated and is likely administratively insolvent, demonstrates that "cause" does not exist to permit ODC to continue the litigation with A&J. To the contrary, granting stay relief will only force A&J and ODC to incur significant legal fees to litigate intellectual property disputes over a defunct business with little to no benefit to either party.

- B. *If the Court Grants ODC Stay Relief, It Should be Conditioned Upon Permitting A&J to Raise All Defenses and Counterclaims in the IPR Proceeding, and Granting A&J Stay Relief to Seek to Preclude ODC from Violating the LEO and CDO*

21. By its Motion, ODC proposes to only lift the stays in, or have the stays declared inapplicable to, select actions where it can attempt to attack A&J's patents, but not for

---

[5] To illustrate the likely cost of the future proceedings, ODC's intellectual property counsel is the fourth largest creditor on the Debtors' combined list of unsecured creditors holding the 35 largest unsecured claims, with an outstanding claim of $2,248,493.10 (D.I. 1, p. 9). Notwithstanding this significant amount of legal fees incurred in connection with the litigation that is the subject of the Motion, ODC budgets only $35,000 per month for this same counsel during these cases. *See Notice of First Supplemental List of Ordinary Course Professionals* (stating that ODC's intellectual property counsel has an "estimated monthly fee" of $35,000) (D.I. 85, p. 2). ODC plainly understates the cost to continue its losing battle with A&J, as well as the correct timeline for obtaining any alleged benefit from these actions. If the Motion is granted, extensive litigation and actions will occur, easily costing millions of more dollars on top of the millions that ODC has already spent or is indebted for.

the remaining proceedings where A&J seeks to protect against ongoing infringement and ODC's actions. Applicable precedent, however, establishes that a debtor may not use the automatic stay as a tactic to obtain a litigation advantage against a creditor. Thus, any order granting ODC stay relief should be conditioned upon the lifting of the stay in all the related proceedings.

22. In general, the automatic stay is intended to provide a debtor with breathing room and the opportunity to consolidate disputes concerning the debtor's property before the bankruptcy court. *See In re Res. Capital, LLC*, No. 12-12020 MG, 2012 WL 3249641, at *2 (Bankr. S.D.N.Y. Aug. 7, 2012). A debtor may not, however, use the automatic stay to preserve its "breathing spell," while simultaneously pursuing its claims against creditors. "The stay is a shield, not a sword." *Id.* at *4 (inner quotation omitted).

23. Indeed, in a case relied on by ODC in its Motion, *In re Scarborough-St. James Corp.*, 535 B.R. 60 (Bankr. D. Del. 2015), the court made clear that the automatic stay should not be applied to prevent a creditor from pursuing its rights when the debtor seeks to continue litigation against the creditor. In granting relief from the stay to permit the creditor to enforce its rights in the court where the prepetition action was pending, the *Scarborough* court stated that "the Debtor is not seeking 'breathing room' from its litigation; it is continuing litigation. . . . Thus, it appears that *Debtor is not shying away from litigation; rather, Debtor seeks to litigate only issues of its choosing and in its preferred forum. Debtor is using its bankruptcy case as a 'sword' and not a 'shield.'" Id.* at *70. "[W]hen the debtor is in the position of assailant rather than victim, the potential for abuse of that purpose is manifest." *Saxon*, 43 B.R. at 67.

24. As in *Scarborough*, if ODC is granted stay relief to pursue its litigation against A&J, the order granting stay relief should clarify that A&J is not precluded from taking

