UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

In re

**MALIBU LIGHTING CORPORATION,**
*et al.*,

Case No. 15-12080-KG
Chapter 11
Jointly Administered
**Hearing Date: December 8, 2015 at 3:00 p.m.**
**Objection Deadline: December 1, 2015 at 4:00 p.m.**

**Debtors**[1]

## EXPEDITORS INTERNATIONAL OF WASHINGTON, INC.'S MOTION FOR RELIEF FROM THE AUTOMATIC STAY

Pursuant to 11 U.S.C. § 362(d) and FED. R. BANKR. P. 4001, Expeditors International of

Washington, Inc. and its subsidiaries, including Expeditors Canada, Inc. (collectively,

"Expeditors"), respectfully states as follows:

1. Expeditors is a non-vessel owned common carrier, freight forwarder, customs broker,

warehouseman and provider of distribution and other logistics services.

2. This Motion seeks an order granting Expeditors relief from the automatic stay as to its

liens and security interests.

3. A Verification of Summereen Nott, Director, Global Legal Services for Expeditors is

attached hereto as Exhibit A and filed in support herewith.

## I.     EXPEDITORS HOLDS SECURED CLAIMS AGAINST THE DEBTOR

4. On October 8, 2015 (the "Petition Date"), Malibu Lighting Corporation ("MLC") and

its affiliated debtors as debtors in possession in the above-captioned cases (collectively, the

---

1 The Debtors, together with the last four digits of each Debtor's tax identification number, are: Malibu Lighting
Corporation (8205); Outdoor Direct Corporation f/k/a The Brinkmann Corporation (9246); National Consumer
Outdoors Corporation f/k/a Dallas Manufacturing Company, Inc. (1153); Q-Beam Corporation (1560); Smoke 'N
Pit Corporation (9951); Treasure Sensor Corporation (9938); and Stubbs Collections, Inc. (6615). The location of
the Debtors' headquarters and service address is 4215 McEwen Road, Dallas, TX 75244.

"Debtors") filed a voluntary petition for relief under Chapter 11 of the United States Bankruptcy

Code, 11 U.S.C. §§ 101 et seq. (the "Code"). The Debtors' cases were consolidated for

procedural purposes only on October 9, 2015.

5. The Debtor and Expeditors are parties to the following pre-petition agreements

(collectively, the "Contracts"):

(a) MLC's Application for Credit to Expeditors (including the grant of a security interest) (a true copy of which is attached hereto as Exhibit B).

(b) Outdoor Direct Corporation f/k/a The Brinkmann Corporation's ("Brinkmann") Application for Credit to Expeditors (including the grant of a security interest) (a true copy of which is attached hereto as Exhibit C).

(c) Guaranty of Brinkmann of MLC's obligations to Expeditors (a true copy of which is attached hereto as Exhibit D).

(d) Certain bills of lading issued by Expeditors, which constitute contracts for the carriage of goods (a true copy the bill of lading terms and conditions is attached hereto as Exhibit E ).

6. Before the Petition Date, Expeditors transported goods in international and domestic

commerce for the Debtors. In the course of performing such services, Expeditors acquired

possession, custody and control of, *inter alia*, goods belonging to the Debtors or in which the

Debtors claim an interest and various commercial documents, including documents of title.

7. Without limiting the foregoing, Expeditors has possession, custody or control of

certain goods of the Debtors (the "Petition Date Cargo") and related documents, having a

declared value of approximately $4.9 million. On information and belief the Petition Date Cargo

consists of lighting fixtures, parts and accessories.  To the extent the Debtors abandon the

Petition Date Cargo, Expeditors anticipates that the value of the Petition Date Cargo will

decrease significantly.

8. As of the Petition Date, the Petition Date Cargo was located in Expeditors' possession, custody or control *en route*.

9. As set forth more fully below, Expeditors holds maritime and other carrier's liens on the Petition Date Cargo and other property of the Debtors' estates, as well as a consensual security interest in the Petition Date Cargo and other property of the Debtor's estate.

10. As of the Petition Date, MLC and Brinkman owe Expeditors $38,676.53 in the aggregate (collectively, Expeditors' "Claims") for transportation, storage and preservation of goods and other property, including freight, storage, distribution, Customs duties and fees, demurrage, detention, and other charges, plus late charges on the foregoing at 18% per annum and attorneys' fees. All charges continue to accrue. Significantly, storage charges continue to accrue with respect to the Petition Date Cargo at a rate of approximately $2,720.19 per week for Brinkman related storage charges and $4,845.00 per week for MLC related storage charges.

