**EXHIBIT E**

# LONG FORM
# OCEAN BILL OF LADING

## TERMS AND CONDITIONS

1. DEFINITIONS AND RULES OF CONSTRUCTION.

(a) As used in this Bill of Lading:

"Carriage" means the whole of the carriage, handling and storage of Goods, and other operations and services undertaken or performed by or on behalf of the Carrier in respect of the Goods.

"Carrier" means the company stated on the front of this Bill of Lading as being the Carrier and on whose behalf this Bill of Lading has been signed together with Expeditors International of Washington, Inc. and its subsidiaries.

"Charges" includes freight, dead freight, demurrage, detention, and all expenses and other money obligations incurred and payable by the Merchant with respect to the Carriage or otherwise under the applicable tariffs or this Bill of Lading.

"COGSA" means the Carriage of Goods by Sea Act of the United States of America approved on 16th April 1936, as amended and recodified from time to time.

"Container" includes any container, trailer, transportation tank, lift van, flat, pallet, or any similar article of transport used to hold or consolidate goods.

"Goods" means the cargo described on the face of this Bill of Lading and, if the cargo is on, in or otherwise Stuffed into Containers supplied or furnished by or on behalf of the Merchant, includes the Containers.

"Governmental Authority" includes: all U.S. and foreign national, federal, state, local, and other governments; government corporations, authorities, boards, commissions, ports, bodies, and entities; and all departments, ministries, agencies, bureaus, offices, and subdivisions of any of the foregoing.

"Hague Rules" means the provisions of the International Convention for Unification of Certain Rules Relating to Bills of Lading signed at Brussels on 25th August 1924.

"Hague-Visby Rules" means the Hague Rules as amended by the protocol signed at Brussels on 23rd February 1968.

"Harter Act" means 46 U.S.C. § 30702, *et seq.*, as amended and recodified from time to time.
"Herein," "hereof," and "hereto" are references to this Bill of Lading.

The terms "include," "including," and similar terms shall be construed as if followed by the words "but not limited to."

"Law" means all present and future laws, statutes, codes, rules, regulations, ordinances, rules of law, principles of law, orders, decrees, judgments, directives or the equivalent, and all international conventions and treaties to the extent applicable by the terms of this Bill of Lading.

"Merchant" includes the shipper, the consignor, the consignee, the receiver of the Goods, the holder of this Bill of Lading, any Person owning or entitled to the possession of the Goods or this Bill of Lading, any Person having a present or future interest in the Goods, or any Person acting on behalf of any of the above mentioned Persons. If more than one Person is a "Merchant" under this Bill of Lading, then all of Merchant's representations, warranties, covenants, indemnities, agreements, consents, and waivers under this Bill of Lading shall be joint and several, but Carrier may exercise its rights and remedies upon the breach or default by any one Person constituting the Merchant (with or without exercising rights or remedies against the Goods, any other property, or any other Person).

"Participating Carrier" means any other carrier by water, land, or air, performing any stage of the Carriage, including inland carriers, whether acting as sub-carrier, connecting carrier, substitute carrier, and/or bailee.

"Particulars" includes all manner of details with respect to the Goods, including the exact description, weight, kind, nature, content, measure, gauge, quantity, quality, condition, marks, numbers, and value.

"Person" includes an individual, corporation, limited liability company, general or limited partnership, joint venture, association, trust, Participating Carrier, Governmental Authority, and any other type of organization or entity.

"Shipping Unit" means each physical unit or piece of cargo not shipped in a package including articles or things of any description whatsoever, except Goods shipped in bulk and irrespective of the weight or measurement unit employed in calculating freight charges, and includes the term "customary freight unit" as used in COGSA (where applicable by its own force or by agreement), and, otherwise, "unit" as used in the Hague Rules, the Hague-Visby Rules, or any national legislation adopting the Hague Rules or the Hague-Visby Rules.

"Stuffed" includes filled, consolidated, packed, loaded, or secured, and references to "Stuffed" include placing in or on the relevant Container.

"United States" means the United States of America.

"Vessel" means the vessel named on this Bill of Lading and any other vessel, ship, barge, lighter, watercraft, or other means of transport which is or shall be substituted, in whole or in part, for such vessel.

(b) Words denoting the singular shall include the plural, and vice versa, and words denoting any gender shall include all genders; and captions of sections of this Bill of Lading are inserted for convenience only and shall not be deemed a part hereof or affect the construction or interpretation of any provisions of this Bill of Lading. Whenever reference is made to Carrier's agreement, approval, or consent or to any arrangement involving Carrier, even if not specifically so stated, such agreement, approval, arrangement, or consent shall not be binding upon Carrier unless in writing and signed by a duly-authorized representative of Carrier, and Carrier may withhold such agreement, approval, arrangement, or consent in its sole discretion. All warranties by Merchant shall be construed to include representations of fact.

2. TARIFF. All applicable provisions of Carrier's tariffs that are published in accordance with the requirements of the Federal Maritime Commission or any other Governmental Authority are incorporated herein by reference. Copies of such provisions are obtainable from the Carrier upon request or from the relevant Governmental Authority with whom the tariffs have been filed.

3. OTHER AGREEMENTS. This Bill of Lading, together with terms set forth in Carrier's invoices and in Carrier's Application of Credit executed by Merchant supersede all agreements or engagements for the shipment of the Goods. All provisions of this Bill of Lading, whether written, typed, stamped, or printed, are accepted and agreed by the Merchant and shall be binding as fully as if signed by the Merchant, any local customs or privileges to the contrary notwithstanding. Nothing in this Bill of Lading shall operate to limit or deprive the Carrier of any statutory or other protection or exemption from or limitation of liability. If required by the Carrier, a signed original Bill of Lading duly endorsed must be surrendered to the Carrier or its agent at the Port of Discharge prior to the release of any Goods.

4. WARRANTY. Merchant warrants that in agreeing to the terms hereof he is, or is the agent of and has the authority of, the Person owning or entitled to the possession of the Goods or any Person who has a present or future interest in the Goods.

