IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| MALIBU LIGHTING CORPORATION, et al.,[1] | ) | Case No. 15-12080 (KG) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |

**Hearing Date: December 8, 2015, at 3:00 p.m. prevailing Eastern time**
**Objection Deadline: December 1, 2015, at 4:00 p.m. prevailing Eastern time**

## MOTION OF DEBTOR OUTDOOR DIRECT CORPORATION F/K/A THE BRINKMANN CORPORATION UNDER FED. R. BANKR. P. 9019 FOR AN ORDER APPROVING GENERAL RELEASE AND SETTLEMENT AGREEMENT WITH A&J MANUFACTURING, LLC AND A&J MANUFACTURING, INC.

Outdoor Direct Corporation f/k/a The Brinkmann Corporation ("ODC"), one of the above-captioned debtors and debtors in possession (the "Debtors"), hereby moves this Court (the "Motion") for entry of an order approving the compromise and settlement of ODC's dispute with A&J Manufacturing, LLC, and A&J Manufacturing, Inc. (collectively, "A&J") pursuant to Rule 9019 of the Federal Rule of Bankruptcy Procedure (the "Bankruptcy Rules"). A copy of the *General Release and Settlement Agreement* (the "Settlement") between ODC and A&J is attached to this Motion as **Exhibit A**. In support of the Motion, ODC respectfully states as follows:

### Jurisdiction

1. The United States Bankruptcy Court for the District of Delaware (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the

---

[1] The Debtors, together with the last four digits of each Debtor's tax identification number, are: Malibu Lighting Corporation (0556); Outdoor Direct Corporation f/k/a The Brinkmann Corporation (9246); National Consumer Outdoors Corporation f/k/a Dallas Manufacturing Company, Inc. (1153); Q-Beam Corporation (1560); Smoke 'N Pit Corporation (9951); Treasure Sensor Corporation (9938); and Stubbs Collections, Inc. (6615). The location of the Debtors' headquarters and service address is 4215 McEwen Road, Dallas, TX 75244.

1

*Amended Standing Order of Reference from the United States District Court for the District of Delaware*, dated February 29, 2012. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2), and the Debtors confirm their consent pursuant to Rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules") to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

2. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3. The statutory and rule predicates for the relief sought in this Motion are sections 105(a) and 363 of chapter 11 of Title 11, United States Code (the "Bankruptcy Code") and Rule 9019 of the Bankruptcy Rules.

**General Background**

4. On October 8, 2015 (the "Petition Date"), the Debtors each filed with this Court a voluntary petition for relief under chapter 11 of the Bankruptcy Code commencing the instant Chapter 11 Case (the "Bankruptcy Case"). The Debtors are operating their businesses and managing their properties as debtors and debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

5. On October 20, 2015, the Office of the United States Trustee appointed an Official Committee of Unsecured Creditors (the "Committee"). No request has been made for the appointment of a trustee or an examiner in the Bankruptcy Case.

DOCS_DE:203264.1 10821/002

6. The factual background regarding the Debtors, including their current and historical business operations and the events precipitating the Bankruptcy Case, is set forth in detail in the *Declaration of David M. Baker in Support of First Day Motions* [Docket No. 3], filed on the Petition Date.

7. On October 16, 2015, ODC filed the *Motion of the Debtor Outdoor Direct Corporation f/k/a The Brinkmann Corporation for an Order Pursuant to Section 362 of the Bankruptcy Code Determining That Automatic Stay Is Inapplicable to Pending Litigation and Granting Relief From Stay With Respect Thereto* (the "Stay Relief Motion") [Docket No. 96] seeking authority to proceed with certain proceedings involving A&J. The United States International Trade Commission (the "ITC") interposed a response to the Stay Relief Motion [Docket No. 180] and A&J filed an objection [Docket No. 181].

**Background with Respect to the Dispute**

8. On August 21, 2013, A&J filed a complaint with the ITC against several respondents, including ODC, alleging a violation of 19 U.S.C. § 1337 for unfair trade practices (the "ITC Complaint"). A&J alleged that the respondents were importing products that infringe A&J's patents directed to dual mode barbecue grills that combine a gas grill and a charcoal grill on a common support structure. A&J asserted infringement of one utility patent, U.S. Patent No. 8,381,712 (the "'712 patent"), and two design patents, U.S. Patent Nos. D660,646 and D662,773, (collectively, "Asserted Patents").

