# ANNEX 1 TO THE BIDDING PROCEDURES ORDER
## Bidding Procedures

# BIDDING PROCEDURES FOR SALE OF INVENTORY OF DEBTORS OUTDOOR DIRECT CORPORATION F/K/A THE BRINKMANN CORPORATION AND MALIBU LIGHTING CORPORATION

Outdoor Direct Corporation f/k/a The Brinkmann Corporation ("**ODC**") and Malibu Lighting Corporation ("**MLC**" and together with ODC, the "**Debtors**"), as chapter 11 debtors and debtors-in-possession, have entered into that certain *Asset Purchase Agreement* (the "**Agreement**") for the sale of the Acquired Inventory (as defined in the Agreement) to Sears Holdings Management Corp. (the "**Purchaser**"), which provides, among other things, for the payment of a purchase price consisting of cash in the amount of $1,792,000 (subject to certain adjustments as set forth in Sections 1.1(b) and 2.4 of the Agreement). The transaction with the Purchaser pursuant to the Agreement is referred to as the "**Sale**".

On January 20, 2016, the United States Bankruptcy Court for the District of Delaware (the "**Bankruptcy Court**") granted the Debtors' motion (the "**Bidding Procedures Motion**") for an order approving the following bidding procedures (the "**Bidding Procedures**") to be employed in connection with the solicitation for higher or better bids at an auction (the "**Auction**") for the sale of the Acquired Inventory (the "**Bidding Procedures Order**"), if necessary. **Notwithstanding any other provision herein, the Debtors reserve the right, after consultation with the Consultation Parties, to waive any of the Bidding Procedures, to the extent such waiver is, in the Debtors' discretion, in the best interest of the Debtors' estates.**

1. **Important Dates**

   | | |
   |---|---|
   | **Bid Deadline** | February 5, 2016, at 4:00 p.m. ET |
   | **Objection Deadline** | February 5, 2016, at 4:00 p.m. ET |
   | **Auction** | February 9, 2016, at 10:00 a.m. ET |
   | **Sale Hearing** | February 10, 2016, at 10:00 a.m. ET |

2. **Assets to be Sold Free and Clear**

   Except as otherwise provided in definitive documentation with respect to the Sale, all of the Debtors' rights, title and interest in and to the Acquired Inventory shall be sold free and clear of all pledges, liens, security interests, hypothecations encumbrances, claims, charges, options, deeds of trust, encroachments, retentions of title, conditioned sale arrangements, restrictive covenants, rights of first offer, rights of first refusal, licenses or any other limitations, restrictions and interests of any kind thereon and there against (collectively, the "**Claims and Interests**").

3.  **Stalking Horse**

The Agreement provides that the Purchaser shall act as the "stalking horse bidder" (the "**Stalking Horse**") in the Auction, and, if it is not the Successful Bidder, shall be entitled to a break-up fee in the amount of $50,000 (the "**Break-Up Fee**"), and reimbursement of the Purchaser's reasonable, documented expenses not to exceed $20,000 (the "**Expense Reimbursement**"), which are payable in accordance with the terms of the Agreement, as modified by the Bidding Procedures Order.

4.  **Mailing of the Auction and Hearing Notice**

On a date no later than two (2) business days following entry by the Bankruptcy Court of the Bidding Procedures Order, the Debtors shall mail by first class mail (or by email as to any potential purchasers referenced in item (b) below) the notice of the proposed sale of the Acquired Inventory (the "**Auction and Hearing Notice**") in the form approved by the Bankruptcy Court in the Bidding Procedures Order to (a) any party requesting service in this case, (b) all potential purchasers identified by the Debtors or their agents (and provide the identity of the potential purchasers to the Committee to the extent not previously provided); and (c) any other party known to the Debtors to have or assert an interest in any of the Acquired Inventory.

Any other party-in-interest that wishes to receive a copy of the Bidding Procedures Order and/or the Bidding Procedures Motion shall make such request in writing to Debtors' counsel. Additionally, copies may be downloaded from the Court's docket at http://ecf.deb.uscourts.gov and (free of charge) from the Debtors' restructuring website at: www.kccllc.net/malibu.

5.  **Confidentiality Agreement / Due Diligence**

The Debtors may afford any interested party the opportunity to conduct a reasonable due diligence review in the manner determined by the Debtors in their discretion, subject to the input of the Consultation Parties (as defined below). The Debtors shall not be obligated to furnish any due diligence information after the Bid Deadline (defined below).