9

any action in the IPR or ITC Appeal, including asserting any defenses[6] or counterclaims, as well as seeking to enforce the LEO and CDO before the ITC and in the Georgia Action, actions that are similar to permissive counterclaims as A&J is required to enforce its patents in response to this conduct.[7] *See Hydramar*, 1986 WL 6223, at *4 (holding that there was "too great a potential for abuse of the bankruptcy procedures" to prohibit a creditor from asserting a counterclaim through the application of the automatic stay); *In re Millsap*, 141 B.R. 732, 733 (Bankr. D. Id. 1992)("A creditor is entitled to relief from the section 362 automatic stay to assert a counterclaim in debtor initiated non-bankruptcy proceedings in most instances as a matter of right considering the compulsory nature of most counterclaims under rules of civil procedure."); *In re Wedtech Corp.*, 87 B.R. 279 (Bankr. S.D.N.Y 1988)(noting that where a debtor is the litigation assailant, it must consent to stay relief for the purpose of permitting the defendant to setoff counterclaim."); *In re Saxon Indus., Inc.*, 43 B.R. 64, 67 (Bankr. S.D.N.Y. 1984)("In light of the litigation initiated by Saxon, it would clearly be inequitable to allow Saxon to use section 362 to prevent Fox from pressing counterclaims"); *In re Deep*, 279 B.R. 653 (Bankr. N.D.N.Y. 2002)(finding that "cause" existed to lift stay to allow copyright holders to pursue their request for preliminary injunction against debtors' alleged infringement in other forum where

---

[6] Under applicable precedent, the automatic stay does not preclude A&J from asserting defenses in any of the proceedings, including the filing of motions to dismiss. *See Acands, Inc. v. Travelers Cas. & Sur. Co.*, 435 F.3d 252, 259 (3d Cir. 2006) ("[d]efenses, as opposed to counter-claims, do not violate the automatic stay because the stay does not seek to prevent defendants sued by a debtor from defending their legal rights and 'the defendant in the bankrupt's suit is not, by opposing that suit, seeking to take possession of it.'"). Nevertheless, A&J requests that the order expressly provide that A&J has stay relief, to the extent required, to assert any and all defenses in the IPR proceeding.

[7] Equitable estoppel and laches may apply if a patentee does not seek to affirmatively protect its rights once it learns of an infringement. *See A.C. Aukerman Co. v. R.L. Chaides Const. Co.*, 960 F.2d 1020, 1029 (Fed. Cir. 1992)("In refusing to enforce a patentee's claim of infringement, the Supreme Court invoked the maxim: 'Courts of equity, it has often been said, will not assist one who has slept upon his rights, and shows no excuse for his laches in asserting them.'")(citing *Lane & Bodley Co. v. Locke*, 150 U.S. 193, 201 (1893)).

infringement lawsuit was pending.).  It would be entirely inequitable to permit ODC to use the automatic stay to take offensive action against A&J by seeking to attack A&J's patents while at the same time preventing A&J to mount a proper defense or preclude A&J from enforcing its rights on its patents in the ITC and Georgia Action.

25.    For these reasons, A&J respectfully requests that any order granting ODC stay relief in the IPR or ITC appeal should be conditioned upon granting stay relief to A&J to assert any defenses or counterclaims in any of the pending proceedings.

## **CONCLUSION**

26. In view of the futility of the contemplated actions and consequences flowing therefrom, A&J submits that "cause" does not exist to permit ODC to waste the last resources of its estate continuing its costly litigation with A&J. A&J respectfully requests that the Court deny the Motion. In the event the Court does not deny the Motion, A&J respectfully requests that the Court condition approval of the Motion on granting A&J relief to raise all defenses and counterclaims in the pending litigations, continue to prosecute the Georgia Action, as well as pursue all remedies against the Debtors for violating the standing orders entered by the ITC prohibiting infringement of A&J's patents.

Dated: October 30, 2015  
      Wilmington, Delaware

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Erin R. Fay*  
Curtis S. Miller (No. 4583)  
Erin R. Fay (No. 5268)  
1201 North Market Street  
P. O. Box 1347  
Wilmington, DE 19801  
Telephone: (302) 658-9200  
Facsimile: (302) 658-3989  
Email: cmiller@mnat.com  
    efay@mnat.com

- and -

Hans Santos & Reich  
Lance D. Reich  
1411 Fourth Avenue, Suite 760  
Seattle, Washington 98101  
Telephone: (206) 489-2648  
Facsimile: (425) 374-0921  
Email: Lance@hansantos.com

*Attorneys for A&J Manufacturing LLC*

9590134