11. Pursuant to the Contracts, as security for Expeditors' claims, Expeditors holds Expeditors duly-perfected first-priority liens on, and security interests in, the following (collectively, the "Collateral"):

(a) all of the Petition Date Cargo and related documents;

(b) all other property in Expeditors' possession, custody or control or en route as of the Petition Date;

(c) all other goods, documents of title and other property which Expeditors made available to the Debtor for the purpose of ultimate sale or exchange or for loading, unloading, storing, shipping, transshipping, manufacturing, processing or otherwise dealing with them in a manner preliminary to their sale or exchange, and all documents related thereto; and

(d) all proceeds and products of any of the foregoing, including "cash collateral."

12. Expeditors objects to the Debtors' use of Expeditors' cash collateral.

3

13. The Debtors defaulted on their obligations prior to the Petition Date. Pursuant to non-bankruptcy law and the Contracts, Expeditors justifiably retained possession of the Petition Date Cargo and documents, pending its receipt of adequate protection for its liens and security interests.

14. Promptly on learning of the commencement of this case, Expeditors contacted the Debtors' counsel to inform the Debtors of Expeditors' liens and security interest. Expeditors further offered to tender the Petition Date Cargo in exchange for adequate protection for Expeditors' interest in the Petition Date Cargo. Expeditors proceeded in this manner pursuant to the ruling in *Colortran, supra*.

15. Moreover, Expeditors requested that the Debtors pay its outstanding charges and make a determination as to whether it would accept (with payment) the Petition Date Cargo or abandon such goods.

16. In response, the Debtors have represented to Expeditors that they are abandoning their interest in the Petition Date Cargo. Further, based on Expeditors' secured claims and the asserted claims of other secured parties, the Debtors have no equity in the Petition Date Cargo.

### A.     AS SECURITY FOR ITS CLAIMS, EXPEDITORS HOLDS A UCC ARTICLE 7 CARRIER'S LIEN AND A MARITIME CARRIER'S LIEN.

17. Section 7-307(a) of the Uniform Commercial Code[1] (2003) states as follows:

> A carrier has a lien on the goods covered by a bill of lading or on the proceeds thereof in its possession for charges after the date of the carrier's receipt of the goods for storage or transportation, including demurrage and terminal charges, and for expenses

---

[1]The applicable Uniform Commercial Code provisions are identical in substance to the Uniform Commercial Code's. For simplicity, Expeditors cites to the Official Text.

necessary for preservation of the goods incident to their
transportation or reasonably incurred in their sale pursuant to law.

18. When Expeditors took possession of the Collateral at point of origin, Expeditors issued documents of title evidencing its receipt of the Collateral for shipment purposes, and was a "carrier" vis a vis the Debtor. *Logistics Management, Inc. v. One Pyramid Tent Arena*, 86 F.3d 908, 913-914 (9th Cir. 1996). Therefore, on taking possession of the Collateral and issuing documents, Expeditors held a valid and enforceable carrier's lien on said Collateral. UCC § 7-307 (2003).

19. Moreover, to the extent the contracts of carriage were primarily for ocean carriage, Expeditors also has a possessory carrier's lien under federal maritime law. *The Bird of Paradise*, 72 U.S. 545, 555 (1866); *4,885 Bags of Linseed*, 66 U.S. 108 (1861); *Logistics Management, supra*, 86 F.3d at 914-915; *Arochem Corp. v. Wilomi, Inc.*, 962 F.2d 496, 499-500 (5th Cir. 1992).

**B.      AS SECURITY FOR ITS CLAIMS, EXPEDITORS HOLDS A UCC ARTICLE 9 SECURITY INTEREST**.

20. A security interest attaches to collateral, if the debtor gives the secured creditor a security agreement, the secured creditor gives value, and the debtor has rights in the collateral or the power to transfer rights to the secured party. UCC § 9-203(b) (2010).  Each of MLC and Brinkman's signed Application for Credit with Expeditors granted Expeditors "a continuing lien and security interest in any and all property of [the Debtor] (including goods and documents relating thereto) now or hereafter in [Expeditors'] possession, custody or control or en route (the 'Collateral'). . . ." This constitutes a valid security agreement, covering both existing and after-acquired collateral. *Paul Harris Stores, Inc. v. Expeditors International of Washington, Inc. (In*

*re Paul Harris Stores, Inc.)*, 342 B.R. 290 (Bankr. S.D. Ind. 2006) (interpreting identical language). *See, also*, *Expeditors International of Washington, Inc. v. Colortran, Inc. (In re Colortran, Inc.)*, 218 B.R. 507 (Bankr. 9th Cir. 1997), *aff'd* 165 F.3d 35, 1998 WL 792307 (9th Cir. 1998) (interpreting the lien clause in Expeditors' Terms and Conditions of Service); *Expeditors International v. Wang Laboratories, Inc.*, 1995 U.S. Dist. LEXIS 20007 (D. Mass. 1995) (same). Expeditors gave substantial value, by transporting the Collateral.