5. CARRIER RESPONSIBILITY – GENERAL PROVISIONS.

 (a) If any portion of the Carriage is to or from the United States, or if Law other than United States Law is not compulsorily applicable, COGSA shall govern before loading and after discharge and during the entire time between the time the Goods are received from and redelivered to the Merchant, unless otherwise required by the Harter Act or by other applicable United States Law. In any trade that does not involve any carriage to or from the United States, the Hague Rules (or compulsorily applicable national Law implementing the Hague Rules) shall govern Carrier's liability, limits on liability, and exemptions for loss, damage, or delay related to or in connection with the Goods, except where the Hague-Visby Rules are compulsorily applicable Law, in which case the Hague-Visby Rules shall govern such liability, limits on liability, and exemptions, provided:

(i) Merchant acknowledges and agrees that the Carrier is a non-vessel owning common carrier, that it does not own, lease, charter, or operate Vessels or other modes of transportation, or engage in cargo handling or storage, as a result of which Carrier will be required to (and may, in its sole discretion) subcontract with Persons (at any tier), to transport, handle or store cargo to accomplish all or part of the Carriage. Merchant is bound by the limitations on, and exemptions from, liability that are contained in the tariffs, bills of lading, and other contracts by which such other Persons are engaged to perform all or part of the Carriage. Such other Persons shall enjoy the benefit of all of Carrier's rights and liberties with respect to the Goods and the Carriage. The Merchant agrees that the Carrier shall be deemed to be a beneficiary of the tariffs, bills of lading, and contracts of such other Persons and of all limitations of, and exemptions from, liability therein contained even though the Carrier acts as agent of the Merchant in contracting with the actual Person for the Carriage of the Goods. Under no circumstances shall the Carrier be responsible for any damages to an extent greater than it can recover from the actual Person engaged to perform all or part of the Carriage or any beneficiaries of its bill of lading.

(ii) Carrier shall be entitled to (and nothing in this Bill of Lading shall operate to deprive or limit such entitlement) full benefit of, and rights to, all limitations of and exclusions from liability and all rights conferred or authorized by any applicable Law of any country (including, where applicable, Chapter 305 of Title 46 of the United States Code, and other relevant provisions of the United States Code) and without prejudice to the generality of the foregoing also all Laws available to the owner of the Vessels on which the Goods are carried.

(b) The Carrier undertakes to procure such services as necessary and shall have the right at its sole discretion to select any modes of land, sea, or air transport and to arrange participation by other Persons who handle or store cargo, or provide other services, to accomplish the total or any part of the Carriage between the Place of Receipt and the Place of Delivery as shown on this Bill of Lading.

(c) In the event that it is proven that loss or damage occurred during Carriage, but the stage of Carriage during which loss of or damage to the Goods occurred cannot be proved, it will be irrebuttably presumed that the loss or damage occurred while the Goods were on the Vessel, and all obligations, rights, and immunities of Carrier and Merchant with respect to such loss or damage shall be determined accordingly.

(d) The rights, defenses, exemptions, limitations of and exonerations from liability, and immunities of whatsoever nature provided for in this Bill of Lading shall apply in every action or proceeding against the Carrier, its agents or servants, Participating Carriers, independent contractors, or other Persons engaged to perform all or part of the Carriage, whether in tort, contract, or otherwise.

(e) Services performed by Carrier as to Goods before their receipt by or for Carrier at the Place of Receipt shown on this Bill of Lading or after their delivery by or for Carrier at the Place of Delivery shown on this Bill of Lading were or shall be performed solely as agent for the Merchant, and Carrier shall have no responsibility or liability as a Carrier for any acts or omissions of any Persons or loss of or damage or delay to the Goods during such periods.

### 6. CARRIER RESPONSIBILITY – LIMITATIONS.

(a) Package, Customary Freight Unit, or Shipping Unit Limitation.

(i) Where COGSA applies to this Bill of Lading (whether by its own force or by agreement), Carrier shall not be liable for loss or damage in an amount exceeding US $500 lawful money of the United States per package, or in case of Goods not shipped in packages, per Shipping Unit, unless a higher declared value has been made and noted, and extra Charges paid, in accordance with Clause 6(b) hereof.

(ii) Where COGSA does not apply, but where the Hague Rules, Hague-Visby Rules, or any legislation making such rules compulsorily applicable to this Bill of Lading apply, Carrier shall not be liable for loss or damage to or in connection with the Goods in an amount exceeding the package or Shipping Unit limitation as laid down by such Rules or legislation, unless a higher declared value has been made and noted, and extra Charges paid, in accordance with Clause 6(b) hereof. If no limitation amount is applicable under such Rules or legislation, the limitation shall be US $500 lawful money of the United States per Shipping Unit.

(iii) Where neither COGSA, nor the Hague Rules, nor the Hague-Visby Rules, nor any legislation applying such Rules is compulsorily applicable, Carrier's liability shall not exceed US$500 per Shipping Unit or US$2 per kilo of the gross weight of the Goods lost, damaged, or in respect of which the claim arises, or the value of such Goods, whichever is less.

(iv) Where a lesser monetary limitation is applicable, such as during handling by a Participating Carrier or independent contractor and damage occurs during its or their period of care, custody, control, and/or responsibility, the Carrier shall be entitled to avail itself of such lesser limitation.

(b) <u>Ad Valorem - Declared Value of Package or Shipping Unit</u>.

(i) To secure a due proportion between the charges it earns and the amount for which it may be responsible in the event of loss or damage to the Goods, Carrier has established its regular, lower rates and charges based on the limited value of the Goods as agreed herein. Carrier's liability may be increased to a higher value by a declaration in writing of the value of the Goods by the shipper before delivery to Carrier of the Goods for shipment, such higher value being inserted on the front of this Bill of Lading in the space provided and, if required by Carrier, extra freight, premiums, and other Charges paid. Unless the Merchant so declares the value of the Goods and pays ad valorem charges, the Merchant is deemed to have elected the regular, lower charges of Carrier, and to have agreed that, for purposes of computing any liability of Carrier, the limitations of liability set forth in Clause 6(a) hereof shall apply. In such case if the actual value of the Goods shall exceed such declared value, the value shall nevertheless be deemed to be the declared value and Carrier's liability, if any, shall not exceed the declared value and any partial loss or damage shall be adjusted pro rata on the basis of such declared value.

(ii) The value of the Goods shall be determined according to the commodity exchange price at the place and time of delivery to Merchant or at the place and time when they should have been so delivered or if there is no such price according to the current market price by reference to the normal value of Goods of the same kind and quality, at such place and time.

(c) <u>Definition of Package or Shipping Unit</u>. Where a Container is used to consolidate Goods and such Container is Stuffed by Carrier, the number of packages or Shipping Units stated on the face of this Bill of Lading in the box provided shall be deemed the number of packages or Shipping Units for the purpose of any limit of liability per package or Shipping Unit provided in any applicable international convention or national Law relating to the carriage of goods by sea. Except as aforesaid the Container shall be considered the package or Shipping Unit. As to Goods shipped in bulk the limitation applicable thereto shall be the limitation provided in such Law which may be applicable and in no event shall anything herein be construed to be a waiver of limitation as to Goods shipped in bulk.