9. On the same day that A&J filed the ITC Complaint, A&J commenced a lawsuit in the United States District Court for the Southern District of Georgia against ODC (and

the other respondents, in separate cases) for patent infringement, pending under case number 2:13-cv-00114-LGW-JEG (the "District Court Case"). The District Court Case has been stayed, by motion pursuant to statute, pending the final outcome of the ITC Investigation (as defined below), including all appeals. A&J seeks damages based on ODC's sales of allegedly infringing grills from the issue dates of the Asserted Patents to the present. The '712 patent was issued on Feb. 26, 2013. The two design patents were issued on May 29, 2012, and July 3, 2012.

10. The ITC instituted an investigation on September 26, 2013, designated investigation number 337-TA-895 (the "ITC Investigation") with respect to each of the Asserted Patents. Before the hearing in connection with the ITC Investigation, A&J withdrew its infringement claims on the two design patents only from the ITC Investigation.

11. As a result of the ITC Investigation, the ITC found a violation with respect to ODC's importation of its accused dual mode grills Models 3800, 3802, and 3821, but not accused Model 3820, which the ITC found ODC had ceased importing before any of the Asserted Patents issued. The ITC also found that the claims of the '712 patent had not been proven invalid by clear and convincing evidence. The ITC subsequently issued a limited exclusion order ("LEO") preventing ODC from importing Models 3800, 3802, and 3821 grills into the United States. ODC represents that, at the time of the issuance of the LEO, it had ceased selling the accused products and had begun selling a redesigned product (Model 6340) that, based on ODC's interpretation of the ITC's claim construction rulings, ODC does not believe infringes the '712 patent. At all relevant times, ODC asserts that it only sold dual mode grills either directly to consumers or through an exclusive customer relationship with The Home

Depot. On July 1, 2015, U.S. Customs ruled that ODC is not restricted from importing the Model 6340 because it does not infringe the '712 patent. Neither party has sought or received a determination by the ITC whether Model 6340 infringes the '712 patent.

12.     A&J appealed the ITC's findings adverse to it to the U.S. Court of Appeals for the Federal Circuit (the "Federal Circuit") with respect to the determination that one of the respondents do not infringe the '712 patent, as well other issues of claim construction. A&J's appeal is case number 2015-1494. ODC is an intervenor in A&J's ITC appeal number 2015-1494. ODC appealed the ITC's determination that the claims of the '712 patent were not proven invalid. ODC's appeal is case number 2015-1751. A&J is an intervenor in ODC's ITC appeal number 2015-1751. Collectively, these are referred to herein as the "ITC Appeals."

13.     The opening briefs in the ITC Appeals were to be due on October 19, 2015. However, on October 16, 2015, the Federal Circuit issued orders staying the ITC Appeals based on the pendency of the Bankruptcy Case and directing ODC to notify the court in the event that the bankruptcy stay is lifted.

14.     In addition, on October 13, 2014, ODC filed a petition for *inter partes* review (the "IPR Proceeding") of the '712 patent before the United States Patent and Trademark Office (the "USPTO"), on the ground that the claims of the '712 patent are not patentable over the prior art. In March 2015, the USPTO granted ODC's petition, finding that ODC had shown a reasonable likelihood of success. A&J filed its response to the petition in July 2015, and ODC filed its reply on October 6, 2015. The proceeding is IPR2015-00056.

15. Following the Petition Date, ODC filed the Stay Relief Motion seeking to proceed with the ITC Appeals and the IPR Proceeding. The Stay Relief Motion was initially set for hearing before this Court on November 4, 2015. Prior to the hearing, A&J and ODC entered into good-faith, arms' length negotiations that resolved their pending disputes, as reflected in the Settlement. By agreement of ODC and A&J, the hearing scheduled for November 4, 2015, with respect to the Stay Relief Motion was adjourned pending documentation of the Settlement and the filing of this Motion.