Any entity that wishes to conduct due diligence with respect to the Acquired Inventory must deliver to Debtors' counsel, Pachulski Stang Ziehl & Jones LLP, 919 North Market Street, 17th Floor, Wilmington, DE 19801 (Attn: Michael R. Seidl, mseidl@pszjlaw.com) and 10100 Santa Monica Blvd., 13th Floor, Los Angeles, CA 90067 (Attn: Jeffrey N. Pomerantz, jpomerantz@pszjlaw.com) the following: (a) an executed confidentiality agreement in form and substance satisfactory to the Debtors and which shall inure to the benefit of either the Purchaser or, alternatively, to the benefit of such party or parties who purchase the Acquired Inventory, from and after a closing of the sale, and (b) such information as the Debtors may determine, in consultation with the Official Committee of Unsecured Creditors appointed in the Debtors' case (the "**Committee**"), Comerica Bank, and Bank of America, N.A. (together, the "**Consultation Parties**"), in their reasonable discretion as is required to demonstrate such entity's financial wherewithal to purchase the Acquired Inventory and the ability to make a Qualified Bid (as defined below).

Notwithstanding anything to the contrary herein, to the extent that any Consultation Party submits a bid for the Acquired Inventory, whether as a credit bid or otherwise, such party shall no longer be treated as a Consultation Party for purposes of these Bidding Procedures. The credit bid rights of Bank of America, N.A. and Comerica Bank under section 363(k) of the Bankruptcy Code are preserved, and such parties shall be deemed to be Qualified Bidders in respect to any such credit bid(s), provided however that any credit bid must exclude any assets that do not constitute such bidder's prepetition collateral, in which case such bidder may only make a bid in cash for any such non-collateral assets. As provided in the Bidding Procedures Order, the failure of the Committee to object to any credit bid put forth by Bank of America ("BANA") or the Court's approval of any such credit bid shall not (a) prejudice or impair any rights of the Committee to challenge the nature, extent, validity, priority, perfection or amount of BANA's alleged liens, security interests and claims or (b) release BANA from any cause of action which can be brought by or on behalf of the Debtors' estates.

The Debtors may allow any party delivering an acceptable confidentiality agreement and, if necessary and after consultation with the Consultation Parties, may require information demonstrating such party's financial wherewithal (such person or entity, a "**Potential Bidder**") to conduct due diligence with respect to the Acquired Inventory.

F.  The Debtors shall provide the Consulting Parties with notice and copies (if applicable) of (i) delivery of the Preliminary Inventory Schedule (as defined in the Agreement) to the Debtors as provided in section 2.4.2 of the Agreement and the completion of the Final Inventory Schedule (as defined in the Agreement), as provided in section 2.4.3 of the Agreement; (ii) the Stalking Horse's exercise of its option to extend the Removal Period (as defined in the Agreement) for any warehouses as provided in 3.7 of the Agreement, (iii) the calculation of the Apportionable Expenses in section 3.5 of the Agreement and (iv) the delivery of any notice of termination as provided in section 11.5 of the Agreement.

6.  **Qualification of Bids and Bidders**

To participate in the bidding process and to have a bid considered by the Debtors, each Potential Bidder must deliver a written offer or offers satisfying the below criteria. A "**Qualified Bidder**" is a Potential Bidder that delivers a binding bid that in the Debtors' discretion (after consultation with the Consultation Parties) satisfies the following criteria (a "**Qualified Bid**") and that the Debtors determine in their sole discretion (after consultation with the Consultation Parties) is reasonably likely to make a bona fide offer upon consideration of any information provided by the Potential Bidder demonstrating, in the Debtors' discretion (after consultation with the Consultation Parties), the capability to consummate a sale transaction, should the bidder be a Successful Bidder:

(a)  Bid Deadline. Each Bid Package (defined below) must be delivered in written and electronic form (where available) to: (a) Debtors' counsel, Pachulski Stang Ziehl & Jones LLP, 919 North Market Street, 17th Floor, Wilmington, DE 19899 (Attn: Michael R. Seidl, mseidl@pszjlaw.com) and 10100 Santa Monica Blvd., 13th Floor, Los Angeles, CA 90067 (Attn: Jeffrey N. Pomerantz, jpomerantz@pszjlaw.com), (b) counsel to the