21. The Debtors have sufficient rights in the Collateral for Expeditors' security interest to attach to the Collateral. UCC § 2-401(2) (1962) (title passes to the buyer when the seller completes its obligations with respect to delivery); UCC § 2-501(1) (1962) (identification of the goods to the contract gives the buyer a "special property" and an insurable interest in the goods). *See, also*, INCOTERMS 2010 (International Chamber of Commerce). These rights are sufficient for the Petition Date Cargo to become "property of the estate" (as defined in 11 U.S.C. § 541). Therefore, the Debtor has rights in the Collateral.

22. In addition, Expeditors' security interest extends to proceeds of the original goods. UCC § 9-315 (2010); and *In re Chaseley's Foods, Inc.,* 726 F.2d 303 (7th Cir. 1983).

23. Therefore, Expeditors holds a valid and attached security interest in the Collateral.

## II.     EXPEDITORS' LIENS AND SECURITY INTEREST ARE PERFECTED.

24. Expeditors perfected its liens and security interest by possession, custody and control of the Collateral, including through the issuance of bills of lading, and Expeditors remains in possession, custody and control of the Petition Date Cargo and related documents. *See, e.g.*, UCC §§ 7-209 (2003), 7-307 (2003), 9-312 (2010) and 9-313 (2010).

25.  Moreover, as permitted by 11 U.S.C. §§ 362(b)(3) and 546(b), Expeditors filed

UCC-1 financing statements describing the Collateral (true copies of which are attached hereto as Exhibit F).

## III. EXPEDITORS' LIENS AND SECURITY INTEREST ARE ENTITLED TO PRIORITY.

### A. EXPEDITORS' CARRIER'S LIENS ARE SENIOR TO ANY SECURITY INTEREST.

26. Section 9-333 (2010) of the UCC provides in pertinent part as follows:

> (a) ["Possessory lien."] In this section, "possessory lien" means an interest, other than a security interest or an agricultural lien:
>
> > (1) which secures payment or performance of an obligation for services or materials furnished with respect to goods by a person in the ordinary course of the person's business;
> >
> > (2) which is created by statute or rule of law in favor of the person; and
> >
> > (3) whose effectiveness depends on the person's possession of the goods.
>
> (b) [Priority of possessory lien.] A possessory lien on goods has priority over a security interest in the goods unless the lien is created by a statute that expressly provides otherwise.

27. As stated above, Expeditors holds valid, properly perfected carrier's liens on Collateral in its possession, custody, or control. These liens constitute "possessory liens" under UCC § 9-333.

28. These carrier's liens are entitled to priority over competing security interests. First, Expeditors' UCC Article 7 lien is effective against, and therefore senior to, other secured parties. UCC §§ 7-307(b) (2003) and 9-333 (2010). Second, Expeditors' maritime lien arises under

federal common law, *The Bird of Paradise*, 72 U.S. 545, 555 (1866), and *4,885 Bags of Linseed*, 66 U.S. 108 (1861), so it also trumps the claims of other secured parties. UCC § 9-333 (2010).

**B.      EXPEDITORS' SECURITY INTEREST HAS PURCHASE-MONEY PRIORITY.**

29. Purchase-money security interests are entitled to priority over other security interests, even if the other security interests were perfected earlier in time. UCC § 9-324(b) (2010). A purchase-money obligation is "an obligation of an obligor incurred as all or part of the price of the collateral or for value given to enable the debtor to acquire rights in or the use of the collateral if the value is in fact so used." UCC § 9-103(a)(2) (2010). Official Comment 3 to UCC § 9-103 articulates the types of debts subject to a purchase money security interest:

> As used in subsection (a)(2), the definition of "purchase-money obligation," the "price" of collateral or the "value given to enable" includes obligations for expenses incurred in connection with acquiring rights in the collateral, sales taxes, duties, finance charges, interest, *freight charges, costs of storage in transit, demurrage,* administrative charges, expenses of collection and enforcement, attorney's fees, and other similar obligations.

UCC § 9-103 Cmt. 3 (emphasis added).