(d) <u>Valuables</u>. The Carrier shall not be liable to any extent for any loss or damage to or in connection with platinum, gold, silver, jewelry, precious stones, precious metals, radioisotopes, precious chemicals, bullion, specie, currency, negotiable instruments, securities, writings, documents, pictures, embroideries, works of art, curios, heirlooms, collections of every nature, or any other valuable Goods whatsoever, including Goods having particular value only for the Merchant, unless the true nature and value of the Goods have been declared in writing by the Merchant before receipt of the Goods by the Carrier, and the same inserted in this Bill of Lading and ad valorem freight has been prepaid thereon.

(e) <u>Fire Exemption</u>. Neither Carrier nor any Person controlled by or under common control with Carrier shall be liable to answer for or make good any loss or damage to Goods occurring at any time (including before loading on or after discharge from the Vessel) by reason or by means of any fire, wherever and howsoever occurring, unless such fire shall have been caused by the actual fault or privity of the Carrier or such Person, respectively. In any situation where such exemption from liability may not be permitted by Law, neither Carrier nor such Person shall be liable for any loss or damage by the fire unless caused by negligence, including that imputed by the Law, of Carrier or Person, respectively.

(f) <u>Third Party Custody of Goods</u>. Any other provision hereof to the contrary notwithstanding, Merchant agrees and acknowledges that (i) Carrier shall not be liable in any capacity whatsoever

for any delay, non-delivery, mis-delivery, loss, or damage to the Goods occurring while the Goods are not in the actual possession of Carrier or of Carrier's agents and (ii) if Merchant directs that any Goods be moved from a container yard to a facility or the premises of any other third-party, and Goods are thereafter lost, stolen, or damaged, in whole or in part, while under the care, custody, or control of such third party or by a carrier that transports the Goods, Carrier shall have no liability for any such loss or damage whatsoever. If Merchant asserts a claim for such delay, non-delivery, mis-delivery, loss, damage, or any fault or negligence, and Carrier is required to defend against a claim or pay any claim related thereto, Merchant shall defend, indemnify and hold harmless the Carrier with respect thereto.

7. ROUTES AND DEVIATION; LIBERTIES.

(a) Without notice to the Merchant, the Carrier has the liberty to carry the Goods on or under deck and to choose or substitute the means, route, and procedure to be followed in the handling, stowage, storage, and transportation of the Goods, including deviations for purposes not directly necessary for a prompt and direct accomplishment of the Carriage. Carrier does not warrant any specific route, Vessel, method of transport, or delivery date.

(b) In any situation whatsoever, whether or not existing or anticipated before commencement of or during the transport of the Goods, which in the judgment of the Carrier (or any other Person who carries, handles, or stores or is to carry, handle, or store the Goods):

(i) has given or is likely to give rise to danger, injury, loss, hindrance, risk, difficulty, delay, or disadvantage of whatsoever nature to the Vessel, any vehicle or other means of transport, the Carrier, any other Person, the Goods, or any other property;

(ii) a Participating Carrier intended to be used for the Carriage suspends service for all or part of the intended Carriage;

(iii) the Carrier or the Carriage is adversely affected by a circumstance described in Clause 7(d) hereof, or there is a reasonable apprehension thereof;

(iv) a vendor of Goods not supplied by the Carrier asserts a legal right to recover, reclaim, or replevy such Goods;

(v) any Person constituting the Merchant files or becomes subject to proceedings in bankruptcy, receivership, or insolvency, to an assignment for the benefit of creditors, or any other similar proceeding or transaction;

(vi) Goods are seized by judicial or nonjudicial means, arrested, executed against, detained, requisitioned, or acquired by a Governmental Authority; or

(vii) has rendered or is likely to render it in any way unsafe, impracticable, unlawful, or against the interest of the Carrier or the Merchant to commence or continue the Carriage or to discharge the Goods at the intended port or place of discharge, or to transport the Goods by the route or in the manner originally intended by the Carrier,

the Carrier at any time shall be entitled to do any or all of the following, without prior notice to Merchant: terminate the Carriage; store the Goods; transship or forward the Goods; divert the Goods; unpack Goods from their Containers; and, in the exercise of its reasonable discretion,

dispose of the Goods in such way as the Carrier may deem advisable, and, without limiting the foregoing:

 (w) Carrier shall be entitled, before the Goods are loaded on the Vessel or other mode of transport, to cancel this Bill of Lading without incurring liability to the Merchant or any other Person for compensation or damages, and to require the Merchant to take delivery of the Goods, and upon Merchant's failure to do so, to store the Goods anywhere;

 (x) if the Goods are at a place awaiting transshipment, Carrier shall be entitled to terminate the Carriage there and to store the Goods at any place selected by the Carrier, transship or forward the Goods to an alternative destination, and, in the case of the circumstances set forth in Clause 7(b)(iv) hereof, transship or forward the relevant Goods to an alternative recipient designated by the relevant vendor;

 (y) if the Goods are loaded on the Vessel or other mode of transport, Carrier shall be entitled to discharge the Goods or any part thereof at any port or place selected by the Carrier or to carry them back to the Port of Loading or Place of Receipt and there discharge them; and

 (z) in the case of the circumstances set forth in Clause 7(d) hereof impose surcharges to cover all extra expenses (including extra insurance premiums and cost of diversion).

All actions under Clauses (w), (x), (y), or (z) above shall constitute complete and final delivery and full performance of this Bill of Lading, and the Carrier thereafter shall be freed from any responsibility hereunder.

(c) If the Carrier makes arrangements to store, transship, or forward the Goods, it shall do so solely as agent of and for and at the sole risk and expense of the Merchant without any liability whatsoever in respect of Carrier's acts or omissions as agent, and the Merchant shall reimburse the Carrier forthwith all extra freight charges and other extra expenses thereby incurred.

(d) The situations referred to in Clause 7(b)(iii) hereof shall include those caused by: the existence or apprehension of war (declared or undeclared), hostilities, warlike or belligerent acts or operations, riots, civil commotions, or other disturbances; closure of, obstacles in, or danger to any canal; blockade of port or place or prohibition of or restriction to commerce or trading; embargo; piracy; quarantine, sanitary, or other similar regulations or restrictions; strikes, lockouts, or other labor troubles whether partial or general and whether or not involving employees of the Carrier or its subcontractors; congestion of port, dock, wharf, or any other place; shortage, absence, or obstacles of labor or facilities for loading, discharge, delivery, or other handling of the Goods; epidemics or diseases; Carrier making a determination that the Goods cannot be safely or properly carried further; or bad weather, shallow water, ice, landslip, or other obstacles in navigation or haulage.