## Settlement Details

16. ODC and A&J entered into the Settlement described below, subject to Court approval.[2] The Settlement essentially provides for a "walk-away" deal between ODC and A&J. The key terms of the Settlement are as follows:

   a. The effectiveness of the Settlement is contingent upon the Court entering an order approving the Settlement and such order becoming final and non-appealable (the "Effective Date");

   b. Upon the Effective Date, A&J shall take all steps reasonably necessary to (i) dismiss the District Court Case against ODC with prejudice, and (ii) terminate the IPR Proceeding, including preparing and filing a motion to jointly request termination of the IPR Proceeding. ODC will join A&J, as reasonably necessary, in seeking these results. After the filing of a joint

---

[2] The terms of the Settlement summarized in this Motion in no way alter, change, or amend the actual terms set forth in the Settlement with A&J. In the event that there are any inconsistencies between this summary and the actual terms of the Settlement, the language set forth in the Settlement shall control.

6

request to terminate the IPR Proceeding, to the extent necessary if the USPTO does not terminate the proceeding, ODC will file a written notice withdrawing its participation as petitioner in the IPR Proceeding, withdraw the appearance of counsel in the IPR Proceeding, and not otherwise participate in the IPR Proceeding should it continue.  Further, upon the Effective Date, ODC shall take all steps reasonably necessary to dismiss its ITC appeal number 2015-1751 and to withdraw as an intervenor in A&J's ITC appeal number 2015-1494;

c. The hearing on the Stay Relief Motion shall be continued and, upon the Effective Date, the Stay Relief Motion shall be deemed withdrawn;

d. A&J and ODC, upon the Effective Date, shall mutually release each other and their respective affiliates and representatives as to any claims or causes of action alleged in, arising from, related to or connected with the ITC Complaint, the Asserted Patents, the ITC Investigation, the District Court Case, the ITC Appeals, the IPR Proceeding, the Bankruptcy Case, and the Stay Relief Motion;

e. A&J shall agree not to file or assert a claim against ODC in this bankruptcy case and that ODC may sell any remaining grills in its custody, possession or control, including dual mode grills designated Models 3800, 3802, 3820, 3821, and 6340 (of which there should be no more than three copies remaining); and

f. A&J shall release, subject to an express exclusion of non-affiliated parties to ODC, ODC's vendors, suppliers, distributors, resellers, and customers arising out of or related to any and all dual mode grills designated Models 3800, 3802, 3820, 3821, and 6340, including accessories and parts therefor, made or sold by or for ODC before the Effective Date.

### Basis for Relief

17. By this Motion, ODC seeks approval of the Settlement with A&J as set forth in **Exhibit A** to this Motion.

18. Bankruptcy Rule 9019 provides that "[o]n motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement." *See In re Martin*, 91 F.3d 389, 393 (3d Cir. 1996). In deciding whether to approve a settlement pursuant to Bankruptcy Rule 9019, the court should determine whether "the compromise is fair, reasonable, and in the interests of the estate." *In re Marvel Entertainment Group, Inc.*, 222 B.R. 243, 249 (D. Del. 1998). The court must "assess and balance the value of the claim that is being compromised against the value to the estate of the acceptance of the compromise proposal." *In re Martin*, 91 F.3d at 393.

19. In striking this balance, the court should consider the following factors: "(1) the probability of success in litigation; (2) the likely difficulties in collection; (3) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; and (4) the paramount interest of the creditors." *Id.* Courts generally defer to a trustee's business judgment when there is a legitimate business justification for the trustee's

decision. *Id.* at 395. Bankruptcy Rule 9019(a) commits the approval or rejection of a settlement to the sound discretion of the bankruptcy court. *In re Michael*, 183 B.R. 230, 232 (Bankr. D. Mont. 1995).

20. Moreover, settlements should be approved if they fall above the lowest point on the continuum of reasonableness. "[The] responsibility of the bankruptcy judge . . . is not to decide the numerous questions of law and fact raised by the appellants but rather to canvass the issues and see whether the settlement fall[s] below the lowest point in the range of reasonableness." *In re W.T. Grant Co.*, 699 F.2d 599, 608 (2d Cir. 1983); *In re Planned Protective Servs., Inc.*, 130 B.R. 94, 99 n.7 (Bankr. C.D. Cal. 1991); *see generally In re Blair*, 538 F.2d 849, 851 (9th Cir. 1976) (court should not conduct a "mini-trial" on the merits of a proposed settlement). Thus, the question is not whether a better settlement might have been achieved or a better result reached if litigation pursued. Instead, the court should approve settlements that meet a minimal threshold of reasonableness. *Nellis v. Shugrue*, 165 B.R. 115, 123 (S.D.N.Y. 1994); *In re Tech. for Energy Corp.*, 56 B.R. 307, 311-312 (Bankr. E.D. Tenn. 1985); *In re Mobile Air Drilling Co., Inc.*, 53 B.R. 605, 608 (Bankr. N.D. Ohio 1985).