- 3 -

Committee, Lowenstein Sandler LLP, 65 Livingston Ave, Roseland, NJ 07068 (Attn: Sharon L. Levine, slevine@lowenstein.com, Kenneth A. Rosen, krosen@lowenstein.com, Eric S. Chafetz, echafetz@lowenstein.com) and Bruce S. Nathan, bnathan@lowenstein.com, (c) counsel to Comerica Bank, Jackson Walker L.L.P., 901 Main Street, Suite 6000, Dallas, TX 75202 (Attn: David Stolle, dstolle@jw.com and Bruce Ruzinsky, bruzinsky@jw.com), and (d) counsel to Bank of America, N.A., Bryan Cave LLP, Two North Central Ave., Suite 2200, Phoenix, AZ 85004 (Attn: Robert J. Miller, rjmiller@bryancave.com and Brian Walsh, brian.walsh@bryancave.com), so as to **actually be received no later than February 5, 2016, at 4:00 p.m. (prevailing Eastern Time) (the "Bid Deadline")**; provided, however, the Debtors in their discretion (after consultation with the Consultation Parties) may extend the Bid Deadline as to any particular submitted bid.

(b) Bid Package. Each bid must include (collectively, the "**Bid Package**"): (i) a written and signed irrevocable and binding offer letter stating that (w) the bidder offers to consummate a transaction on terms and conditions no less favorable than those found in the Agreement and in an amount at least equal to the Minimum Bid (as defined below), (x) confirming that the bid will remain irrevocable and binding until five (5) business days following the entry of the Sale Order, (y) that the Bidder has had the opportunity to conduct due diligence prior to its offer and does not require further due diligence, has relied solely upon its own independent review and investigation and did not rely on any written or oral representations except as expressly set forth in the Modified Agreement (defined below), and (z) the Bidder shall, if designated as such in accordance with these procedures, serve as the Backup Bidder (defined below) until the consummation of the transaction pursuant to the Successful Bid; (ii) an executed copy of the Agreement as modified by the Potential Bidder in accordance with its bid ("**Modified Agreement**"); (iii) an electronic markup of the Agreement showing the revisions in the Modified Agreement, along with a clean copy of the Modified Agreement (formatted as a Microsoft Word document). The Debtors, in consultation with the Consultation Parties, shall determine whether any Modified Agreement that modifies the Agreement in any respect beyond the identity of the purchaser and the purchase price under the Agreement is a Qualified Bid. Further, the Debtors reserve the right to consider bids for less or more assets than all the Acquired Inventory and to modify these procedures accordingly; provided further, the Debtors will evaluate bids, in their discretion, subject to consultation with the Consultation Parties, to determine whether such bid or combination of bids maximizes the value of the Debtors' estates as a whole.

- 4 -

(c) **Minimum Bid**. The amount of the purchase price in any bids for the Acquired Inventory must provide for value that is at least (i) $100,000, in the aggregate, more than the purchase price contained in the Agreement plus (ii) $70,000, representing the sum of the Break-Up Fee and Expense Reimbursement of $50,000 and $20,000, respectively (the "**Minimum Bid**").

(d) **Financial Information**. The Bid Package must contain such financial and other information that will allow the Debtors, in consultation with the Consultation Parties, to make a determination as to the bidder's financial wherewithal and its ability to consummate the transactions contemplated by the Modified Agreement, including evidence of adequate financing and any proposed conditions to closing.

(e) **Additional Bid Protections**. The bid must not request or entitle the Potential Bidder to any transaction or break-up fee, expense reimbursement, or similar type of payment, or propose to modify any of the Bidding Procedures.

(f) **Identity of Bidders**. Each Potential Bidder must fully disclose the identity of each entity that will be bidding or otherwise participating in connection with such bid, including the names and addresses of any members or individuals with an interest in the entity, and the complete terms of any such participation, as well as disclose the organization form and the business conducted by each entity. Any Potential Bidder shall be required to provide such additional information as the Debtors may require, subject to input from the Consultation Parties, regarding a Potential Bidder's ability to satisfy the requirements of the applicable regulatory authorities.