30. A security interest is a purchase-money security interest to the extent that the collateral secures a purchase-money obligation. UCC § 9-103(b)(1) (2010). Further, a purchase-money security interest is automatically cross-collateralized. UCC § 9-103(b)(2) (2010).

31. Expeditors holds a purchase-money security interest in the Collateral. Expeditors took possession of the Collateral at origin and transported same for the Debtors at destination. Additionally, Expeditors cleared the Collateral through U.S. Customs. Without the services provided by Expeditors, the Collateral would not be available to the Debtors for sale. Therefore,

Expeditors gave value to "enable [the Debtor] to acquire rights in or the use of the collateral." UCC § 9-103(a)(2) (2010). Expeditors' purchase-money security interest was properly perfected by Expeditors' possession, custody, and control.

32. Because purchase-money security interests are cross-collateralized, Expeditors' purchase-money priority status in the Petition Date Cargo extends to all of Expeditors' Claims. UCC § 9-103(b)(2) (2010). Therefore, Expeditors' purchase-money security interest in the Petition Date Cargo has first priority over competing security interests, if any. UCC § 9-324(b).

### C. EXPEDITORS' INTERESTS IN THE COLLATERAL ARE SENIOR TO THE BANKRUPTCY ESTATE'S INTEREST.

33. Expeditors' security interests in the Collateral are also entitled to priority over the rights of lien creditors and unsecured creditors (including the rights and interests of the Debtors' bankruptcy estate). 11 U.S.C. § 544; and UCC § 9-317(a)(2010).

### IV. EXPEDITORS IS ENTITLED TO RELIEF FROM THE AUTOMATIC STAY.

34. Expeditors submits that it cannot release the Petition Date Cargo and documents of title in its possession, until it has received adequate protection of its liens and security interests, because relinquishment of the Petition Date Cargo, absent stipulation or order of this Court, could endanger Expeditors' liens and security interests. Therefore, notwithstanding the automatic stay, Expeditors has the right to retain possession of the Petition Date Cargo to preserve its liens. 11 U.S.C. §§ 362(b)(3) and 546(b)(1)(B).

35. Expeditors also has the right to adequate protection of its interests in the Collateral, before the Debtors may use, sell or lease such property. 11 U.S.C. § 363(c)(2) (as to cash collateral) and § 363(e) (as to all other property that the Debtor may use, sell or lease).

36. In the absence of adequate protection, a secured creditor is entitled to relief from the automatic stay. 11 U.S.C. § 362(d)(1).

37. A secured creditor is also entitled to relief from the automatic stay if the debtor has no equity in the property and the property is not necessary to an effective reorganization. 11 U.S.C. § 362(d)(2).

38. In the case at bar, the Debtors have represented to Expeditors that they are abandoning their interest in the Petition Date Cargo. Further, the Debtors have no equity in the Petition Date Cargo.

39. Therefore, Expeditors is entitled to relief from the automatic stay.

40. However, storage charges are accruing at a substantial rate. Therefore, it is essential that the automatic stay be terminated quickly to mitigate potential loss and expense to Expeditors.

41. As this Motion presents no novel issues of law, Expeditors respectfully requests this Court to waive the requirements of D. Del. L.R. 7.1.1 that this Motion be submitted without a separate brief or memorandum of law.

WHEREFORE, Expeditors prays that this Court:

(A) Authorize Expeditors to continue possession of the Collateral to allow Expeditors to maintain perfection of its carrier's liens in the Petition Date Cargo.

(B) Terminate the automatic stay as to the Petition Date Cargo and allow Expeditors to foreclose its liens and security interest in the Petition Date Cargo, and address and (if Expeditors determines in its discretion to do so) honor claims by the consignors or holders of bills of lading that cover the Petition Date Cargo, including claims for re-consignment or return of the Petition

Date Cargo.

     (C) Award Expeditors such other and further relief as this Court deems appropriate.

                                  Respectfully submitted,

                                  Expeditors International of Washington, Inc.
                                  By its attorneys,

Date:   November 5, 2015                 */s/ Jason C. Powell*
                                  Jason C. Powell (No. 3768)
                                  Ferry Joseph & Pearce, PA
                                  824 N. Market Street, Suite 1000
                                  Wilmington, DE 19801
                                  Tel. (302) 575-1555
                                  Fax (302) 575-1714

                                  and

Date:   November 5, 2015                 */s/ Lisa M. Kresge*
                                  Lisa M. Kresge #8707
                                  Brennan, Recupero, Cascione, Scungio &
                                  McAllister, LLP
                                  362 Broadway
                                  Providence, RI 02909
                                  Tel. (401) 453-2300
                                  Fax (401) 453-2345