(e) The Carrier shall have liberty to comply with orders, directions, regulations, recommendations, or suggestions as to departure, arrival, route, ports of call, stoppage, loading, discharge, handling, destination, reshipment, transshipment, deposit, or storage in any place or places, delivery, surrender, quarantine, disposal, or otherwise, howsoever given by any Governmental Authority or by any other Person having, under the terms of any insurance on the Vessel or the Goods, the right to give such order, directions, regulations, recommendations, or suggestions.

(f) The liberties set out in this Clause 7 may be invoked for any purpose whatsoever even if not connected with the Carriage covered by this Bill of Lading, and any action taken or omitted to be taken, and any delay arising therefrom, shall be deemed to be within the contractual and contemplated Carriage and not be an unreasonable deviation.

(g) Promptly after invoking, or becoming aware of any Person who fulfills any part of the Carriage invoking, any liberties set out in this Clause 7, Carrier shall give notice thereof to Merchant. All additional freight and other Charges (including a reasonable recovery for Carrier's personnel and internal expenses) that are incurred as a result of any invocation of this Clause 7 shall be for the account of Merchant, who shall promptly pay the same. Such Charges and amounts that are incurred or recoverable hereunder in connection with a situation with regard to the Goods and other property may be reasonably allocated by Carrier between the Goods and such other property.

(h) Without limiting Merchant's other obligations under this Bill of Lading, Merchant shall defend, indemnify, and hold harmless the Carrier against all losses and liabilities suffered or incurred by the Carrier as a result of the circumstances referred to in this Clause 7.

## 8. MERCHANT'S RESPONSIBILITY.

(a) The Particulars of the Goods set out on the face hereof and any Particulars or other representation appearing on the Goods, Containers, or other packages or documents relating thereto are furnished by the Merchant, and the Merchant warrants to the Carrier the accuracy and completeness of all such information.

(b) Merchant warrants that it has complied with all applicable Laws and requirements of port and other authorities and shall bear and pay all duties, taxes, fines, imposts, expenses, and losses incurred or suffered by reason thereof or by reason of any illegal, incorrect, or insufficient marking, numbering, addressing, or any other Particulars of the Goods.

(c) Merchant warrants that the Goods are packed in a manner adequate to withstand the ordinary risks of carriage having regards to their nature and in compliance with all applicable Laws.

(d) Merchant shall be liable for the loss, damage, contamination, soiling, detention, or demurrage before, during, and after the Carriage of property (including Containers) of Carrier or any Person or Vessel that is caused by Merchant or any Person acting on Merchant's behalf or for which Merchant is otherwise responsible.

(e) Payment of any amounts due hereunder to a forwarder, broker, or any Person other than Carrier or its duly-authorized agent shall not be deemed payment to Carrier and shall be made at the payer's risk. Unless otherwise specifically agreed by Carrier, all amounts for which Merchant is liable under this Bill of Lading are due upon demand. Merchant shall pay interest on any amounts owed under this Bill of Lading that are not paid when due at one and one half percent (1.5%) per month (19.72% annum).

## 9. DANGEROUS GOODS, CONTRABAND.

(a) Merchant warrants that the Goods are not, and shall not become, of an explosive, inflammable, radioactive, corrosive, damaging, noxious, hazardous, poisonous, injurious, or dangerous nature, and agrees that such Goods shall be transported only upon the Carrier's acceptance (granted or withheld in its sole discretion) of a prior written application by shipper for

the carriage of such Goods. Such application must accurately state the nature, name, label, and classification of the Goods, the method of rendering them innocuous, the full names and addresses of the shipper and consignee, and all certificates and other documents required by Law. Merchant shall not tender contraband for shipment.

(b) The Merchant shall ensure that the nature of the Goods referred to in the preceding paragraph is distinctly and permanently marked on the outside of their packages and Containers and shall submit the documents or certificates required by any applicable Laws or by the Carrier before tendering the Goods for shipment.

(c) Whenever Goods are discovered to have been received by the Carrier and the Merchant has not complied with Clauses 9(a) or (b) hereof, or the Goods are found to be contraband or prohibited by any applicable Laws, the Carrier shall be entitled to have such Goods rendered innocuous, thrown overboard, discharged, or otherwise disposed of at the Carrier's discretion without liability, and the Merchant shall be liable for and shall indemnify the Carrier against all loss, damage, and liability, including general average and loss of freight and other Charges, and any other expenses directly or indirectly arising out of or resulting from such Goods or any action by Carrier authorized herein with respect to any Goods.

10. CONTAINERS.

(a) Carrier shall not be liable for loss or damage to the Goods Stuffed in Containers: (i) caused by the manner in which the Container has been Stuffed; (ii) caused by the unsuitability of the Goods for carriage in Containers; (iii) caused by the unsuitability or defective condition of the Container; or (iv) if the Container is not sealed at the commencement of the Carriage, except where Carrier has agreed to seal the Container.

(b) As to Containers Stuffed by Carrier, this Bill of Lading is prima facie evidence of the receipt only of the number of packages, Shipping Units, or Containers as shown on the face hereof. As to other Containers, this Bill of Lading is conclusive evidence of such matters. In all cases, the nature, order, and condition of the contents and any Particulars are unknown to the Carrier, who has no responsibility in respect thereof.

(c) If the Containers are delivered by the Carrier with seals intact, such delivery shall be deemed as full and complete performance of the Carrier's obligation hereunder and the Carrier shall not be liable for any loss of or damage to the contents of the Containers except to the extent that the Containers have been penetrated while in the custody of Carrier under circumstances for which it is liable.

(d) Carrier shall be at liberty to open all Containers and inspect the contents of the Containers without notice to the Merchant at such times and places as the Carrier may deem appropriate, and all expenses incurred therefrom shall be reimbursed to the Carrier or borne directly by the Merchant. In case the seals of Containers are broken by Governmental Authorities or other authorities for inspection of the contents of the Containers, the Carrier shall not be liable for any loss, damage, expenses, or any other consequences arising or resulting therefrom.

(e) Merchant shall return all Containers in the same order and conditions as handed over to Merchant (normal wear and tear excepted), with interiors clean, and prior to the accrual of any demurrage, detention, or other delay charges.

11. SPECIAL CONTAINERS.

(a) Merchant warrants that it has not tendered for transportation any Goods which require temperature, humidity, ventilation, or other control without previously having made special arrangements with the Carrier in writing, including for the payment of additional freight (and filling in the appropriate box on the front of this Bill of Lading with respect to their nature and particular temperature or other range to be maintained). In the absence of such special arrangements, Carrier may treat the Goods or Containers only as ordinary Goods or Containers, respectively. In the case of temperature-, or humidity-, or ventilation-controlled Containers Stuffed by or on behalf of Merchant, Merchant further warrants that the Containers are and shall remain throughout the Carriage in proper functioning order and have been delivered to the Carrier at the proper internal temperature, humidity, ventilation, or other control conditions, that the Goods have been properly Stuffed in the Container, and that its controls have been properly set by Merchant before receipt of the Goods by Carrier.