21. The Settlement with A&J is in the best interests of ODC and its estate, constitutes a reasonable resolution of disputes with A&J, and is clearly within the Debtors' sound business judgment. Most importantly, the Settlement provides this estate with the best outcome that ODC could hope to achieve if all of the pending proceedings involving A&J were to proceed—specifically, that A&J will have no claim against ODC. This result is achieved immediately under the Settlement, without the costs, risks, and delays associated with litigation.

### A.    Probability of Success in Litigation

22. Although ODC is confident that it will ultimately prevail in litigation with A&J, there are always risks associated with patent infringement disputes, especially given that such litigation is pending in various tribunals. A&J has asserted claims in the millions of dollars against ODC for patent infringement and associated damages. Those claims are pending in the District Court Case and are related to the ITC Appeals and the IPR Proceeding. There is no certainty as to the outcome of any of these proceedings. Yet, under the Settlement, all such matters are resolved and A&J will walk away from its claims against A&J.

### B.    Likely Difficulties in Collection

23. ODC does not have any affirmative claims against A&J that would need to be collected, but A&J has asserted millions of dollars of claims against this estate that, if allowed, would significantly dilute the unsecured claims pool and reduce recoveries to the holders of allowed general unsecured claims. Under the Settlement, this risk is immediately eliminated and there will be no need to reserve for the possible allowance of A&J's claims against ODC, or to have such claims estimated by this Court.

### C.    Complexity of the Litigation Involved, and Expense, Inconvenience and Delay

24. A&J's claims against ODC are complex patent infringement matters. It is for this reason that ODC filed the Stay Relief Motion in the first place. The parties' disputes are technical in nature and, hence, best addressed by the Federal Circuit and the USPTO, where the matters were pending as of the Effective Date. Although a significant portion of the briefing in these proceedings has been completed, additional briefing and argument will be required, and

subsequent appeals could take significant time to resolve. The underlying District Court Case also remains pending and the outcome of A&J's patent infringement claims ultimately might need to be litigated, depending on the outcome of the ITC Appeals and the IPR Proceeding. Taken together, significant time and expense remains to be dedicated to the disputes between ODC and A&J, absent the Settlement.

### D.    The Paramount Interests of Creditors

25.    The Settlement furthers the paramount interests of creditors in this case by resolving a complex patent infringement dispute with A&J through a "walk away" deal. A potential multi-million dollar claim against ODC is resolved through a global mutual release.

26.    For all the reasons set forth above, the Settlement is fair, reasonable, and in the best interest of ODC's estate and is well supported by ODC's business judgment. ODC submits that this Court should approve the Settlement.

### No Prior Request

27.    No prior motion for the relief requested herein has been made to this or any other Court.

### Notice

28.    Notice of this Motion has been given to: (a) the Office of the United States Trustee; (b) counsel for the Committee; (c) counsel for the Debtors' prepetition and postpetition lenders; (d) counsel for A&J; (e) counsel for the ITC; and (f) any party that has requested notice pursuant to Bankruptcy Rule 2002. ODC submits that, in light of the nature of the relief requested, no other or further notice need be given.

**Conclusion**

WHEREFORE, ODC respectfully requests that this Court enter the attached order granting the Motion approving the Settlement attached as **Exhibit A** to the Motion, and grant such other and further relief as the Court deems just and equitable.

Dated: November 17, 2015        PACHULSKI STANG ZIEHL & JONES LLP

/s/ *signature*

Jeffrey N. Pomerantz (CA Bar No.143717)
Maxim B. Litvak (CA Bar No. 215852)
Michael R. Seidl (DE Bar No. 3889)
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, DE 19899-8705
Telephone: 302/652-4100
Facsimile: 302/652-4400
E-mail:    jpomerantz@pszjlaw.com
           mlitvak@pszjlaw.com
           mseidl@pszjlaw.com

Counsel for the Debtors and Debtors in Possession