(g) **Due Diligence**. The bid must not contain any due diligence or financing contingencies of any kind, and must affirmatively acknowledge that the bidder (i) had an opportunity to conduct due diligence prior to making its offer and does not require further due diligence, (ii) has relied solely upon its own independent review, investigation, and/or inspection of any documents and/or the Acquired Inventory in making its bid, and (iii) did not rely upon any written or oral statements, representations, promises, warranties, or guaranties whatsoever, whether express, implied, by operation of law, or otherwise, regarding the Acquired Inventory, or the completeness of any information provided in connection therewith.

(h) **Consents**. Each Potential Bidder must represent that it obtained all necessary organizational approvals to make its competing bid and to enter into and perform the Modified Agreement and include evidence of authorization and approval from the Potential Bidder's board of directors (or comparable governing body) with respect to the submission, execution, delivery and closing of the Modified Agreement.

- 5 -

(i) <u>Deposit</u>. A Potential Bidder for the Acquired Inventory (other than the Purchaser) must deposit **10% of the purchase price** under the Modified Agreement (the "**Deposit**") with Debtors' counsel (the "**Deposit Agent**") in the form of a certified check or wire transfer by the Bid Deadline. The Potential Bidder shall forfeit the Deposit if (i) the Potential Bidder is determined to be a Qualified Bidder and withdraws or modifies its bid other than as provided herein, (ii) the bidder is the Backup Bidder and withdraws the bid prior to the consummation of the Sale contemplated by the Successful Bid, or (iii) the bidder is the Successful Bidder and (x) withdraws the bid before the consummation of the sale contemplated by the Successful Bid, or (y) breaches the Agreement (or Modified Agreement, as applicable) associated with such bid. The Deposit shall be returned to the Potential Bidder (unless such Potential Bidder has forfeited its Deposit) (i) as soon as practicable if the Potential Bidder is not determined to be a Qualified Bidder; (ii) if the Potential Bidder is determined to not be the Successful Bidder or the Backup Bidder at the Auction, no later than five (5) business days following conclusion of the Auction; or (iii) if the Potential Bidder is determined to be the Backup Bidder, no later than five (5) business days after consummation of the Sale to the Successful Bidder. The Deposit will not be required to be maintained in an interest bearing account, but any interest earned on any Deposit will be remitted to the appropriate Qualified Bidder if the Deposit is returned to the Qualified Bidder pursuant to the above.

The Debtors shall have the right, after consultation with the Consultation Parties, to determine whether a bid is a Qualified Bid and shall notify bidders whether their bids have been determined to be Qualified Bids, as soon as possible, and prior to the Auction. For the avoidance of doubt, the Purchaser is a Qualified Bidder and the Agreement constitutes a Qualified Bid. After the Debtors determine which bids are Qualified Bids, the Debtors shall distribute the Qualified Bids, including the associated Modified Agreements, to the Purchaser.

7. **Only One Qualified Bid**

If no Qualified Bids (other than Purchaser's Agreement) are submitted, the Debtors shall not hold the Auction, but shall proceed with the Sale Hearing to seek approval of the sale of the Acquired Inventory to the Purchaser pursuant to the Agreement (or any modifications agreed to between the Debtors and Purchaser, subject to the input of the Consultation Parties).

8. **Auction**

In the event that the Debtors timely receive at least one Qualified Bid (other than the Purchaser's Agreement), the Debtors shall conduct the Auction with respect to the Acquired Inventory. The Auction will take place at the Delaware offices of Pachulski Stang Ziehl & Jones, LLP located at 919 North Market Street, 17th Floor, Wilmington, DE 19801, on

- 6 -

**February 9, 2016, starting at 10:00 a.m. (prevailing Eastern Time)**. The Auction shall be governed by the following procedures:

    (a)     Participation. Qualified Bidders shall be entitled to participate in the Auction, and each Qualified Bidder shall appear in person at the Auction, or through a duly authorized representative; provided, however, the Debtors may determine in their discretion (after consultation with the Consultation Parties) to permit bidders to attend the Auction telephonically or by video conference. Creditors shall be entitled to attend the Auction. At least one day prior to the commencement of the Auction, each Qualified Bidder must confirm in writing that it will participate in this Auction; provided, however, that in the event a Qualified Bidder does not attend the Auction, the relevant Qualified Bid shall nonetheless remain fully enforceable against that Qualified Bidder in accordance herewith. Representatives of, and counsel for, the Consultation Parties shall be permitted to attend the Auction, and any other party in interest, including members of the Committee.