(b) Carrier shall not be liable for any loss of or damage to the Goods arising from defects, derangement, breakdown, stoppage, or other failure of the temperature, humidity, or ventilation controlling machinery, plant, insulation, or any other apparatus of the Containers, provided that Carrier shall maintain the settings of temperature-, humidity-, ventilation-, or other controlled Containers as required in Clause 11(c) hereof.

(c) If the Goods have been packed into temperature-, humidity-, ventilation-, or other controlled Containers by the Carrier and the particular temperature and humidity range requested by the Merchant is inserted in the Bill of Lading, then Carrier will use due diligence to set the controls within the requested ranges but does not guarantee the maintenance of such temperature and humidity conditions inside the Containers. The Carrier shall not be liable for any loss or damage occasioned by temperature, humidity, defects or insufficiency in or accidents to or explosion, breakdown, failure, or inoperability of any refrigeration, heating, cooling, humidity control, ventilation, or other control unit, including lack of fuel or power or interruption in fuel or power supply for any reason, unless shown to have been caused by the failure of the Carrier to exercise due diligence to properly operate temperature-, humidity-, ventilation-, or other controlled Containers.

12. STORAGE OF GENERAL CARGO. Goods may be stowed in poop, forecastle, deck house, shelter deck, passenger space, or any other covered space commonly used in the trade and suitable for the carriage of Goods, or on deck as provided in Clause 13 hereof, and when so stowed shall be deemed for all purposes to be stowed under deck.

13. DECK CARGO, LIVE ANIMALS AND PLANTS, PERISHABLES.

(a) The Carrier has the right to carry the Goods in Containers under the deck or on deck, whether or not so stated herein.

(b) When the Goods are carried on deck, the Carrier shall not be required to specially note, mark, or stamp any statement of on deck stowage on the face hereof, any custom or usage to the contrary notwithstanding. Carrier shall not be liable in any capacity whatsoever for any non-delivery, misdelivery, delay, or loss of or damage to Goods which are carried on deck and specially stated herein to be so carried, whether or not caused by Carrier's negligence, the Vessel's unseaworthiness, or other reasons.

(c) The Carrier shall not be responsible for any accident, disease, mortality, loss, injury, or damage to live animals, birds, reptiles, fish, plants (including fruits and vegetables), or other perishable Goods arising from any cause whatsoever.

14. DELIVERY.

(a) Without giving notice of either arrival or discharge, Carrier may discharge the Goods direct as they come to hand, at or onto any dock, wharf, craft, or place that the Carrier may select, and continuously, Saturdays, Sundays, and holidays included, at all such hours by day or night as the Carrier may determine no matter what the state of the weather or custom or rule of the port may be. Delivery of the Goods shall be received by the consignee directly from the ship's tackle as the Goods come to hand in unloading or as soon as available if discharged on Carrier's dock or wharf. The Carrier shall not be liable in any respect whatsoever if temperature-, humidity-, ventilation-, or other control facilities or equipment shall not be furnished during loading or discharge or before loading or after discharge, including any part of the time that the Goods are upon or at the dock, wharf, craft, or other place of loading, discharge, or storage. All lighterage and use of craft in loading or discharging shall be at the risk and expense of the Merchant, and all Charges incurred thereby shall be paid by Merchant in addition to freight. Landing and delivery charges and pier dues shall be at the expense of the Merchant and shall be paid by Merchant in addition to freight. If the Goods are not taken away by the proper recipient by the expiration of the next working day after the Goods are at Merchant's disposal, the Goods may, at Carrier's option and subject to Carrier's lien, be placed in storage or be permitted to lie where landed, but always at the expense and risk of the Merchant and Goods. The responsibility of the Carrier in any capacity shall altogether cease and the Goods shall be considered to be delivered and at their own risk and expense in every respect when taken into custody of customs or other Governmental Authorities. The Carrier shall not be required to give any notification of delivery or disposition of the Goods.

(b) In case the Goods received by Carrier are in Containers into which the contents have been Stuffed by or on behalf of the Merchant, the Carrier shall only be responsible for delivery of the total number of Containers shown on the face hereof, and shall not be required to unpack the Containers and deliver the contents thereof, in any manner; provided, however, that upon the Merchant's demand in writing reaching the Carrier at least three days prior to the scheduled date of arrival of the Vessel at the Port of Discharge, and if the Carrier agrees in the exercise of its sole discretion, Containers may be unpacked and the contents thereof may be delivered by the Carrier to one or more receivers in accordance with the written instructions, in which case if the seal of the Containers is intact at the time of unpacking, all the Carrier's obligations hereunder shall deemed to have been discharged and the Carrier shall not be responsible for any loss or damage to the contents arising or resulting from such delivery and the Merchant shall be liable for an appropriate adjustment of the freight and additional charges incurred. In case the Goods have been Stuffed into Containers by the Carrier, the Carrier may unpack the Containers and deliver the contents thereof and shall not be required to deliver the Goods in Containers. Goods may be delivered to the Merchant in Containers, in which case if the Containers are delivered by the Carrier with seals intact, such delivery shall be deemed as full and complete performance of the Carrier's obligations hereunder and the Carrier shall not be responsible for any loss of or damage to the contents of the Containers. Delivery as provided for in this paragraph shall be granted only when arranged prior to Carrier's receipt of the Goods and if expressly provided for herein. The Merchant desiring to avail itself of the delivery as provided in this paragraph must give notice in writing to the Carrier at the first port of call of the Vessel named in the option at least 48 hours prior to the Vessel's arrival there, otherwise the Goods shall be landed at any of the optional ports at the Carrier's option and the Carrier's responsibility shall then cease.

(c) The Merchant warrants to the Carrier that the marks on the Goods, packing, and Containers correspond to the marks shown on the Bill of Lading and also in all respects comply with all the Laws in force at the Port of Discharge and Place of Delivery and shall defend, indemnify, and hold harmless the Carrier against all loss, damage, expenses, penalties, and fines arising or resulting from incorrectness or incompleteness thereof.

(d) Goods which cannot be identified as to marks and numbers, cargo sweepings, liquid residue, and unclaimed Goods not otherwise accounted for shall be allocated for the purpose of completing delivery to the various Merchants and consignees of Goods of like character, in proportion to any apparent shortage, loss of weight, or damage, and such Goods or parts thereof shall be accepted as full and complete delivery.