    (b)     Anti-Collusion. At the commencement of the Auction, each Qualified Bidder shall be required to confirm that it has not engaged and will not engage in any collusion with any other Qualified Bidder with respect to the bidding or the Sale.

    (c)     Conduct of Auction. Subject to paragraphs 8(g) and 12 hereto, the Auction will be conducted openly with the proceeding being transcribed and each Qualified Bidder being informed of the terms of the previous bid.

    (d)     Bidding. Bidding at the Auction shall commence at the amount of the highest or otherwise best Qualified Bid submitted prior to the Auction; Qualified Bidders for all of the Acquired Inventory may then submit successive bids in increments of $100,000 (the "**Bid Increment**"). Successive bids in subsequent bidding rounds may be determined in a different Bid Increment by amounts as determined by the Debtors, in consultation with the Consultation Parties. Any bid submitted after the conclusion of the Auction shall not be considered for any purpose.

    (e)     Successful Bid. If an Auction is conducted, it shall continue until the Debtors determine in their sole discretion, after consultation with the Consultation Parties, which offer is the highest or otherwise best offer from among the Qualified Bids submitted at the Auction (such bid or bids, as applicable, the "**Successful Bid**"); *provided, however*, in the event the Purchaser's last bid is higher or otherwise better than any bid submitted by a Qualified Bidder (as determined by the Debtors in their sole discretion, after consultation with the Consultation Parties), the Purchaser's last bid as per the Purchaser's Agreement (as existing or

- 7 -

modified at the Auction) shall be deemed to be the Successful Bid. The Qualified Bidder submitting such Successful Bid shall become the "**Successful Bidder**," and shall have such rights and responsibilities of the purchaser, as set forth in the applicable Modified Agreement, as applicable, together with any changes made thereto by the Successful Bidder at the Auction. Within one business day after the conclusion of the Auction, but in any event prior to the commencement of the Sale Hearing (as defined below), the Successful Bidder shall complete and execute all agreements, contracts, instruments or other documents evidencing and containing the terms and conditions upon which the Successful Bid was made. Notwithstanding any of the foregoing, the Debtors reserve the right (after consultation with the Consultation Parties) to accept a combination of bids for the Debtors' assets and/or to consider the value of assets excluded from any bid, for the purpose of determining the highest or otherwise best bid(s).

(f) Backup Bid. At the conclusion of the Auction, Debtors will also determine in their sole discretion (after consultation with the Consultation Parties) and announce the second highest or otherwise best bid from among the Qualified Bids submitted at the Auction (the "**Backup Bid**"). The Qualified Bidder submitting such Backup Bid shall become the "**Backup Bidder**," and shall have such rights and responsibilities of the purchaser, as set forth in the applicable Modified Agreement, together with any changes made thereto by the Backup Bidder at the Auction. *The Backup Bid shall remain open and irrevocable until the consummation of the Sale of the Acquired Inventory pursuant to the Successful Bid, provided that such Backup Bid shall only remain open until the Outside Date (as defined below).* In the event the Backup Bidder fails to comply with the requirements of this paragraph, it will be deemed to have forfeited its Deposit. The Backup Bidder's Deposit will be returned by the Debtors upon the earlier of the following: (i) the Outside Date, or (ii) immediately following consummation of the Successful Bid. For the avoidance of doubt, the Purchaser as a Qualified Bidder shall automatically be deemed a Backup Bidder, under the terms of its bid, if its bid is determined by the Debtors in their sole discretion, after consultation with the Consultation Parties, to be the second highest or otherwise best bid from among the Qualified Bids submitted at the Auction; *provided, however*, notwithstanding any other provision contained herein, the Purchaser or any other bidder shall remain as Backup Bidder until February 29, 2015 (the "**Outside Date**").

(g) Reservation of Rights. Notwithstanding any provision herein to the contrary, the Debtors in their discretion (after consultation with the Consultation Parties) may adopt rules for the Auction at or prior to the

Auction that, in their discretion, will better promote the goals of the Auction.