(e) The term "apparent good order and condition" when used in this Bill of Lading with respect to iron, steel, metal, or wood products does not mean that such Goods, when received, were free of visible rust, mold or moisture staining, chafing, and/or breakage, or when used with reference to baled wood products or baled cotton does not mean that the covers thereon were not torn or that the bands thereon were free of visible rust or moisture. In any event Merchant acknowledges and agrees that rust, oxidation, or condensation inside any Container is not Carrier's responsibility, unless such condition arises out of Carrier's failure to provide a seaworthy Container prior to loading. Prior to Carrier's receipt of any Goods, Merchant may request in writing special arrangements for Goods subject to any of the foregoing conditions, such arrangements must be noted on this Bill of Lading, and Merchant shall pay all special freight for such special arrangement.

15. CHARGES.

(a) Charges shall be deemed fully earned on receipt of the Goods by Carrier and shall be paid and non-returnable in any event. At Carrier's option, Charges may be calculated on the basis of the Particulars of the Goods furnished by the Merchant who shall be deemed to have guaranteed to the Carrier the accuracy of all Particulars of the Goods as furnished by Merchant at the time of receipt of the Goods by the Carrier. In case of any incorrect or incomplete declaration of any of the Particulars of the Goods, the Merchant shall be liable for and bound to pay to the Carrier (i) the balance of freight between the freight charged and that which would have been due had the correct Particulars been given, plus (ii) (because of the difficulty in ascertaining Carrier's additional damages) as and by way of liquidated and ascertained damages, a sum equal to the correct freight. Carrier shall be entitled to production of the commercial invoice for the Goods or true copy thereof and to inspect, re-weigh, re-count, re-measure, and re-value the Goods, and if any Particulars are found by Carrier to be incorrect, Merchant shall pay Carrier the correct Charges (credit being given for the Charges already charged) and the expenses incurred by Carrier in establishing the correct Particulars.

(b) Full freight to the Port of Discharge or Place of Delivery named herein shall be prepaid or shall be collected at destination. The Carrier shall be entitled to all freight and other Charges due hereunder, and to receive and retain it irrevocably under any circumstances whatsoever, whether or not the Vessel or the Goods are damaged or lost, or the Carriage is interrupted or abandoned. Full freight shall be paid for damaged, destroyed, or unsound Goods.

(c) The payment of freight or other Charges shall be made in full, in cash without any offset, recoupment, abatement, counterclaim, or deduction. Where freight is payable at the Port of

Discharge or Place of Delivery, such freight and all other Charges shall be paid in the currency named in this Bill of Lading or, at Carrier's option, in other currency.

(d) Goods once received by the Carrier cannot be taken away or disposed of by the Merchant or vendor of the Goods except upon the Carrier's consent and against payment of full freight and compensation for any loss sustained by the Carrier through such taking away or disposal. If the Goods are not available when the Vessel is ready to load, the Carrier is relieved of any obligation to load such Goods and the Vessel may leave port without further notice, and dead freight shall be paid by the Merchant.

(e) The Merchant shall be liable for, and indemnify the Carrier against: (i) all dues, duties, imposts, taxes, and charges including consular fees levied on the Goods; (ii) all fines and losses sustained or incurred by the Carrier in connection with the Goods howsoever caused, including the Merchant's failure to comply with Laws or directions or recommendations of Governmental Authorities or others in connection with the Goods, or Merchant's failure to procure consular, health, or other certificates or other documentation to accompany the Goods; and (iii) Carrier's expenses incurred due to the seizure of Goods by judicial or nonjudicial means, or if the Goods are arrested, executed against, detained, requisitioned, or acquired by a Governmental Authority. The Merchant shall be liable for return freight and Charges on the Goods refused exportation or importation by any Governmental Authorities. If the Carrier is of the opinion that the Goods stand in need of sorting, inspecting, cooperage, bailing, repackaging, mending, repairing, or reconditioning or require other protection or care, the Carrier may carry out such work at the expense of the Merchant and the Goods. The Merchant authorizes the Carrier to incur and pay all such Charges and expenses and to do any matters mentioned above at the expense of and as agents for the Merchant and to engage other Persons to regain or seek to regain possession of the Goods and do all things deemed advisable for the benefit of the Goods.

(f) All Persons constituting the Merchant shall be jointly and severally liable to the Carrier for the payment of all Charges and for the payment and performance of the obligations and indebtedness of each of them hereunder.

16. LIEN.

(a) Carrier shall have a continuing general lien – which shall survive delivery – upon all Goods and documents related to the Goods that are in its possession, custody, or control, or en route, for all amounts now or hereafter owed to Carrier by Merchant, including: (i) all Charges and other amounts owed pursuant to this Bill of Lading or any agreement preliminary hereto (including General Average and Merchant's indemnity obligations); (ii) amounts due to Carrier by Merchant under any other bill of lading, contract of carriage, or any other agreement of any type; (iii) all damages, duties, fines, penalties, or advances in connection with the Carriage of the Goods or any other property; (iv) Merchant's obligations to defend, indemnify and hold harmless in connection with the Goods or Carriage; and (v) all other sums whatsoever payable by or chargeable to or for the account of the Merchant under this Bill of Lading or any contract preliminary hereto, including the attorneys' fees, and other costs and expenses incurred in recovering any of the foregoing. Without limiting the foregoing, Carrier may withhold delivery and store the Goods at Merchant's expense if Merchant is in default of any obligation to Carrier whether or not it is related to the Carriage, the Goods, or this Bill of Lading. Carrier's lien as provided for in this Clause 16 supplements Carrier's other rights under all other agreements, under U.S. maritime law, or other applicable Law and can be extinguished only by full and indefeasible payment of all secured amounts. If for any reason delivery is made prior to payment of all amounts secured by Carrier's lien, then notwithstanding the absence of any notice, Merchant acknowledges and

agrees that Carrier retains constructive possession of the Goods until Carrier's lien is satisfied as aforesaid. If Merchant defaults in the payment or performance of any such obligations or indebtedness, then Carrier may sell the Goods by public auction or private sale. Any notice required by Law to be given by Carrier of a sale or other intended action with respect to any Goods or documents, made by sending same to Merchant at least ten days prior to any proposed action shall constitute fair, reasonable, and adequate notice to Merchant. Without limiting Carrier's rights under any Law, no advance notice is required if the Goods to be sold are perishable or subject to rapid deterioration or are of a type sold on a recognized market. If, on sale of the Goods, the proceeds fail to cover the amount due and the cost and expenses incurred, the Carrier shall be entitled to recover the deficit from the Merchant.