9. **Sale Hearing**

The Successful Bid and the Backup Bid (or the Purchaser's Agreement in the event the Auction is not held) will be subject to approval by the Bankruptcy Court after a hearing (the "**Sale Hearing**") that will take place **February 10, 2016, at 10:00 a.m. (prevailing Eastern Time)** and entry of an order approving such sale (the "**Sale Order**"). Upon approval of the Backup Bid by the Bankruptcy Court, the Backup Bid shall remain open and irrevocable until the earlier of (i) consummation of the Sale pursuant to the Successful Bid or (ii) the Outside Date.

Objections, if any, to the Sale Motion shall: (i) be in writing; (ii) specify with particularity the basis of the objection; and (iii) be filed with the Court and simultaneously served on: (a) Debtors' counsel, Pachulski Stang Ziehl & Jones LLP, 919 North Market Street, 17th Floor, Wilmington, Delaware 19899 (Attn: Michael R. Seidl, mseidl@pszjlaw.com) and 10100 Santa Monica Blvd., 13th Floor, Los Angeles, CA 90067 (Attn: Jeffrey N. Pomerantz, jpomerantz@pszjlaw.com), (b) counsel to the Committee, Lowenstein Sandler LLP, 65 Livingston Ave, Roseland, NJ 07068 (Attn: Sharon L. Levine, slevine@lowenstein.com, Kenneth A. Rosen, krosen@lowenstein.com, Eric S. Chafetz, echafetz@lowenstein.com and Bruce S. Nathan, bnathan@lowenstein.com), (c) counsel to Comerica Bank, Jackson Walker L.L.P., 901 Main Street, Suite 6000, Dallas, TX 75202 (Attn: David Stolle, dstolle@jw.com and Bruce Ruzinsky, bruzinsky@jw.com), (d) counsel to Bank of America, N.A., Bryan Cave LLP, Two North Central Ave., Suite 2200, Phoenix, AZ 85004 (Attn: Robert J. Miller, rjmiller@bryancave.com and Brian Walsh, brian.walsh@bryancave.com), (e) counsel to the Purchaser, Barack Ferrazzano Kirschbaum & Nagelberg, LLP, 200 W. Madison, Suite 3900, Chicago, IL 60606 (Attn: William Barrett, william.barrett@bfkn.com), (f) the Office of the United States Trustee, Attn., J. Caleb Boggs Building, 844 King Street, Suite 2207, Lockbox 35, Wilmington, DE 19801 (Attn: Linda Casey, linda.casey@usdoj.gov), and (g) any other party requesting notice, so as to be actually received by **4:00 p.m. (prevailing Eastern Time) on February 5, 2016** (the "**Objection Deadline**").

10. **Consummation of the Sale**

Following the Sale Hearing, if for any reason the Successful Bidder fails to consummate the purchase of the Acquired Inventory, then the Backup Bidder will automatically be deemed to have submitted the highest or otherwise best bid. Thereafter, the Debtors and the Backup Bidder are authorized to immediately effect the sale of the Acquired Inventory to the Backup Bidder on the terms of the Backup Bid as soon as is commercially reasonable without further order of the Bankruptcy Court. If such failure to consummate the purchase is the result of a breach by the Successful Bidder, its Deposit shall be forfeited to the Debtors and the Debtors specifically reserve the right to seek all available damages from the defaulting bidder.

11. **Jurisdiction**

The Bankruptcy Court shall retain exclusive jurisdiction over any matter or dispute relating to the Sale of the Acquired Inventory, the Bidding Procedures, the Sale Hearing,

the Auction, the Successful Bid, the Backup Bid, and/or any other matter that in any way relates to the foregoing. All Qualified Bidders shall be deemed to have consented to the core jurisdiction of the Bankruptcy Court and waived any right to a jury trial in connection with any Auction related disputes.

12. **Additional Procedures and Waiver of Procedures**

**The Debtors reserve the right, in consultation with the Consultation Parties, to adopt any other procedures reasonably necessary to implement the Bidding Procedures, provided that such procedures are (i) not inconsistent with these Bidding Procedures, the Agreement, the Bankruptcy Code, the Bidding Procedures Order or any other order of the Bankruptcy Court entered in these cases, and (ii) disclosed to each Qualified Bidder at the Auction.**

**Notwithstanding any other provision herein, the Debtors reserve the right, after consultation with the Consultation Parties, to waive any of the Bidding Procedures, to the extent such waiver is, in the Debtors' discretion, in the best interest of the Debtors' estates.**