(b) Without limiting the foregoing, if the Goods are unclaimed for 14 days, or whenever in the Carrier's opinion, the Goods are perishable or subject to deterioration, or are worthless, the Carrier may, at its discretion and subject to its lien and without any responsibility attaching to it, sell, abandon, or otherwise dispose of such Goods solely at the risk and expense of the Merchant.

17. BOTH TO BLAME COLLISION. If the Vessel comes into collision with another ship as a result of negligence of the other ship and any act, neglect, or default of the master, mariners, pilot, or the servants of the Vessel in the navigation or in the management of the Vessel, the Merchant shall defend, indemnify, and hold harmless the Carrier against all loss or liability to the other or non-carrying ship or her owners in so far as much loss or liability represents loss of, or damage to, or any claim whatsoever to the other or non-carrying ship or her owners as part of their claim against the carrying Vessel or Carrier. The foregoing provisions shall also apply where the owners, operators, or those in charge of any ship or ships or objects other than, or in addition to, the colliding ships or objects are at fault in respect of a collision or contact.

18. GENERAL AVERAGE. Merchant shall defend, indemnify, and hold harmless the Carrier in respect of all claims of a general average nature which may be asserted against Carrier with respect to the Goods and prior to delivery of any Goods shall provide such security (including cash deposits) as may be required by the Carrier in this connection.

19. NEW JASON CLAUSE. In the event of accident, danger, damage, or disaster before or after commencement of the voyage, resulting from any cause whatsoever, whether due to negligence or not, for which, or for the consequences of which, the Carrier is not responsible by Law, contract, or otherwise, the Merchant shall jointly and severally contribute with the Participating Carrier in general average to the payment of any sacrifices, loss, or expenses of a general average nature that may be made or incurred, and shall pay salvage and special charges incurred in respect of the Goods. Merchant shall pay its contribution to general average even when such average is the result of fault, neglect, or error of the master, pilot, or crew. Merchant expressly renounces all Laws which might otherwise apply.

20. HIMALAYA CLAUSE. Merchant undertakes that no claim or allegation shall be made against any Person or Vessel whatsoever other than Carrier, including the Carrier's servants or agents, any independent contractors (at any time) and their servants or agents, Participating Carriers, and all others by whom the whole or any part of the Carriage, whether directly or indirectly, is procured, performed, or undertaken, which imposes or attempts to impose upon any such Person or Vessel any liability whatsoever in connection with the Goods or the Carriage, and if any claim or allegation should nevertheless be made, to defend, indemnify, and hold harmless Carrier against all consequences thereof. Without limiting the foregoing, every such Person and Vessel shall have the benefit of all provisions herein benefiting the Carrier as if such provisions were expressly for its benefit. It is understood and agreed that if it should be adjudged that any

Person other than or in addition to the Carrier is under any responsibility with respect to the Goods or any other goods, regardless of the port or place where any loss or damage shall occur and without regard to whether the Goods covered hereby or any other goods are being handled or are damaged directly or indirectly during any handling, all exemptions, limitations of, and exonerations from liability provided by Law or by the terms and conditions hereof shall be available to all agents, servants, employees, representatives, Participating Carriers (including road, rail, water and air carriers), stevedores, terminal operators, warehousemen, crane operators, watchmen, carpenters, ship cleaners, surveyors, and independent contractors (at each tier) inclusive of all Persons providing any service whatsoever, regardless for whom acting or by whom retained and paid, it being always understood that such Persons and Vessels are not entitled to any greater or further exemptions, limitations of, or exonerations from liability than those that the Carrier has under this Bill of Lading in any given situation. The Merchant shall defend, indemnify, and hold harmless the Carrier against all claims which may be made upon the Carrier by any Participating Carrier, servant, agent, or subcontractor of the Carrier (at any tier) in relation to the claim against any such Person made by the Merchant.

21. LEGAL COMPLIANCE. The Merchant represents and warrants that it and the Goods are in compliance with all applicable U.S. Laws, including anti-corruption, export control, and anti-terrorism Laws, including the U.S. Foreign Corrupt Practices Act, the International Traffic in Arms Regulations, U.S. Export Administration Regulations, the U.S. Anti-Boycott regulations, and the various U.S. economic sanctions programs administered by the U.S. Treasury Office of Foreign Assets Control, and that the information that Merchant provided to Carrier in connection with Merchant's compliance with all such applicable Laws is true and complete. The Merchant shall also comply with all applicable Laws of any other country to, from, through, or over which the Goods may be carried, including those relating to the packing, carriage, or delivery of the Goods. Pursuant to the foregoing, Merchant shall furnish such information and attach documents to this Bill of Lading as may be necessary to comply with all applicable Laws. Merchant shall indemnify and hold Carrier harmless against any and all claims, losses, or damages arising from the conduct of Merchant or any of its officers, directors, employees, agents, owners, shareholders, or other Persons acting for or with Merchant that constitutes a violation of Merchant's obligations, representations, and warranties contained herein.

22. U.S. SECURITY. If the Vessel calls in the United States, including any United States territory, the following provisions shall apply with respect to applicable Law or measures:

(a) Each delay suffered or time lost in obtaining the entry and exit clearances from the relevant Governmental Authorities shall be counted as time of detention.

(b) All expenses or additional fees related to any of the Goods, even if levied against the Vessel, that arise out of security measures imposed at the loading or discharging port shall be for the Merchant's account.

23. LIMITATION OF LIABILITY. All claims for which the Carrier may be liable shall be adjusted and settled on the basis of Merchant's net invoice cost, plus freight and cargo insurance premium, if paid. **In no event shall the Carrier be liable for any indirect, incidental, delay, consequential (including loss of profit), punitive, or exemplary damages whatsoever and howsoever caused, even if Carrier is on notice of the possibility of such damages.** Carrier does not undertake that the Goods shall arrive at any particular time or meet any particular market or use. Without prejudice to the foregoing, if Carrier is found liable for delay, liability shall be limited to the freight charges applicable to the relevant stage of the Carriage.

24. INDEMNITY. Without limiting Merchant's other indemnity obligations under this Bill of Lading, Merchant agrees to indemnify and hold harmless the Carrier from and against all charges, claims, damages, liabilities, costs, expenses, or other payments or losses (including purchase price, freight, storage, demurrage, detention, duties, taxes, fines, penalties, consequential or exemplary damages, or other money, and including the Carrier's litigation expenses and reasonable attorneys' fees) incurred by the Carrier in connection with or arising from any one or more of: (i) any breach of any representation, warranty, indemnity, or covenant by Merchant, including any failure of the Merchant to pay or perform its obligations to the Carrier or to any third party (including any carrier, vendor, vendee, holder of this Bill of Lading, Governmental Authority, or other Person); (ii) any other claim by any such third party; (iii) all claims and liabilities and all expenses arising from the Carriage insofar as such claim or liability exceeds Carrier's liability under this Bill of Lading; (iv) breach of the applicable tariff or this Bill of Lading by Merchant; and (v) the negligence, gross negligence, willful misconduct, or unlawful acts or omissions of Merchant. The confiscation or detention of the Goods or other property by any third party shall not affect or diminish the Merchant's liability to the Carrier to pay all charges or other money due promptly upon demand. All obligations of the Merchant in this Bill of Lading to indemnify Carrier are deemed to include the obligations to defend and to hold harmless. Throughout this Bill of Lading, where the Merchant is stated to have an obligation to defend, indemnify, and hold harmless the Carrier, the Carrier may tender defense of the matter to the Merchant, or may select counsel of Carrier's choosing, giving notice of the selection to the shipper and any known holder of this Bill of Lading, and defend the matter, and the Merchant shall timely pay all expenses incurred thereby, including attorneys' fees and all other reasonable costs and expenses related thereto.

25. PROJECT, NON CONTAINERIZED, BREAK BULK, BULK, AND HEAVY LIFT GOODS. When Carrier undertakes the Carriage of project, non containerized, break bulk, bulk, and other heavy lift Goods, Carrier is undertaking such work pursuant to Carrier's Project Cargo Terms and Conditions, including the limitations of liability set forth therein, all of which are hereby incorporated by reference. Carrier's Project Cargo Terms and Conditions can be found at www.expeditors.com.

26. NOTICE OF CLAIM AND TIME FOR SUIT. Unless notice of loss or damage and the general nature of such loss or damage is given in writing to the Carrier at the Port of Discharge or Place of Delivery, or at the Carrier's address shown on the Bill of Lading, before or at the time of delivery of the Goods or, if the loss or damage is not readily apparent, within three days after delivery, the Goods shall be deemed to have been delivered as described in the Bill of Lading. In any event the Carrier shall be discharged from all liability, including liability in respect of non-delivery, misdelivery, delay, loss, damage, or any fault or negligence, unless suit is filed against the Carrier within one year after the earlier of delivery or release of the Goods or the date when the Goods should have been delivered or released.

27. LAW; DISPUTES; VENUE; SEVERABILITY; ETC.

(a) This Bill of Lading shall be governed by and construed in accordance with the internal Laws of the State of Washington (excluding its Laws relating to conflicts of law), except as the same may be governed by the federal Law of the United States. MERCHANT IRREVOCABLY CONSENTS TO NON-EXCLUSIVE JURISDICTION AND VENUE FOR LEGAL PROCEEDINGS RELATED TO ALL CLAIMS AND DISPUTES ARISING FROM OR IN CONNECTION WITH THIS BILL OF LADING OR THE GOODS, WHETHER UNDER FEDERAL, STATE, LOCAL, OR FOREIGN STATUTES, REGULATIONS, OR COMMON LAW, IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF

WASHINGTON OR THE SUPERIOR COURT OF THE STATE OF WASHINGTON SITTING IN KING COUNTY. MERCHANT AND CARRIER HEREBY CONSENT TO THE COMMENCEMENT AND TRANSFER OF ALL SUCH LEGAL PROCEEDINGS TO SUCH COURTS. Merchant irrevocably consents to the commencement and to the transfer of venue in any or all such actions to any other venue in which Carrier is party to a legal action brought by itself or a third party that arises from or is connected with the Goods, their carriage, loading, unloading, handling, or storage, or loss, damage, or delay related to any of the Goods. The Merchant waives all defenses based on inconvenience of forum in all actions commenced in the venues agreed to under this Bill of Lading. Merchant shall pay all costs incurred by Carrier (including attorneys' fees and expenses) in connection with any dispute between Carrier and Merchant (including for transfers of venue, for appeals, and in bankruptcy and receivership proceedings).

(b) If any provision of this Bill of Lading, or the application to any circumstance, Person, or place, is held to be unenforceable, invalid, or void by a court or other tribunal of competent jurisdiction, such provision shall be severed therefrom or shall be reformed only to the extent necessary to be enforceable to such circumstance, Person, or place; and such provision as applied to other circumstances, Persons, or places, and the remainder of this Bill of Lading, shall remain in full force and effect.

(c) The Carrier's rights and remedies provided in this Bill of Lading or otherwise existing or arising by agreement, at law, in equity or admiralty, or otherwise, are cumulative. All of Carrier's rights and remedies may be exercised, wholly or in part, from time to time, as often, and in any order as Carrier chooses, and the exercise or the beginning of the exercise of any right or remedy shall not be construed to be an election of rights or remedies, or a waiver of the right to exercise at the same time or thereafter any other right or remedy. None of Carrier's rights under this Bill of Lading shall be construed to impose any obligation on Carrier. No delay or omission by Carrier in the exercise of any right or remedy accruing upon any default shall impair any such right or remedy or be construed to be a waiver of any right to take advantage of any such future event or of any such past default. In case Carrier proceeds to enforce any right or remedy, and such enforcement is discontinued or abandoned for any reason or is determined adversely to Carrier then, and in every such case, Carrier and Merchant shall be restored to their former positions and rights and all rights and remedies shall continue as if no such proceedings had been taken.

28. AMENDMENTS AND WAIVERS. No amendment or waiver of any provision of any of this Bill of Lading and no consent to any departure therefrom shall be effective against Carrier except by means of a writing signed by a duly-authorized representative of Carrier. Waivers or consents by Carrier shall be effective only in the specific instances and for the specific purposes for which they are given. This Bill of Lading shall not be deemed amended, modified, qualified, or supplemented by any course of dealing or course of performance.

29. LONG FORM BILL OF LADING. Carrier further incorporates herein by reference all applicable provisions of its tariff and its long form Bill of Lading. Copies of the long form Bill of Lading are obtainable from the Carrier upon request or can be found on Carrier's website at www.expeditors.com. Copies of Carrier's tariff are obtainable from Carrier upon request or where applicable from the Federal Maritime Commission or other government agency with whom its tariff has been filed. Carrier may from time to time change the terms of this Bill of Lading. The current and applicable terms of this Bill of Lading can be found on Carrier's website at www.expeditors.com and may differ from the pre-printed terms for the Bill of Lading. In the event of a conflict between the terms of this Bill of Lading and the updated version in Carrier's

tariff in effect on the date that cargo is received by Carrier for transport under this Bill of Lading, the updated version shall control.