IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>MALIBU LIGHTING CORPORATION, *et al.*,[1]<br><br>Debtors. | ) Chapter 11<br>)<br>) Case No. 15-12080 (KG)<br>)<br>) (Jointly Administered)<br>)<br>) **Hearing Date:  July 26, 2017 at 2:00 p.m. (ET)** |

## THE DEBTORS' AND OFFICIAL COMMITTEE OF UNSECURED CREDITORS' JOINT PLAN OF LIQUIDATION PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE

PACHULSKI STANG ZIEHL & JONES LLP
Jeffrey N. Pomerantz (CA Bar No. 143717)
James E. O'Neill (DE Bar No. 4042)
Joshua M. Fried (CA Bar No. 181541)
919 North Market Street, 17th Floor
Wilmington, DE  19801
Telephone:  302/652-4100
Facsimile:  302/652-4400

Counsel for the Debtors and Debtors in Possession

and

LOWENSTEIN SANDLER LLP
Bruce S. Nathan (NY Bar No. 1710896)
Eric S. Chafetz (NY Bar No. 4322871)
1251 Avenue of the Americas
New York, New York 10020
Telephone: 212/262-6700
Facsimile: 212/262-7402

BLANK ROME LLP
Victoria A. Guilfoyle (DE Bar No. 5183)
1201 Market Street, Suite 800
Wilmington, DE 19801
Telephone: 302/425-6404
Facsimile: 302/428-5101

Counsel for the Official Committee of Unsecured Creditors

Dated:  June 14, 2017

---

[1]  The Debtors, together with the last four digits of each Debtors' tax identification number, are:  Malibu Lighting Corporation (0556); Outdoor Direct Corporation f/k/a The Brinkmann Corporation (9246); NC Estate Corporation f/k/a National Consumer Outdoors Corporation (1153); Q-Beam Corporation (1560); Smoke 'N Pit Corporation (9951); Treasure Sensor Corporation (9938); and Stubbs Collections, Inc. (6615).  The Debtors' service address is P.O. Box 5960, Frisco, TX 75035.

# I.

## INTRODUCTION[2]

The Debtors and the Committee (the "Plan Proponents") jointly propose the Plan providing for the resolution of all outstanding Claims against the Equity Interests in the Debtors pursuant to section 1121 of the Bankruptcy Code. The Plan Proponents are the proponents of the Plan within the meaning of section 1129 of the Bankruptcy Code.

The Plan is a plan of liquidation which, among other things, provides for the treatment of all Claims against and Equity Interests in the Debtors. The Plan is predicated on the Global Settlement among the Debtors, the Official Committee of Unsecured Creditors appointed in the Debtors' chapter 11 cases, the Brinkmann Parties and CCC.

The proceeds from the Global Settlement shall be deposited into an account maintained by the Liquidation Trust and, along with any Cash and other assets belonging to the Estates as of the Effective Date, shall be used to satisfy all Allowed Claims in accordance with the terms of this Plan. The funding for the Plan will be provided for pursuant to the terms of the Global Settlement Agreement. The Overall Distribution Model shall provide for (a) the allocation of the Settlement Consideration, (b) the treatment of Intercompany Claims by and between and among the ODC Debtors, MLC, and the NCOC Debtors, and (c) Distributions to Holders of General Unsecured Claims (Classes 5 (A-C). The JBBI Secured Claims (Classes 4 (A-C)) shall not receive any distributions under the Plan. The JBBI Secured Claims (Classes 4 (A-C)) and the Brinkmann Intercompany Claims shall not receive any distributions under the

---

[2] Unless otherwise defined, all capitalized terms have the meanings ascribed to them in Section II.B of this Plan.

Plan. All Equity Interests (Class 6(A) and Subsidiary Equity Interests (Class 6(B) will be cancelled on the Effective Date of the Plan.

The Disclosure Statement, distributed with this Plan, contains a discussion of the Debtors' history, a summary of the Debtors' assets and liabilities and the postpetition asset sales of the respective Debtors, a summary of what Holders of Claims will receive under the Plan, a discussion of certain alternatives to the Plan, a summary of the Global Settlement, and a summary of the procedures and voting requirements necessary for Confirmation of the Plan. The Disclosure Statement is intended to provide Holders of Claims with information sufficient to enable such Holders to vote on the Plan. All Claim Holders entitled to vote on this Plan are encouraged to carefully read the Disclosure Statement and this Plan before voting to accept or reject this Plan. No solicitation materials, other than the Disclosure Statement and related materials transmitted therewith and approved by the Bankruptcy Court, have been authorized for use in soliciting acceptance or rejection of this Plan.

## II.

## DEFINED TERMS, RULES OF INTERPRETATION, COMPUTATION OF TIME, AND GOVERNING LAW

### A.    Rules of Interpretation, Computation of Time, and Governing Law

For purposes of the Plan: (a) whenever from the context it is appropriate, each term, whether stated in the singular or the plural, shall include both the singular and the plural, and pronouns stated in the masculine, feminine or neuter gender shall include the masculine, feminine and neuter gender; (b) any reference in the Plan to a contract, instrument, release, indenture, or other agreement or document being in a particular form or on particular terms and

2

conditions means that such document shall be substantially in such form or substantially on such terms and conditions; (c) any reference in the Plan to an existing document or exhibit Filed, or to be Filed, shall mean such document or exhibit, as it may have been or may be amended, modified or supplemented; (d) unless otherwise specified, all references in the Plan to sections and exhibits are references to sections and exhibits of or to the Plan; (e) the words "herein" and "hereto" refer to the Plan in its entirety rather than to a particular portion of the Plan; (f) captions and headings to sections are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of the Plan; (g) the rules of construction set forth in section 102 of the Bankruptcy Code shall apply; and (h) any term used in capitalized form in the Plan that is not defined in the Plan but that is used in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning ascribed to such term in the Bankruptcy Code or the Bankruptcy Rules, as the case may be.

In computing any period of time prescribed or allowed by the Plan, the provisions of Bankruptcy Rule 9006(a) shall apply.

**B.    Defined Terms**

The following definitions shall apply to capitalized terms used in the Plan:

1.    "Administrative Expense" means an unpaid administrative expense of the kind described in sections 503(b) and 507(a)(2) of the Bankruptcy Code against the Debtors, including, without limitation, (i) the actual, necessary costs and expenses of preserving the Estates of the Debtors, including wages, salaries, or commissions for services rendered after the commencement of the Chapter 11 Cases, (ii) compensation and reimbursement of expenses of

professionals to the extent allowable under sections 327, 328, 330(a), 331, 503(b) and/or 1103 of

the Bankruptcy Code and Allowed or otherwise payable pursuant to orders of the Court, and (iii)

all fees and charges assessed against the Estates under 28 U.S.C. § 1930, including the fees, if

any, due to the United States Trustee.

   2. "Administrative Expense Objection Deadline" has the meaning ascribed to

this term set forth in Section XIV.E of this Plan.

   3. "ADR Procedures" mean the alternate dispute resolution procedures

attached substantially in the form as Exhibit B to the CCC Settlement Agreement, which

procedures provide for the orderly settlement mediation, and/or arbitration of the CCC Class 5

Claims.

   4. "Allowed" means with respect to any Claim or Administrative Expense,

except as otherwise provided herein:  (a) a Claim that has been scheduled by the Debtors in their

Schedules as other than disputed, contingent or unliquidated which has not been superseded by a

filed proof of claim and which scheduled Claim has not been amended or otherwise disallowed

or modified by Final Order; (b) a Claim or Administrative Expense that has been allowed by a

Final Order; (c) a Claim that is allowed by the Liquidation Trustee, on or after the Effective Date

and, if and to the extent necessary, approved by the Bankruptcy Court; (d) a Claim or

Administrative Expense that has been timely filed by the applicable Bar Date for which no

objection has been filed by the Claims Objection Deadline or the Administrative Expense

Objection Deadline, as applicable; or (e) a Claim or Administrative Expense that is allowed

pursuant to the terms of this Plan.

4

5.      "Assets" means any and all right, title, and interest of the Debtors and

their Estates, pursuant to section 541 of the Bankruptcy Code, in and to property of any type or

nature, including without limitation: Cash; Rights of Action; all rights and interests in the

Debtors' real, personal and intangible property; and all files, books, and records of the Estates.

6.      "A/P/S Claim" means any Claim that is an Administrative Expense Claim,

Priority Tax Claim, Priority Non-Tax Claim, Miscellaneous Secured Claim, or Tooling Claim.

7.      "Aurora" means Aurora Management Partners Inc., its directors, officers,

shareholders, agents, representatives and any employees and other personnel who have been or

may have previously provided services to support the Debtors prior to the Effective Date, and

acting in such capacities.

8.      "Avoidance Claims" mean any Rights of Action for the recovery of

avoidable transfers arising under chapter 5 of the Bankruptcy Code or applicable federal or state

law and the proceeds thereof.  All Avoidance Claims are being waived under the Plan except for

those Avoidance Claims specifically referenced in the Plan Supplement, and, with respect to the

Brinkmann Parties, all Rights of Action (including Avoidance Claims) are being waived upon

the Liquidation Trust's indefeasible receipt of the full amount of the Settlement Consideration

pursuant to the terms of the Global Settlement Agreement.  If the Settlement Consideration is not

indefeasibly received in accordance with the Plan, all Rights of Action (including Avoidance

Claim) against the Brinkmann Parties shall not be waived, but instead expressly preserved.

DOCS_SF:91641.24 10821/007

9.      "Ballot" means the form distributed to each Holder of an Impaired Claim entitled to vote on the Plan, on which is to be indicated, among other things, acceptance or rejection of the Plan.

10.      "Bankruptcy Code" means the Bankruptcy Reform Act of 1978, as amended, as set forth in title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.*, as now in effect or hereafter amended.

11.      "Bankruptcy Court" means the United States Bankruptcy Court for the District of Delaware or such other court of competent jurisdiction as may be administering the Chapter 11 Cases or any part thereof.

12.      "Bankruptcy Rules" mean the Federal Rules of Bankruptcy Procedure promulgated pursuant to 28 U.S.C. § 2075, as now in effect or hereinafter amended, together with the Local Rules of the Bankruptcy Court.

13.      "Bar Date" means (i) February 8, 2016 for General Unsecured Claims and Administrative Expenses arising under section 503(b)(9) of the Bankruptcy Code, and (ii) April 5, 2016 for Claims of Governmental Units, (ii) March 31, 2017 for Administrative Expenses arising from the Petition Date through January 31, 2017, other than Administrative Expenses arising under section 503(b)(9) of the Bankruptcy Code and Professional Fee Claims or (iii) such other date as the Bankruptcy Court may set by Order for other Administrative Expenses or any other Claims not covered in the Bar Date Order.

DOCS_SF:91641.24 10821/007

14.     "Bar Date Orders" means (i) the Order entered on December 4, 2015 by the Bankruptcy Court at docket number 294 in the Chapter 11 Cases; and (ii) the Order entered on February 15, 2017 by the Bankruptcy Court as docket number 1117 in the Chapter 11 Cases.

15.     "Brinkmann Downpayment" means the Cash payment in the amount of $550,000, which is currently deposited in account number M28996003 held at JPMorgan Chase Bank, N.A., to be made by the Brinkmann Parties to the Liquidation Trustee under the terms of, and as described in, paragraph 2(a) the Global Settlement Agreement.

16.     "Brinkmann Intercompany Claims" means the debts, claims, interests, rights, holdings described in paragraph 6 of the Global Settlement Agreement.

17.     "Brinkmann Note" means the secured note in the principal amount of $3,950,000.00 described in paragraph 2(a) of the Global Settlement Agreement.

18.     "Brinkmann Parties" means each of the entities listed on Exhibit A to the Global Settlement Agreement.

19.     "Brinkmann Records" shall have the meaning in Article XIV.B of the Plan.

20.     "Business Day" means any day, other than a Saturday, a Sunday or a "legal holiday," as defined in Bankruptcy Rule 9006(a).

21.     "Cash" means currency of the United States of America and cash equivalents, including, but not limited to, bank deposits, immediately available or cleared checks, drafts, wire transfers, automated clearing house transfers, and other similar forms of payment.

7

22.     "CCC" means Continental Casualty Company, the insurer under the CCC Policies, and any amendments, renewals, addendums or supplements thereto for the policy years 2009 through 2015, issued to the Brinkmann Corporation (now known as ODC) which provided, among other things, director and officer liability coverage to JBBI, among others as a covered insured.

23.     "CCC Class 5 Claims" means all General Unsecured Claims against ODC, including claims for personal injury or property damage, which are covered or subject to the CCC Policies, including any amendments, renewals, addendums or supplements thereto for the policy years 2009 through 2015, issued to the Brinkmann Corporation (now known as ODC).

24.     "CCC Payment" means a payment in the amount of $2,500,000 to be made by CCC to the Liquidation Trustee described in paragraph 3 of the Global Settlement Agreement.

25.     "CCC Policies" means the following insurance policies issued to ODC: (i) General Liability Policy No. 4014091346 for the period March 15, 2009 through March 15, 2010; 3; (ii) General Liability Policy No. 4014091346 for the period March 15, 2010 through April 15, 2011; (iii) General Liability Policy No. 4014091346 for the period March 15, 2011 through March 15, 2012;  (iv) General Liability Policy No. 4014091346 for the period March 15, 2012 through April 15, 2013; (v) General Liability Policy No. 4014091346 for the period April 15, 2013 through April 15, 2015; and (vi) General Liability Policy No. 4014091346 for the period April 15, 2014 through April 15, 2014.

26.    "CCC Settlement Agreement" means that certain *CCC Claim Settlement Agreement*, substantially in the form attached hereto as **Exhibit B** by and between CCC, ODC, and the Committee.

27.    "Chapter 11 Cases" mean the cases commenced under chapter 11 of the Bankruptcy Code by each of the Debtors on the Petition Date and pending before the Bankruptcy Court.

28.    "Chief Restructuring Officer" means David M. Baker.

29.    "Claim" means any claim against the Debtors within the meaning of section 101(5) of the Bankruptcy Code which is not an Administrative Expense, including, without limitation, claims of the kind specified in sections 502(g), 502(h) or 502(i) of the Bankruptcy Code.

30.    "Claims Agent" means KCC, LLC in its capacity as claims agent for the Debtors.

31.    "Claims Objection Deadline" means the first Business Day that occurs 120 days after the Effective Date, unless such date is further extended by the Bankruptcy Court.

32.    "Class" means each category of Claims or Interests classified in Article IV of the Plan pursuant to section 1122 of the Bankruptcy Code.

33.    "Committee" means the Official Committee of Unsecured Creditors appointed by the United States Trustee in these Chapter 11 Cases on October 29, 2015.

34.     "Confirmation" means the approval by the Bankruptcy Court of the Plan in accordance with the provisions of chapter 11 of the Bankruptcy Code, as effectuated by the Confirmation Order.

35.     "Confirmation Date" means the date on which the clerk of the Bankruptcy Court enters the Confirmation Order on the docket of the Bankruptcy Court.

36.     "Confirmation Hearing" means the hearing(s) on Confirmation of the Plan, to be held on the date or dates established by the Bankruptcy Court pursuant to section 1129 of the Bankruptcy Code, as it may be adjourned or continued from time to time.

37.     "Confirmation Order" means the order entered by the Bankruptcy Court confirming the Plan in accordance with the provisions of chapter 11 of the Bankruptcy Code, in form and substance reasonably acceptable to the Debtors.

38.     "Consummation" means substantial consummation of the Plan as that term is used in section 1127(b) of the Bankruptcy Code.

39.     "Creditor" means any Person who is the Holder of a Claim or an Administrative Expense against the Debtors.

40.     "Debtor" means any one of the Debtors.

41.     "Debtor Group" means the consolidated ODC Debtors, consolidated NCOC Debtors, and MLC.

42.     "Debtors" mean the following entities, either in their capacity as debtors and debtors-in-possession under chapter 11 of the Bankruptcy Code in the Chapter 11 Cases or otherwise from and after the Effective Date:  Malibu Lighting Corporation; Outdoor Direct

10

Corporation f/k/a the Brinkmann Corporation; NC Estate Corporation f/k/a National Consumer

Outdoors Corporation; Q-Beam Corporation; Smoke 'N Pit Corporation; Treasure Sensor

Corporation; and Stubbs Collections, Inc.

43.    "Disclosure Statement" means the *Disclosure Statement in Respect of*

*Debtors' and Official Committee of Unsecured Creditors' Joint Plan of Liquidation Pursuant to*

*Chapter 11 of the Bankruptcy Code*, as may be amended, modified or supplemented from time to

time, submitted pursuant to section 1125 of the Bankruptcy Code in connection with the

solicitation of acceptances of the Plan.

44.    "Disputed" means, with reference to any Claim, a Claim, or any portion

thereof that is neither an Allowed Claim nor a Disallowed Claim.

45.    "Disputed Claim" means any Claim or Administrative Expense that is not

Allowed and which has not been disallowed, withdrawn or expunged.

46.    "Disputed Claims Reserve" means any reserve established and maintained

by the Liquidation Trustee for the payment of Disputed General Unsecured Claims. Unless

otherwise ordered by the Bankruptcy Court, any unliquidated Claim shall be valued at $0 for

purposes of calculation of the Disputed Claims Reserve.

47.    "Disputed Ownership Fund" means a disputed ownership fund within the

meaning of section 1.468B-9(c)(2)(ii) of the Treasury Regulations.

48.    "Distribution Record Date" means the record date for determining

entitlement to distributions under the Plan on account of Allowed General Unsecured Claims,

which date shall be (i) with respect to General Unsecured Claims other than Rejection Claims,

11

the Effective Date; (ii) with respect to Rejection Claims, 2 Business Days after the deadline for

filing for Rejection Claims set forth in Article IX.B of the Plan.

49.    "Distribution Model Methodology" means the allocation of the

Settlement Consideration and the disposition of Intercompany Claims as set forth in the Overall

Distribution Model and Initial Distribution Model, which allocations are described in **Exhibit E**

to this Plan.

50.    "Distribution Pro Rata Share" means the ratio (expressed as a percentage

of the amount of an Allowed General Unsecured Claim to the aggregate amount of all Allowed

General Unsecured Claims in a particular Class (Class 5(A), (B), or (C), respectively) plus the

Disputed Claim amount of all remaining Disputed General Unsecured Claims in such Class on

the date of Distribution.

51.    "Effective Date" means (A) after the occurrence, satisfaction, or waiver of

each of the conditions to the occurrence of the Effective Date, and (B) the earlier to occur of (i)

five (5) days after the Confirmation Date or (ii) the first Business Day of the first month after the

Confirmation Date, unless a later date is chosen by the Plan Proponents in their discretion.

52.    "Entity" and "Entities" mean an entity as defined in section 101(5) of the

Bankruptcy Code or more than one thereof.

53.    "Equity Interests" means all equity security interests owned by JBBI in

ODC and MLC.

54.    "Estates" mean the estates created pursuant to section 541(a) of the Bankruptcy Code upon the commencement of the Chapter 11 Cases by each of the respective Debtors.

55.    "Estates' Retained Professionals" mean any Professional Person retained by either the Debtors or the Committee.

56.    "Exculpated Parties" mean the (a) Debtors; (b) the Debtors' directors and officers serving in such capacities at any time after the Petition Date and before the Effective Date, including without limitation, the Chief Restructuring Officer; (c) Aurora; (d) the Debtors' Professional Persons; (d) the Committee; (e) the present and former members, of the Committee; and (f) the Committee's Professional Persons.

57.    "Federal Judgment Rate" means the interest rate on federal judgments, in effect for the calendar week of the Petition Date, and is based on the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System.

58.    "Fee Applications" mean applications of Professional Persons under sections 330, 331 or 503 of the Bankruptcy Code for allowance of compensation and reimbursement of expenses in the Chapter 11 Cases.

59.    "File" or "Filed" means filed of record and entered on the docket in the Chapter 11 Cases or, in the case of a proof of claim, delivered to the Claims Agent.

60.    "Final Order" means a judgment, order, ruling or other decree issued and entered by the Bankruptcy Court or by any state or other federal court or other tribunal which

13

judgment, order, ruling or other decree has not been reversed, stayed, revoked, modified, supplemented or amended and as to which (a) the time to appeal or petition for review, rehearing or certiorari has expired and as to which no appeal or petition for review, rehearing or certiorari is pending, or (b) any appeal or petition for review, rehearing or certiorari has been finally decided and no further appeal or petition for review, rehearing or certiorari can be taken for granted.

      61.    "General Unsecured Claims" mean any Claim against any of the Debtors that is not an Administrative Expense, a Priority Tax Claim, a Priority Non-Tax Claim, a Miscellaneous Secured Claim, a JBBI Secured Claim or an Intercompany Claim.

      62.    "Global Settlement" refers to the settlement contemplated under the Global Settlement Agreement.

      63.    "Global Settlement Agreement" means that certain agreement, annexed hereto as **Exhibit A**, which sets forth the terms and conditions settling and resolving certain pending legal proceedings and disputes by and between the Debtors, the Committee, CCC, and the Brinkmann Parties.

      64.    "Governmental Unit" has the meaning set forth in section 101(27) of the Bankruptcy Code.

      65.    "Holder" means any Entity holding an Administrative Expense, Claim, Equity Interest, or Subsidiary Equity Interest.

      66.    "Impaired" has the meaning set forth in section 1124 of the Bankruptcy Code.

14

67.    "Initial Distribution Model" means the financial model attached as

**Exhibit D** to this Plan.

68.    "Intercompany Claim" means any Claim or Administrative Expense by

one Debtor Group against another Debtor Group, but shall not include any Brinkmann

Intercompany Claims.

69.    "Interest" means an Equity Interest or Subsidiary Equity Interest.

70.    "JBB" means J. Baxter Brinkmann.

72.    "JBBI" means J. Baxter Brinkmann International Corporation.

73.    "JBBI Secured Claims" mean all Secured Claims assigned to and held by

any of the Brinkmann Parties against any of the Debtors that were formerly held by (i) Bank of

America N.A. and subsequently assigned to NT Acquisitions, LLC, and which transfer of claim

was filed with the Court on August 18, 2016; and (ii) Comerica Bank, and subsequently assigned

to South 720, L.P., an which transfer of Claim was filed with the Court on April 25, 2016.

74.    "Liabilities" means any and all costs, expenses, damages, losses, penalties,

fines, judgments, Claims, Liens, obligations, demands, injuries, settlements, awards, fines, taxes,

fees, indebtedness, or other liabilities of any nature, whether known or unknown, foreseen or

unforeseen, existing or hereinafter arising, liquidated or unliquidated, matured or not matured,

contingent or direct, whether arising at common law, in equity, or under any statute, based in

whole or in part on any act or omission or other occurrence arising or taking place prior to the

Effective Date.

15

75.     "Lien" means any charge against or interest in property to secure payment or performance of a Claim, debt, or obligation.

76.     "Liquidation Trust" means the trust established for the benefit of the Liquidation Trust Beneficiaries on the Effective Date in accordance with the terms of this Plan and the Liquidation Trust Agreement.

77.     "Liquidation Trust Agreement" means the agreement filed in the Plan Supplement establishing and setting forth the terms and conditions of the Liquidation Trust.

78.     "Liquidation Trust Assets" mean the Settlement Consideration as described in paragraph 3 of the Global Settlement Agreement.

79.     "Liquidation Trust Beneficiaries" means the Holders of (i) General Unsecured Claims, (ii) Tax Claims, (iii) Administrative Expenses (other than Professional Fee Claims and statutory fees payable to the United States Trustee pursuant to 28 U.S.C. § 1930), (iv) Priority Non-Tax Claims and any additional parties identified in the Liquidation Trust Agreement.

80.     "Liquidation Trustee" means initially Fred Stevens of Klestadt Winters Jureller Southard & Stevens, LLP and any successor thereto, appointed and serving from time to time as Liquidation Trustee under the Liquidation Trust Agreement, acting in its capacity as Liquidation Trustee on behalf of the Liquidation Trust.

81.     "Liquidation Trust Expenses" means all reasonable legal and other reasonable professional fees, costs, and expenses incurred by the Liquidation Trustee on account of administration of the Liquidation Trust, including any reasonable administrative fees and

16

expenses, reasonable attorneys' fees and expenses, reasonable insurance costs, taxes, and reasonable escrow expenses.

82.     "Liquidation Trust Interests" mean the non-transferable interests in the Liquidation Trust that are issued to the Liquidation Trust Beneficiaries pursuant to the Plan.

83.     "Liquidation Trust Oversight Committee" means the committee established pursuant to Article VI.K of this Plan to oversee the Liquidation Trustee's performance of its duties and otherwise serve the functions described in this Plan and the Liquidation Trust Agreement.  The members of the Liquidation Trust Oversight Committee shall be identified in the Plan Supplement.

84.     "Liquidation Trust Minimum Funding" means the minimum funding amount as determined by both Plan Proponents to be transferred to the Liquidation Trust on the Effective Date, or as soon as practicable thereafter.

85.     "Miscellaneous Secured Claim" means any Secured Claim against any of the Debtors, other than the JBBI Secured Claims and Tooling Claims.

86.     "MLC" means Debtor Malibu Lighting Corporation.

87.     "MLC Net Distributable Assets" means (a) the Settlement Consideration available for distribution to Holders of General Unsecured Claims against MLC minus (i) the amount of all Allowed and Disputed A/P/S Claims allowed against or allocated to MLC pursuant to the Distribution Model Methodology, (ii) the portion of the Liquidation Trust Expenses allocated to MLC pursuant to the Distribution Model Methodology, and (b) decreased to take

17

into account distributions on account of Intercompany Claims against MLC pursuant to the

Distribution Model Methodology.

88.     "NCOC" means Debtor NC Estate Corporation f/k/a National Consumer

Outdoors Corporation.

89.     "NCOC Debtors" means, collectively, NCOC and Stubbs Collections, Inc.

90.     "NCOC Debtors Net Distributable Assets" means (a) the Settlement

Consideration available for distribution to Holders of General Unsecured Claims against the

NCOC Debtors minus (i) the amount of all Allowed and Disputed A/P/S Claims allowed against

or allocated to the NCOC Debtors pursuant to the Distribution Model Methodology, (ii) the

portion of the Liquidation Trust Expenses allocated to the NCOC Debtors pursuant to the

Distribution Model Methodology, and (b) increased to take into account distributions on account

of Intercompany Claims by the NCOC Debtors pursuant to the Distribution Model Methodology.

91.     "ODC" means Debtor Outdoor Direct Corporation f/k/a the Brinkmann

Corporation.

92.     "ODC Debtors" means, collectively, ODC, Smoke 'N Pit Corporation,

Treasure Sensor Corporation, and Q-Beam Corporation.

93.     "ODC Debtors Net Distributable Assets" means (a) the Settlement

Consideration available for distribution to Holders of General Unsecured Claims against the

ODC Debtors minus (i) the amount of all Allowed and Disputed A/P/S Claims allowed against

or allocated to the ODC Debtors pursuant to the Distribution Model Methodology, (ii) the

portion of the Liquidation Trust Expenses allocated to the ODC Debtors pursuant to the

Distribution Model Methodology, and (b) increased or decreased to take into account

distributions on account of Intercompany Claims by or against the ODC Debtors pursuant to the

Distribution Model Methodology.

94. "Overall Distribution Model" means the financial model attached hereto

as **Exhibit C**.

95.    "Person" means an individual, partnership, corporation, limited liability

company, business trust, joint stock company, trust, unincorporated association, joint venture,

governmental authority, Governmental Unit or other entity of whatever nature.

96.    "Petition Date" means October 8, 2015, the date on which the Debtors

filed their petitions for relief under chapter 11 of the Bankruptcy Code.

97.    "Plan" means this *Debtors' and Official Committee of Unsecured*

*Creditors' Joint Plan of Liquidation Under Chapter 11 of the Bankruptcy Code*, as may be

amended or modified from time to time.

98.    "Plan Supplement" means the supplement to the Plan to be Filed by the

Plan Proponents with the Bankruptcy Court, which supplement shall contain forms of certain

substantially final documents required for the implementation of the Plan, no later than ten (10)

days prior to the Confirmation Hearing. The Plan Supplement shall include, among other

potential items: (a) a substantially final version of the Liquidation Trust Agreement, (b) the

identity of the members of the Liquidation Trustee Oversight Committee, (c) a list of retained

Avoidance Actions, and (d) a list of executory contracts and/or unexpired leases to be assumed.

99.    "Priority Non-Tax Claim" means any Claim, other than a Priority Tax
Claim, to the extent entitled to priority under section 507(a) of the Bankruptcy Code.

100.    "Priority Tax Claim" means any Claim for any Tax that is entitled to
priority payment under section 507(a)(8) of the Bankruptcy Code.

101.    "Privilege" means the attorney-client privilege held by the Debtors or their
Estates as permitted under the Federal Rule of Evidence 501 and all other applicable law. For
avoidance of doubt, Privilege does not include work product documents, emails, or other
materials held by the Debtors

102.    "Pro Rata" means proportionately, so that with respect to any distribution,
the ratio of (a) (i) the amount of property to be distributed on account of a particular Claim or
particular group of Claims to (ii) the amount of such particular Claim or group of Claims, is the
same as the ratio of (b) (i) the amount of property to be distributed on account of all Claims or
groups of Claims sharing in such distribution to (ii) the amount of all Claims or groups of Claims
sharing in such distribution.

103.    "Professional Fee Account" means the segregated account held by
Pachulski Stang Ziehl & Jones LLP in escrow for the benefit of Professional Persons to hold all
amounts budgeted for payment of all Allowed Professional Fee Claims through the Effective
Date.

104.    "Professional Fee Claim" shall mean an Administrative Expense of a
Professional Person for compensation for services rendered and reimbursement of costs,

20

expenses or other charges incurred on or after the Petition Date and on or before the Effective Date.

105.    "Professional Person" shall mean Persons retained or to be compensated pursuant to sections 326, 327, 328, 330, 503(b), and/or 1103 of the Bankruptcy Code including, without limitation, any ordinary course professionals.

106.    "Rejection Claim" means any claim for monetary damages as a result of the rejection of an executory contract or unexpired lease arising solely pursuant to the Confirmation Order.  For avoidance of doubt, Rejection Claims do not include any claims related to or arising from the rejection of any executory contract or unexpired lease pursuant to any order entered by the Bankruptcy Court prior to entry of the Confirmation Order.

107.    "Released Claims" shall have the meaning in Article IV.C of the Plan.

108.    "Release Opt-Out" means the item set forth in the Ballots, due by the Voting Deadline, pursuant to which Holders of Claims may affirmatively elect to opt out of granting the release set forth in Article IV.C of the Plan.

109.    "Released Parties" means the (a) Debtors; (b) the Debtors' Professional Persons; (c) the Chief Restructuring Officer; (d) Aurora; (e) the Committee and its present and former members; (f) the Committee's Professional Persons; (g) the Brinkmann Parties; (h) CCC with respect to the claims released pursuant to the Global Settlement Agreement; and (i) with respect to the parties listed in (a-h) of this sentence, each of the preceding parties' respective or present members, officers, managers, directors, employees, consultants, professionals, advisors, agents and other representatives, including without limitation, attorneys, accountants, and

21

financial advisors and their respective subsidiaries and affiliates and their respective successor

and assigns, in each case solely in their capacities as such, provided however, that CCC and the

Brinkmann Parties shall not become Released Parties until the occurrence and satisfaction of the

conditions set forth in the Global Settlement Agreement.

110.    "Retained Avoidance Claims" means all Avoidance Claims referenced in

the Plan Supplement.

111.    "Rights of Action" means, except to the extent released under this Plan,

any and all claims, demands, rights, defenses, actions, causes of action (including, without

limitation, retained Avoidance Claims), tax refunds, suits, contracts, agreements, obligations,

accounts, defenses, offsets, powers and privileges of any kind or character whatsoever, known or

unknown, suspected or unsuspected, whether arising prior to, on or after the Petition Date, in

contract or in tort, at law or in equity, or under any other theory of law, held by any Person

against any other Person, and any proceeds thereof, including but not limited to (1) rights of

setoff, counterclaim or recoupment, and claims on contracts or for breaches of duties imposed by

law; (2) the right to object to Claims or Interests; (3) claims pursuant to section 362 of the

Bankruptcy Code; (4) such claims and defenses as fraud, negligence, breach of fiduciary duty,

corporate waste, unlawful dividends, mistake, duress and usury; (5) retained Avoidance Claims;

and (6) claims for tax refunds.

112.    "Schedules" means the schedules of assets and liabilities and statement of

financial affairs filed by each of the Debtors with the Bankruptcy Court pursuant to Bankruptcy

Rule 1007, as they have been or may be amended from time to time.

113.    "Secured Claim" means any Claim of any Person that is secured by a Lien on property in which the Debtors or the Estates has an interest, which Lien is valid, perfected, and enforceable under applicable law or by reason of a Final Order, but only to the extent of the value, as determined by the Bankruptcy Court pursuant to section 506(a) of the Bankruptcy Code, of any interest of the claimant in the property of the Estate securing such Claim or subject to setoff.

114.    "Settlement Consideration" means the consideration specified in section 3 of the Global Settlement Agreement.

115.    "Subsidiary Equity Interests" means:  (A) the equity security interests held by ODC in:  (i) NCOC, (ii) Q-Beam Corporation; (iii) Smoke 'N Pit Corporation; (iv) Treasure Sensor Corporation; and (v) Brinkmann International; and (B) the equity security interests held by NCOC in Stubbs Collections, Inc.

116.    "Tax" means any tax, charge, fee, levy, impost, or other assessment by any federal, state, local or foreign taxing authority, including, without limitation, income, excise, property, sales, transfer, employment, payroll, franchise, profits, license, use, ad valorem, estimated, severance, stamp, occupation and withholding tax.  "Tax" shall include any interest or additions attributable to, imposed on or with respect to such assessments.

117.    "Timely Filed" means, with respect to a Claim, Interest or Administrative Expense, that a proof of such Claim or Interest or request for payment of such Administrative Expense was filed with the Bankruptcy Court or the Claims Agent, as applicable, within such applicable period of time fixed by the Plan, statute, or pursuant to both Bankruptcy Rule

23

3003(c)(3) and a Final Order (including the Bar Date Order), or has otherwise been deemed

timely filed by a Final Order of the Bankruptcy Court.

118.    "Tooling Claims" means Claims asserted by Tooling Creditors.

119.    "Tooling Creditors" means certain creditors that have asserted Claims

against the Debtors and against whom one or more of the Debtors have asserted ownership in

certain tooling equipment in the possession, control or dominion of such creditors as set forth on

**Exhibit 4** to the Disclosure Statement.

120.    "Unimpaired" means, with respect to a Class of Claims or Interests, a

Class of Claims or Interests that is unimpaired within the meaning of section 1124 of the

Bankruptcy Code.

121.    "Voting Deadline" means the date and time by which all Ballots to accept

or reject the Plan must be received in order to be counted under the Order of the Bankruptcy

Court approving the Disclosure Statement as containing adequate information, pursuant to

section 1125(a) of the Bankruptcy Code, and authorizing the Debtors to solicit acceptances of the

Plan.

## III.

## TREATMENT OF ADMINISTRATIVE EXPENSES AND PRIORITY TAX CLAIMS

### A.    Introduction

As required by the Bankruptcy Code, Administrative Expenses and Priority Tax

Claims, are not placed into voting Classes.  Instead, they are left unclassified, are not considered

Impaired, do not vote on the Plan, and receive treatment specified by the Bankruptcy Code or by agreement of the parties.

**B.    <u>Administrative Expenses</u>**

Each Holder of an Allowed Administrative Expense against the Debtors will receive, in full satisfaction, settlement, release, and extinguishment of such Allowed Administrative Expense, Cash equal to the full amount of such Allowed Administrative Expense, unless such Holder and the Debtors have mutually agreed in writing to other terms, or an order of the Bankruptcy Court provides for other terms, on the later to occur of (i) the Effective Date, or as soon as practicable thereafter; or (ii) the date on which the Administrative Expense becomes an Allowed Administrative Expense. Notwithstanding any of the foregoing, if any Allowed Administrative Expense represents an obligation incurred in the ordinary course of business, such Allowed Administrative Expense will be paid in the ordinary course by the Liquidation Trustee in accordance with the terms of the particular transaction and/or applicable agreement.

Professional Persons requesting compensation or reimbursement on account of Professional Fee Claims must file and serve, on all parties entitled to notice thereof, a fee application for final allowance of compensation and reimbursement of expenses in accordance with the various orders of the Bankruptcy Court establishing procedures for submission and review of such applications; provided that, if no last date is set in such procedures for filing such applications, they must be filed no later than forty-five (45) days after the Effective Date and any objections to such applications must be made in accordance with applicable rules of the Bankruptcy Court. After the Debtors' Professional Persons receive full and final payment of all

25

amounts owed pursuant to their final Fee Applications, they shall return any excess retainers to

the Liquidation Trust within two (2) Business Days after receiving such final fee payment,

provided, however, if on the Effective Date, any of the Debtors' Professional Persons have

calculated that any of such Professional Person's retainer is greater than the outstanding

Professional Fee Claim (including claims for any unpaid holdback amounts or unreimbursed

expenses) owed to such Professional Person, any excess retainer amount shall be returned to the

Liquidation Trust within five (5) Business Days after the Effective Date.

**C.      Priority Tax Claims**

Pursuant to section 1123(a)(1) of the Bankruptcy Code, Priority Tax Claims are

not to be classified and thus Holders of Priority Tax Claims are not entitled to vote to accept or

reject the Plan.  Except to the extent that a holder of an Allowed Property Tax Claim agrees to

less favorable treatment, and to the extent that such Claim has not been previously satisfied, each

Holder of an Allowed Priority Tax Claim, if any, shall receive in full satisfaction of such

Allowed Priority Tax Claim (a) payment in Cash equal to the unpaid portion of such Allowed

Priority Tax Claim within seven (7) Business Days after such Allowed Priority Tax Claim

becomes an Allowed Claim, or as soon thereafter as is practicable;  (b) Cash in an amount agreed

to by the Debtors, or (c) such other treatment as which the Holder of an Allowed Priority Tax

Claim and the Debtors may agree.

**IV.**

## CLASSIFICATION AND TREATMENT
## OF CLASSIFIED CLAIMS AND INTERESTS

**A.**     **Summary**

The categories of Claims and Interests listed below classify Claims and Interests

for all purposes, including voting, confirmation and distribution pursuant to the Plan and

pursuant to sections 1122 and 1123(a)(1) of the Bankruptcy Code.  A Claim or Interest is

classified in a particular Class only to the extent that the Claim or Interest qualifies within the

description of that Class and is classified in other Classes only to the extent that any remainder of

the Claim or Interest qualifies within the description of such other Classes.  A Claim or Interest

is also classified in a particular Class only to the extent that such Claim or Interest is an Allowed

Claim or Allowed Interest in that Class and has not been paid, released or otherwise satisfied

prior to the Effective Date.

In accordance with section 1122 of the Bankruptcy Code, the Plan provides for

the classification of Claims and/or Interests as set forth below.

**B.**     **Classification and Treatment of Claims and Interests**

The treatment of each Class of Claims and/or Interests is set forth below.  For

purposes of voting, the Plan provides the classification of three (3) sub-classes of Claims against

each Debtor as follows:

(A) ODC Debtors;

(B) MLC; and

(C) NCOC Debtors.

27

The Plan provides for the partial substantive consolidation of the ODC Debtors and NCOC Debtors, for the reasons discussed in the Disclosure Statement. MLC shall maintain its separate corporate existence on the Effective Date. Thus, claims against the ODC Debtors, MLC, and the NCOC Debtors shall be treated as three (3) separate Classes for purposes of voting and treatment under the Plan.

| Class | Status | Voting Rights |
|---|---|---|
| Class 1 (A-C) – Priority Non-Tax Claims | Unimpaired | Not Entitled to Vote |
| Class 2 (A-C) – Miscellaneous Secured Claims | Unimpaired | Not Entitled to Vote |
| Class 3 (A (ODC Debtors) & B (MLC)) – Tooling Claims identified on Exhibit 4 to the Disclosure Statement | Impaired | Entitled to Vote |
| Class 4 (A-C) – JBBI Secured Claims | Impaired | Entitled to Vote |
| Class 5 (A-C) – General Unsecured Claims | Impaired | Entitled to Vote |
| Class 6 (A) –Equity Interests<br>Class 6 (B) – Subsidiary Equity Interests | Impaired | Not Entitled to Vote |

### Class 1 (A-C) – Priority Non-Tax Claims

Classification:  Classes 1 (A-C) consist of all Priority Non-Tax Claims against any of the Debtors.

Treatment:  The Holder of each Priority Non-Tax Claim against the Debtors will receive, in full satisfaction, settlement, release, and extinguishment of such Priority Non-Tax Claim, on or as soon as practicable after the earlier of (i) the Effective Date, or (ii) the date upon which the Bankruptcy Court enters a Final Order determining or allowing such Priority Non-Tax

28

Claim, (a) a Cash payment equal to the Allowed amount of such Priority Non-Tax Claim, or (b) such other treatment as otherwise agreed by the Holder of such Priority Non-Tax Claim and the Debtors. **The Debtors are not aware of any Priority Non-Tax Claims.**

Impairment/Voting: Classes 1 (A-C) are Unimpaired. Classes 1 (A-C) therefore are conclusively presumed to have accepted the Plan and Holders of Claims in Classes 1 (A-C) are not entitled to vote to accept or reject the Plan.

### Class 2 (A-C) – Miscellaneous Secured Claims

Classification: Classes 2 (A-C) consist of all Miscellaneous Secured Claims (if any such Claims exist) against the Debtors. Although all Miscellaneous Secured Claims have been placed in one Class for the purposes of nomenclature, each Miscellaneous Secured Claim, to the extent secured by a Lien on any property or interest in property of the Debtors different from that securing any other Miscellaneous Secured Claim, will be treated as being in a separate sub-Class for the purpose of receiving distributions under the Plan. **The Debtors are not aware of any Miscellaneous Secured Claims.**

Treatment: Except to the extent that a Holder of an Allowed Miscellaneous Secured Claim has been paid by the Debtors, in whole or in part, prior to the Effective Date, on the Effective Date, at the option of the Debtors, or the Liquidating Trustee, as applicable (i) each Allowed Miscellaneous Secured Claim will be reinstated and Unimpaired in accordance with section 1124 of the Bankruptcy Code or (ii) each Holder of an Allowed Miscellaneous Secured Claim will receive, in full satisfaction, settlement, and release of, and in exchange for, such Miscellaneous Secured Claim, (x) payment in full in Cash of the unpaid portion of such Allowed

29

Miscellaneous Secured Claim, (y) surrender by the applicable Debtor of the collateral securing

such Claim or (z) such other treatment as may be agreed to by the Holder and the Debtors. Prior

to the Confirmation Hearing, the Debtors will inform each Holder of a Miscellaneous Secured

Claim of the option selected for treatment of each Holders's Miscellaneous Secured Claim.

Impairment/Voting:  Classes 2 (A-C) are unimpaired.  Classes 2 (A-C) therefore

are conclusively presumed to have accepted the Plan Holders of Claims in Classes 2 (A-C) are

therefore not entitled to vote to accept or reject the Plan.

### Classes 3 (A&B) – Tooling Claims

Classification:  Class 3 (A&B) consist of the Tooling Claims against the ODC

Debtors and MLC.

Treatment:  Except to the extent a Holder of an Allowed Tooling Claim agrees to

a less favorable, treatment, in exchange for settlement and satisfaction of each Allowed Tooling

Claim, each Holder of such Allowed Tooling Claim shall receive one of the following

treatments, as elected on the Ballot by each Tooling Creditor: (i) treatment as a secured creditor

and retention of the tooling/equipment in its possession in full and complete satisfaction of any

and all Claims against the Debtors, including, without limitation, any General Unsecured Claims,

or (ii) treatment as a General Unsecured Claim in Class 5 to the extent such Claim is or becomes

Allowed, in which case such Tooling Creditor must (A) return all tooling/equipment in its

possession to the Debtors and (B) transfer of all right, title and interest in any tooling/equipment

by any Tooling Creditor to JBBI (or its designee), at JBBI's sole expense, as a condition to

receiving any distribution on account of such Allowed Unsecured Claim.  If a Tooling Creditor

30

does not return a Ballot or does not make an election on a Ballot, such Tooling Creditor shall be deemed to have elected option (i) above.

Impairment/Voting: Class 3 (A&B) are Impaired. Holders of Claims in Classes 3 (A&B) are entitled to vote to accept or reject the Plan.

### Classes 4 (A-C) – JBBI Secured Claims

Classification: Classes 4 (A-C) consist of the JBBI Secured Claims against the Debtors. As of the date Disclosure Statement, the Debtors believe that the JBBI Secured Claims will total (a) $4,009,000, by virtue of Comerica's former secured claim against MLC that was assigned to South 720 and (b) $10,354,000, by virtue of Bank of America, N.A.'s former secured claim against ODC and the former guarantee obligations owed by NCOC to Bank of America N.A., and which was assigned to NT Acquisitions, LLC.

Treatment: As part of the Global Settlement, the JBBI Secured Claims shall be cancelled, extinguished and of no force and effect. For the avoidance of doubt, the JBBI Secured Claims shall not be entitled to any distributions from the Liquidation Trust.

Impairment/Voting: Class 4 (A-C) are Impaired. Holders of Claims in Classes 4 (A-C) are entitled to vote to accept or reject the Plan.

### Classes 5 (A-C) – General Unsecured Claims

Classification: Classes 5 (A-C) consist of all General Unsecured Claims against the Debtors.

Treatment: On or as soon as practicable after the Effective Date, each Holder of an Allowed General Unsecured Claim will receive, in full satisfaction, settlement and release of

31

and in exchange for such Claim, its Pro Rata share of the Liquidation Trust Interests allocated to the ODC Debtors, MLC and the NCOC Debtors, respectively. The amount of these Liquidation Trust Interests shall equal the sum of (a) the Distribution Pro Rata Share of the ODC Net Distributable Assets attributable to each Holder of a General Unsecured Claim against the ODC Debtors, (b) the Distribution Pro Rata Share of the MLC Net Distributable Assets attributable to each Holder of a General Unsecured Claim against MLC, and (c) the Distribution Pro Rata Share of the NCOC Net Distributable Assets attributable to each Holder of a General Unsecured Claim against the NCOC Debtors.

The Liquidation Trust shall be the exclusive source of payment to Holders of Allowed General Unsecured Claims. Estimated recoveries for Holders of Allowed General Unsecured Claims are included in the Overall Distribution Model attached hereto as **Exhibit C** to this Plan.

Special Treatment for CCC Class 5 Insurance Claims: All CCC Class 5 Claims are Disputed. All CCC Class 5 Claims shall be administered pursuant to the ADR Procedures annexed as Exhibit B to the Plan and shall be subject to the Injunction provision set forth in Section X.A.3 of the Plan. To the extent any CCC Class 5 Claim becomes an Allowed Claim, such Claim shall be treated pursuant to this subparagraph, unless otherwise agreed by the Liquidation Trustee, CCC and the Holder of such Allowed CCC Class 5 Claim.

Impairment/Voting: Classes 5 (A-C) are Impaired. Holders of Claims in Classes 5 (A-C) are entitled to vote to accept or reject the Plan.

**Classes 6 (A-B) – Equity Interests in the Debtors**

32

Classification:  Class 6 consist of two subclasses. Class 6 (A) consists of the Equity Interests and Class 6 (B) consists of the Subsidiary Equity Interests.

Treatment:  The Holders of Equity Interests and Subsidiary Equity Interests shall not receive any distribution on account of such Interests.  On the Effective Date, the Equity Interests and Subsidiary Equity Interests shall be cancelled.

Impairment/Voting:  Classes 6 (A-B) are Impaired and are conclusively presumed to have rejected the Plan.  Holders of Classes 6 (A-B) Interests are not entitled to vote to accept or reject the Plan.

## V.

## ACCEPTANCE OR REJECTION OF PLAN

**A.    Identification of Unimpaired Classes**

The following Classes of Claims are Unimpaired under the Plan:

Class 1 (A-C) – Priority Non-Tax Claims

Class 2 (A-C) – Miscellaneous Secured Claims

**B.    Identification of Impaired Classes**

The following Classes of Claims and Interests are Impaired under the Plan.

Class 3 (A&B) - Tooling Claims

Class 4 (A-C) – JBBI Secured Claims

Class 5 (A-C) – General Unsecured Claims

Class 6 (A) – Equity Interests

Class 6 (B) – Subsidiary Equity Interests

33

**C.**    **Classes Permitted and Not Permitted to Vote**

Classes 1 (A-C) and 2 (A-C) are Unimpaired.  Holders of Claims in these Classes are conclusively presumed pursuant to section 1126(f) of the Bankruptcy Code to have accepted the Plan and therefore will not be entitled to vote to accept or reject the Plan.  Holders of Claims in Class 3 (A&B), Class 4 (A-C) and Class 5 (A-C) are Impaired and permitted to vote to accept or reject the Plan.  Class 6 (A) and Class 6 (B) are Impaired and are conclusively presumed pursuant to section 1126(f) of the Bankruptcy Code to have rejected the Plan and therefore will not be entitled to vote to accept or reject the Plan.

An Impaired Class of Claims that votes will have accepted the Plan if (a) the Holders of at least two-thirds in amount of the Allowed Claims actually voting in such Class have voted to accept the Plan and (b) the Holders of more than one-half in number of the Allowed Claims actually voting in such Class have voted to accept the Plan.

**D.**    **Nonconsensual Confirmation**

In the event any Class of Claims votes to reject the Plan and given the deemed rejection of the Plan by the Holders of Interests, the Debtors request that the Bankruptcy Court confirm the Plan notwithstanding such rejection pursuant to section 1129(b) of the Bankruptcy Code on the basis that the Plan is fair and equitable and does not discriminate unfairly as to the Holders of any Class of Claims or Interests.

**E.**    **Postpetition Interest**

Nothing in the Plan or the Disclosure Statement will be deemed to entitle the Holder of a Claim to receive postpetition interest on account of such Claim, except to the extent

that the Holder of a Claim has the benefit of a Lien on assets that exceed the value of such Claim

or the Plan expressly provides for postpetition interest on account of such Claim.

## VI.

## MEANS FOR IMPLEMENTATION OF THE PLAN

### A.      Settlement of Claims Against the Brinkmann Parties and CCC

The Plan contemplates the compromise, settlement, and release of the Debtors'

and the Estates' claims against the Brinkmann Parties and CCC.

The terms of the Global Settlement are set forth in the Global Settlement

Agreement attached to this Plan as **Exhibit A**.   The Global Settlement provides for:

Settlement Consideration to the Debtors' Estates.  As discussed in paragraphs 2 and 3 of the Global Settlement Agreement.

Tooling and Equipment.  As discussed in paragraph 4 of the Global Settlement Agreement.

Intercompany Claims.  As discussed in paragraph 7 of the Global Settlement Agreement.

Brinkmann Intercompany Claims.  As discussed in paragraph 6 of the Global Settlement Agreement.

JBBI's agreement to vote JBBI Secured Claim in favor of Plan.  As discussed in paragraph 8 of the Global Settlement Agreement.

Mutual General Release.  As discussed in paragraphs 10-13 of the Global Settlement Agreement.

The Plan and Disclosure Statement, jointly, shall serve as, and shall be deemed a

motion for entry of an order by the Bankruptcy Court under Bankruptcy Rule 9019 approving the

Global Settlement.  If no objection to the Global Settlement is timely filed and served by a

Holder of a Claim affected by the Plan as provided herein on or prior to the Voting Deadline (or

35

such other deadline established by the Bankruptcy Court), the settlement may be approved by the

Bankruptcy Court as part of the Confirmation Order.  If any such objections to the Global

Settlement are timely filed and filed, the Global Settlement and objections thereto shall be

considered at the Confirmation Hearing.

The Plan and Disclosure Statement, jointly, shall also serve as, and be deemed a

motion for entry of an order by the Bankruptcy Court under Bankruptcy Rule 9019 approving the

CCC Settlement Agreement, which provides for, among other things, the approval of the ADR

Procedures, the settlement of CCC's claim against the Debtors, and the mutual release of certain

claims between the Debtors, the Committee the Liquidating Trust, the Liquidating Trustee, and

the Liquidation Trust Oversight Committee on the one hand, and CCC.   If no objection to the

CCC Settlement Agreement is timely filed and served by a Holder of a Claim affected by the

Plan as provided herein on or prior to the Voting Deadline (or such other deadline established by

the Bankruptcy Court), the settlement may be approved by the Bankruptcy Court as part of the

Confirmation Order.  If any such objections to the CCC Settlement Agreement are timely filed

and filed, the CCC Settlement Agreement and objections thereto shall be considered at the

Confirmation Hearing.

**B.** **Partial Substantive Consolidation**

i. *Consolidation of the ODC Debtors*

The Assets and Liabilities of each of the ODC Debtors shall be deemed to be the

Assets and Liabilities of a single, consolidated entity. Each and every Claim filed or to be filed in

the Chapter 11 Cases against any of the ODC Debtors shall be considered filed against the

36

consolidated ODC Debtors on and after the Effective Date. Any joint and several Liability of two or more of the ODC Debtors, and all Claims against such entities on account of such joint and several Liability, shall be considered a single Claim and single Liability against the consolidated ODC Debtors. Any guarantee by an ODC Debtor of the Liabilities of any other ODC Debtor arising prior to the Effective Date shall be deemed eliminated under the Plan so that any Claim against any ODC Debtor and any guaranty thereof executed by any other ODC Debtor shall be deemed to be one obligation of the consolidated ODC Debtors. Intercompany Claims between the ODC Debtors shall be treated in accordance with Article 5 (C) of the Plan.

      ii.     *Consolidation of the NCOC Debtors*

The Assets and Liabilities of each of the NCOC Debtors shall be deemed to be the Assets and Liabilities of a single, consolidated entity. Each and every Claim filed or to be filed in the Chapter 11 Cases against any of the NCOC Debtors shall be considered filed against the consolidated NCOC Debtors on and after the Effective Date. Any joint and several Liability of the two NCOC Debtors, and all Claims against such entities on account of such joint and several Liability, shall be considered a single Claim and single Liability against the consolidated NCOC Debtors. Any guarantee by an NCOC Debtor of the Liabilities of any other NCOC Debtor arising prior to the Effective Date shall be deemed eliminated under the Plan so that any Claim against any NCOC Debtor and any guaranty thereof executed by any other NCOC Debtor shall be deemed to be one obligation of the consolidated NCOC Debtors. Intercompany Claims between the NCOC Debtors shall be treated in accordance with Article 5 (C) of the Plan.

**C.**     **Treatment of Intercompany Claims**

Intercompany Claims shall be adjusted, continued, extinguished, discharged and/or otherwise resolved to the extent determined appropriate pursuant to the Distribution Model Methodology. Any such transaction may be effected on or subsequent to the Effective Date without any further action by the Debtors or the Liquidation Trustee, as applicable. For the avoidance of doubt, the treatment of the Intercompany Claims is separate and apart from the treatment of the Brinkmann Intercompany Claims, which, upon the Liquidation Trust's indefeasible receipt of the full amount of the Settlement Consideration, shall be cancelled, extinguished, released, voided and relinquished.

**D.    Corporate Action**

Upon the Effective Date, all matters under this Plan involving or requiring corporate action of the Debtors shall be deemed to have been authorized and to have occurred and be in effect from and after the Effective Date without further action by the Debtors or authorization from the Bankruptcy Court.

**E.    Vesting of Assets**

Except as otherwise provided in the Plan, upon the Effective Date, pursuant to section 1141(b) of the Bankruptcy Code, all property of the estate of each Debtor not otherwise distributed on the Effective Date shall vest in the Liquidation Trust for the benefit of the holders of Claims against and Equity Interests in that Debtor. Pursuant to section 1123(b)(3) of the Bankruptcy Code, after the Effective Date, the Liquidation Trust shall retain and enforce any claims or interests belonging to each of the Debtors' respective chapter 11 bankruptcy estates that were not released by the Plan. From and after the Effective Date, the Liquidation Trustee,

38

acting through the Liquidation Trust, may take any action consistent with the terms of the Plan, Confirmation Order and Liquidation Trust Agreement, and execute, deliver, implement, and fully perform any and all obligations, instruments, documents and papers or otherwise in connection with any of the foregoing, free of any restrictions of the Bankruptcy Code or the Bankruptcy Rules and in all respects as if there were no pending cases under any chapter or provision of the Bankruptcy Code, except as explicitly provided herein.

**F.      Resignation of Officers and Directors**

As of the Effective Date, any of the Debtors' remaining officers and members of their boards of directors shall be deemed to have resigned, if they have not already done so, without the necessity of any further action or writing, and they shall be released from any responsibilities, duties, and obligations that arise after the Effective Date to the Debtors or their creditors under the Plan or applicable law.

**G.      Corporate Existence; Dissolution of Debtors**

As of the Effective Date each of the Debtors will cease to exist and shall be deemed dissolved for all purposes without the necessity for other or further actions to be taken by the Debtors or payments to be made in connection therewith.

**H.      Cancellation and Surrender of Instruments, Securities and Existing Agreements**

Except as otherwise provided in this Plan, on the Effective Date, all notes, indentures, stock, instruments, certificates, and other documents evidencing Equity Interests shall be deemed automatically cancelled and shall be of no further force or effect, whether surrendered

39

for cancellation or otherwise, and the obligations of the Debtors' estates thereunder or in any way related thereto shall be terminated.

**I.**    **Retained Rights of Action**

All retained Rights of Action shall be preserved pursuant to section 1123(b) of the Bankruptcy Code and retained by the Liquidation Trustee for the sole and exclusive benefit of the Liquidating Trust beneficiaries.  The Liquidation Trustee shall have standing, as the sole representative of the Estates pursuant to section 1123(b)(3)(B) of the Bankruptcy Code, to pursue, or decline to pursue, the retained Rights of Action, as appropriate, in the business judgment of the Liquidation Trustee. The Liquidation Trustee may settle, release, sell assign, otherwise transfer, or compromise, retained Rights of Action without need for notice or order of the Bankruptcy Court.

To the extent any retained Rights of Action are already pending on the Effective Date, the Liquidation Trustee as successor to the Debtors may continue the prosecution of such Right of Action(s) without an order of the Bankruptcy Court substituting the Liquidating Trustee for one or more of the Debtors.

**J.**    **Full and Final Satisfaction**

Upon the Effective Date, the Debtors shall have no further liability on account of any Claims or Interests except as set forth in this Plan.

**K.**    **Creation and Governance of the Liquidation Trust**

On the Effective Date, the Debtors and the Liquidation Trustee shall execute the Liquidation Trust Agreement and shall take all steps necessary to establish the Liquidation Trust

40

in accordance with the Plan and the beneficial interests therein, which shall be for the benefit of the Liquidation Trust Beneficiaries. Additionally, on the Effective Date the Debtors shall irrevocably transfer and shall be deemed to have irrevocably transferred to the Liquidation Trust all of their rights, title, and interest in and to all of the Liquidation Trust Assets. In accordance with section 1141 of the Bankruptcy Code, the Liquidation Trust Assets shall automatically vest in the Liquidation Trust free and clear of all Claims, Liens, encumbrances, or interests subject only to the Liquidation Trust Interests and the Liquidation Trust Expenses, as provided for in the Plan, Confirmation Order and the Liquidation Trust Agreement. The transfer of the Liquidation Trust Assets to the Liquidation Trust shall be exempt from any stamp, real estate transfer, other transfer, mortgage reporting, sales, use, or other similar tax. The Liquidation Trustee shall be the exclusive trustee of the Liquidation Trust Assets for purposes of 31 U.S.C. § 3713(b) and 26 U.S.C. § 6012(b)(3), as well as the representative of the Estates appointed pursuant to section 1123(b)(3)(B) of the Bankruptcy Code solely with respect to the Liquidation Trust Assets. The Liquidation Trust shall be governed by the Liquidation Trust Agreement and administered by the Liquidation Trustee. The powers, rights, and responsibilities of the Liquidation Trustee shall be specified in the Liquidation Trust Agreement and shall include the authority and responsibility to, among other things, take the actions set forth in Article VI of this Plan, subject to any required reporting to the Liquidation Trust Oversight Committee as may be set forth in the Liquidation Trust Agreement.

The Liquidation Trust shall hold and distribute the Liquidation Trust Assets in accordance with the provisions of the Plan, Confirmation Order, and the Liquidation Trust

Agreement.  Other rights and duties of the Liquidation Trustee and the Liquidation Trust

Beneficiaries shall be set forth in the Liquidation Trust Agreement.  For the avoidance of doubt,

after the Effective Date, the Debtors and the Estates shall have no interest in the Liquidation

Trust Assets, the transfer of the Liquidation Trust Assets to the Liquidation Trust is absolute, and

the Liquidation Trust Assets shall not be held or deemed to be held in trust by the Liquidation

Trustee on behalf of any of the Debtors or the Estates.

On and after the Effective Date, the Liquidation Trust shall succeed to all of the

Debtors' and the Estates rights under section 558 of the Bankruptcy Code solely with respect to

Claims.

## L.    **Purpose of the Liquidation Trust**

The Liquidation Trust shall be established for the purpose of distributing the

Liquidation Trust Assets to the Liquidation Trust Beneficiaries in accordance with Treasury

Regulation section 301.7701-4(d), with no objective to continue or engage in the conduct of a

trade or business.

## M.    **Liquidation Trustee and Liquidation Trust Agreement**

The Liquidation Trust Agreement generally will provide for, among other things:

(i) the payment of the Liquidation Trust Expenses; (ii) the payment of other reasonable expenses

of the Liquidation Trust; (iii) the retention of counsel, accountants, financial advisors, or other

professionals and the payment of their reasonable compensation; (iv) the investment of Cash by

the Liquidation Trustee within certain limitations, including those specified in the Plan; and (v)

the establishment of such Disputed Claim Reserve(s) as the Liquidation Trustee deems appropriate.

Except as otherwise ordered by the Bankruptcy Court, the Liquidation Trust Expenses shall be paid from the Liquidation Trust Assets in accordance with the Plan, Confirmation Order, and Liquidation Trust Agreement. The Liquidation Trustee shall establish a reserve for the payment of Liquidation Trust Expenses and shall periodically replenish such reserve, as necessary.

The Liquidation Trustee, on behalf of the Liquidation Trust, may employ, without further order of the Bankruptcy Court, professionals (including those previously retained by the Committee or the Debtors) to assist in carrying out its duties hereunder and may compensate and reimburse the reasonable expenses of these professionals without further Order of the Bankruptcy Court from the Liquidation Trust Assets in accordance with the Plan, Confirmation Order, and the Liquidation Trust Agreement. The Liquidation Trust Agreement may include reasonable and customary provisions that allow for indemnification by the Liquidation Trust in favor of the Liquidation Trustee and the Liquidation Trust Oversight Committee. Any such indemnification shall be the sole responsibility of the Liquidation Trust and payable solely from the Liquidation Trust Assets.

In furtherance of, and consistent with the purpose of the Liquidation Trust and the Plan, the Liquidation Trustee, for the benefit of the Liquidation Trust, shall, subject to reporting and oversight by the Liquidation Trust Oversight Committee have the rights and powers of the Liquidating Trustee as specified in the Liquidating Trust Agreement. The Liquidation Trustee

43

shall be responsible for all decisions and duties with respect to the Liquidation Trust and the

Liquidation Trust Assets, except as otherwise provided in the Plan, Confirmation Order, and the

Liquidation Trust Agreement.  In all circumstances, the Liquidation Trustee shall act in the best

interests of the Liquidation Trust Beneficiaries pursuant to the terms of the Plan, Confirmation

Order, and the Liquidation Trust Agreement.

**N.**    **Compensation and Duties of Liquidation Trustee**

The salient terms of the Liquidation Trustee's employment, including the

Liquidation Trustee's duties and compensation, shall be set forth in the Liquidation Trust

Agreement.  The Liquidation Trustee shall be entitled to reasonable compensation in an amount

consistent with that of similar functionaries in similar types of bankruptcy cases.

**O.**    **Federal Income Tax Treatment of the Liquidation Trust**

For all United States federal income tax purposes, except as noted in the

following paragraph, the parties shall treat the transfer of the Liquidation Trust Assets to the

Liquidation Trust as: (i) a transfer of the Liquidation Trust Assets directly to the applicable

Liquidation Trust Beneficiaries, followed by (ii) the transfer by the Liquidation Trust

Beneficiaries to the Liquidation Trust of such Liquidation Trust Assets in exchange for the

Liquidation Trust Interests.  Accordingly, the applicable Liquidation Trust Beneficiaries shall be

treated for United States federal income tax purposes as the grantors and owners of their

respective share of the Liquidation Trust Assets.  The foregoing treatment shall also apply, to the

extent permitted by applicable law, for state and local income tax purposes.  Please note that the

DOCS_SF:91641.24 10821/007

Liquidation Trust Assets will be subject to any post-Effective Date obligations incurred by the Liquidation Trust relating to the pursuit of Liquidation Trust Assets.

The Plan permits the Liquidation Trustee to establish Disputed Claim Reserves. The Liquidation Trustee may, at the Liquidation Trustee's sole discretion, file a tax election to treat any such Disputed Claim Reserve as a Disputed Ownership Fund or other taxable entity rather than as a part of the Liquidation Trust for federal income tax purposes. If the Liquidation Trustee timely elects to treat any portion of the Liquidation Trust subject to Disputed Claims as a Disputed Ownership Fund, any holders of Claims who, as of the Effective Date, are holders of Disputed Claims shall, to the extent of such Disputed Claims, not be treated as having received any portion of the Liquidation Trust Assets as to which legal or beneficial title is transferred to the Liquidation Trust hereunder and shall not be deemed grantors of the Liquidation Trust to the extent of such Disputed Claims for U.S. federal income tax purposes, but rather shall be subject to U.S. federal income taxation in accordance with rules set forth in section 468B of the Internal Revenue Code and the Treasury Regulations thereunder. If such election is made, the Liquidation Trust shall comply with all tax reporting and tax compliance requirements applicable to the Disputed Ownership Fund or other taxable entity, including, but not limited to, the filing of separate income tax returns for the Disputed Ownership Fund or other taxable entity and the payment of any federal, state or local income tax due.

## P.    **Liquidation Trust Tax Reporting**

For United States federal income tax purposes, the Liquidation Trustee shall file tax returns for the Liquidation Trust treating the Liquidation Trust as a grantor trust pursuant to

45

Treasury Regulation section 1.671-4(a), except to the extent the Liquidation Trustee files a tax election to treat a Disputed Claim Reserve as a Disputed Ownership Fund or other taxable entity rather than as a part of the Liquidation Trust. As a grantor trust, the Liquidation Trustee shall report to each Liquidation Trust Beneficiary a statement of the Liquidation Trust Beneficiary's share of the Liquidation Trust income, gain, loss, deduction, and credit for inclusion in the Liquidation Trust Beneficiary's United States federal income tax return. Liquidation Trust Beneficiaries therefore may owe tax on Liquidation Trust income without the receipt of cash to pay the tax. The Liquidation Trustee shall be responsible for payment, out of the Liquidation Trust Assets, of any taxes imposed on the Liquidation Trust or its assets. The Liquidation Trustee shall distribute such notices to the applicable Liquidation Trust Beneficiaries as the Liquidation Trustee determines are necessary or desirable.

**Q.    Liquidation Trust Expenses**

From and after the Effective Date, the Liquidation Trust shall, in the ordinary course of business and without the necessity of any approval by the Bankruptcy Court, pay the reasonable professional fees and expenses incurred by the Liquidation Trust and any professionals retained by the Liquidation Trust from the Liquidation Trust Assets, except as otherwise provided in the Liquidation Trust Agreement.

**R.    Distributions by Liquidation Trustee**

The Liquidation Trustee, in its discretion, may make distributions at any time on account of Allowed Claims provided that such distributions are otherwise permitted under, and

not inconsistent with, the terms of the Plan, Confirmation Order, the Liquidation Trust

Agreement, and applicable law.

**S.**     **Cash Investments**

The Liquidation Trustee may invest Cash (including any earnings thereon or

proceeds therefrom); *provided, however*, that such investments are investments permitted to be

made by a "liquidating trust" within the meaning of Treasury Regulation section 301.7701-4(d),

as reflected therein, or under applicable IRS guidelines, rulings or other controlling authorities.

**T.**     **Closure of ODC Bank Account at Bank of America**

ODC currently maintains a bank account with Bank of America, N.A., account

number ending 5871 (the "BOA Account"), that ODC intends to close before June 30, 2017.

However, to the extent the BOA Account is still open on June 30, 2017, ODC consents to Bank

of America closing the BOA Account and remitting any remaining funds to ODC within 30 days

after closing the account. The Debtors either have or are in the process of migrating funds in the

BOA Account to a separate account at a different bank that is an authorized depository under

applicable United States Trustee Guidelines.

**U.**     **Dissolution of the Liquidation Trust**

The Liquidation Trustee and the Liquidation Trust shall be discharged or

dissolved, as the case may be, at such time as: (a) all objections to Disputed Claims are fully

resolved, and (b) all distributions required to be made by the Liquidation Trust have been made,

but in no event shall the Liquidation Trust be dissolved later than five (5) years from the

Effective Date unless the Bankruptcy Court, upon motion made within the six-month period

47

before such fifth anniversary (and, in the event of further extension, by order of the Bankruptcy Court, upon motion made at least six months before the end of the preceding extension), determines that a fixed period extension (not to exceed three years, together with any prior extensions, without a favorable letter ruling from the Internal Revenue Service that any further extension would not adversely affect the status of the Liquidation Trust as a liquidating trust for federal income tax purposes) is necessary to facilitate or complete the recovery on, and liquidation of, the Liquidation Trust Assets.  Upon dissolution of the Liquidation Trust, any remaining Liquidation Trust Assets that exceed the amounts required to be paid under the Plan shall be transferred by the Liquidation Trustee to the American Bankruptcy Institute Endowment Fund.

## V. <u>Control Provisions</u>

To the extent there is any inconsistency between the Plan as it relates to the Liquidation Trust and the Liquidation Trust Agreement, the terms of the Liquidation Trust Agreement shall control.

## W. <u>Rights of Action</u>

The Liquidation Trust shall be vested with and shall retain and may enforce any and all Claims, rights, demands and Rights of Action of any kind or nature whatsoever held by, through or on behalf of the Debtors, the Committee and/or the Estates against any other Entity, arising before the Effective Date that have not been fully resolved or disposed of, or waived under the Plan prior to the Effective Date whether or not such Claims or Rights of Action are specifically identified in the Disclosure Statement accompanying this Plan or the Plan

Supplement and whether or not litigation with respect to same has been commenced prior to the

Effective Date.

## VII.

## PROVISIONS GOVERNING DISTRIBUTIONS
## AND DISTRIBUTION PROCEDURES

**A.**    **Disbursements on Account of Allowed Claims**

The Liquidation Trustee shall be exclusively responsible for making distributions

to Holders of Allowed Claims in accordance with the terms of the Plan, Confirmation Order, and

Liquidation Trust Agreement.  The Liquidation Trustee shall not be required to give any bond or

surety or other security for the performance of their duties under this Plan with respect to

distributions made pursuant to the Plan.  Distributions on account of all Allowed Professional

Fee Claims shall be made from the Professional Fee Account.

**B.**    **Disputed Payments**

No payments or distributions will be made on account of a Disputed Claim until

such Claim becomes an Allowed Claim.   In the event of any dispute between and among

Creditors as to the right of any Entity to receive or retain any payment or distribution to be made

to such Entity under the Plan, the Liquidation Trustee may, in lieu of making such payment or

distribution to such Entity, instead hold such payment or distribution until the disposition thereof

shall be determined by the Bankruptcy Court.

**C.**    **Fractional Distributions; De Minimis Distributions**

Notwithstanding any other provision of the Plan to the contrary, (a) the

Liquidation Trustee shall not be required to make distributions or payments of fractions of

49

dollars, and whenever any distribution of a fraction of a dollar under the Plan would otherwise be required, the actual distribution made shall reflect a rounding of such fraction to the nearest whole dollar (up or down), with half dollars being rounded down; and (b) the Liquidation Trustee shall have no duty to make a distribution on account of any Allowed Claim (i) if the aggregate amount of all distributions authorized to be made on such date is less than $30,000, in which case such distributions shall be deferred to the next distribution, (ii) if the amount to be distributed to a Holder on the particular distribution date is less than $100.00, unless such distribution constitutes the final distribution to such Holder, or (iii) if the amount of the final distribution to such Holder is $50.00 or less, in which case no distribution will be made to that holder, such distribution shall revert to the Liquidation Trust for distribution on account of other Allowed Claims, and that holder shall be forever barred from asserting such claim against the Liquidation Trust Assets or the Liquidation Trustee.

After final distributions have been made in accordance with the terms of the Plan and the Liquidation Trust Agreement, if the amount of remaining is less than $30,000, the Liquidation Trustee shall donate such amount to the American Bankruptcy Institute Endowment Fund, a not-for-profit nonreligious organization dedicated to, among other things, promoting research and scholarship in the area of insolvency, free of any restrictions thereon, notwithstanding any federal or state escheat laws to the contrary.

**D.      Delivery of Distributions**

Distributions to Holders of Allowed Claims shall be made (a) at the addresses set forth on the proofs of claim Filed by such Holders, (b) at the addresses reflected in the Schedules

if no proof of claim has been Filed, or (c) at the addresses set forth in any written notices of address changes delivered to the Debtors or Liquidation Trustee, as applicable. If any Holder's distribution is returned as undeliverable, the Liquidation Trustee shall have no responsibility to determine the current address of such Holder, and no further distributions to such Holder shall be made unless and until the Liquidation Trustee is notified of such Holder's then current address, at which time all missed distributions shall be made to such Holder without interest. The responsibility to provide the Liquidation Trustee a current address of a Holder of Claims shall always be the responsibility of such Holder. Amounts with respect to undeliverable distributions made by the Liquidation Trustee shall be held in trust on behalf of the Holder of the Claim to which they are payable by the Liquidation Trust until the earlier of the date that such undeliverable distributions are claimed by such Holder and ninety (90) days after the date the undeliverable distributions were made.

### E. **Application of Distribution Record Date**

At the close of business on the Distribution Record Date, the claims registers for all Claims shall be closed, and there shall be no further changes in the record holders of Claims. Except as provided herein, the Liquidation Trustee shall not have any obligation to recognize any transfer of Claims occurring after the Distribution Record Date and shall be entitled instead to recognize and deal for all purposes hereunder with only those record holders stated on the claims registers as of the close of business on the Distribution Record Date.

### F. **Withholding, Payment, and Reporting Requirements with Respect to Distributions**

51

All distributions under the Plan to be made by the Liquidation Trustee shall, to the extent applicable, comply with all tax withholding, payment, and reporting requirements imposed by any federal, state, provincial, local, or foreign taxing authority, and all distributions shall be subject to any such withholding, payment, and reporting requirements.

The Liquidation Trustee shall be authorized to take any and all actions that may be necessary or appropriate to comply with such withholding, payment, and reporting requirements.  The Liquidation Trustee may require, in its sole and absolute discretion and as a condition to the receipt of any distribution, that the Holder of an Allowed Claim complete and return to the Liquidation Trust the appropriate Form W-8 or Form W-9 of each Holder.

Notwithstanding any other provision of the Plan, (a) each Holder of an Allowed Claim that is to receive a distribution pursuant to the Plan shall have sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed by any Governmental Unit, including income, withholding, and other tax obligations, on account of such distribution, and including, in the case of any Holder of a Disputed Claim that has become an Allowed Claim, any tax obligation that would be imposed upon the Liquidation Trust in connection with such distribution, and (b) no distribution shall be made to or on behalf of such Holder pursuant to the Plan unless and until such Holder has made arrangements reasonably satisfactory to the Liquidation Trustee for the payment and satisfaction of such withholding tax obligations or such tax obligation that would be imposed upon the Liquidation Trust in connection with such distribution.

**G.**     **Setoffs**

The Liquidation Trust may, but shall not be required to, set off against any Claim, and the payments or other distributions to be made pursuant to the Plan in respect of such Claim, claims of any nature whatsoever that the Debtors or the Liquidation Trust may have against the Holder of such Claim; *provided, however*, that neither the failure to do so nor the allowance of any Claim hereunder shall constitute a waiver or release by the Liquidation Trust of any such claim that it may have against such Holder.

Holders of Claims can only exercise setoff rights against the Liquidation Trust if such setoff was formally asserted in a timely Filed proof of Claim or in a pleading Filed with the Bankruptcy Court prior to entry of the Confirmation Order

**H.**     **Forfeiture of Distribution**

If the Holder of a Claim fails to cash a check payable to it or fails to claim an undeliverable distribution within the time period set forth in Article VII.D, of the Plan, or fails to complete and return to the Liquidation Trust the appropriate Form W-8 or Form W-9 within ninety (90) days of the request by the Liquidation Trust for the completion and return to it of the appropriate form pursuant to Article VII.F of the Plan, then such Holder shall be (i) deemed to have forfeited its right to any reserved and future distributions from the Liquidation Trust, (ii) any Liquidation Trust Interests held by such Holder shall be deemed cancelled, and (iii) the Claims of such Holder shall be forever barred.  In the event the Liquidation Trustee determines, in its sole discretion, that any such amounts are too small in total to redistribute cost-effectively to the Liquidation Trust Beneficiaries, the Liquidation Trustee shall donate them to the American

53

Bankruptcy Institute Endowment Fund, a not-for-profit nonreligious organization dedicated to, among other things, promoting research and scholarship in the area of insolvency, free of any restrictions thereon, notwithstanding any federal or state escheat laws to the contrary.

## VIII.

## PROCEDURES FOR RESOLUTION OF DISPUTED CLAIMS AND DISTRIBUTIONS WITH RESPECT THERETO

### A.      Authority to Object to Claims

As of the Effective Date, the Liquidation Trustee shall have the exclusive authority to file objections, settle, compromise, withdraw or litigate to judgment objections to all Claims.

In addition to any other available remedies or procedures with respect to Tax issues or liabilities or rights to Tax refunds, the Liquidation Trust , at any time, may utilize (and receive the benefits of) section 505 of the Bankruptcy Code with respect to: (1) any Tax issue or liability or right to a Tax refund relating to an act or event occurring prior to the Effective Date; or (2) any Tax liability or right to a Tax refund arising prior to the Effective Date.  If the Liquidation Trust utilizes section 505(b) of the Bankruptcy Code, the Bankruptcy Court will determine the amount of the subject Tax liability or right to a Tax refund in the event that the appropriate Governmental Unit timely determines a Tax to be due in excess of the amount indicated on the subject return.

### B.      Time to Object to Claims and Settlement of Disputed Claims

Objections to Claims by the Liquidation Trustee shall be filed by the Claims Objection Deadline, provided however, that the Liquidation Trustee may each seek extension(s)

of such deadline subject to Bankruptcy Court approval and with notice only to parties that have requested such notice pursuant to Bankruptcy Rule 2002. The Liquidation Trustee shall be authorized to settle, or withdraw any objections to, any Disputed Claim following the Effective Date without further notice to Creditors or authorization of the Bankruptcy Court, in which event such Claim shall be deemed to be an Allowed Claim in the amount compromised for purposes of this Plan. Distributions shall only be made on account of Allowed Claims.

## C.    Estimation of Claims

The Liquidation Trustee may at any time request that the Bankruptcy Court estimate any contingent or unliquidated Claim pursuant to section 502(c) of the Bankruptcy Code, regardless of whether the Debtors have previously objected to such Claim or whether the Bankruptcy Court has ruled on such objection. The Bankruptcy Court shall retain jurisdiction to estimate any Claim at any time during litigation concerning any such Claim, including during the pendency of any appeal relating to such objection. In the event the Bankruptcy Court so estimates any contingent or unliquidated Claim, that estimate amount shall constitute the Allowed amount of the Claim. Unless otherwise ordered by the Bankruptcy Court, unliquidated Claims shall be estimated at $0 for purposes of distributions and calculation of the Disputed Claims Reserve.

DOCS_SF:91641.24 10821/007

## IX.

## TREATMENT OF EXECUTORY
## CONTRACTS AND UNEXPIRED LEASES

**A.**    **Rejection of Executory Contracts and Unexpired Leases**

Pursuant to section 365(a) of the Bankruptcy Code, any executory contract or

unexpired lease (excluding any contracts of insurance in favor of, or that benefit, the Debtors' or

the Estates) that (i) has not expired by its own terms on or prior to the Effective Date, (ii) has not

been previously rejected by an order of the Bankruptcy Court; (iii) are not listed for assumption

by the Debtors as of the Effective Date in the Plan Supplement to be filed and served on affected

non-Debtor counterparties; (iii) as to which a motion for approval of the assumption or rejection

of such contract of lease has been Filed and served prior to the Effective Date; (iv) that were

previously sold, conveyed or otherwise assigned pursuant to Final Order; and (v) has not been

assumed, assumed and assigned, or rejected with the approval of the Bankruptcy Court; shall be

deemed rejected pursuant to section 365 of the Bankruptcy Code as of the Effective Date.  The

Confirmation Order shall constitute the approval of the rejection of executory contracts and

unexpired leases pursuant to this section of the Plan and sections 365(a) and 1123(b)(2) of the

Bankruptcy Code.

**B.**    **Bar Date for Rejection Damages**

If the rejection of an executory contract or unexpired lease pursuant to the Plan or

otherwise gives rise to a Claim by the other party or parties to such contract or lease, such Claim

will be forever barred and will not be enforceable against the Debtors or the Liquidation Trust, as

applicable, unless a proof of Claim is Filed and served on the Liquidation Trustee and its counsel

56

within thirty (30) days after the earlier of (a) Effective Date or (b) service of a notice that the

executory contract or unexpired lease has been rejected.  All such Claims for which proofs of

Claim are required to be Filed, if Allowed, will be, and will be treated as, General Unsecured

Claims, subject to the provisions of the Plan.

**X.**

**RELEASES, INJUNCTIONS,
EXCULPATION AND RELATED PROVISIONS**

**A.**   **Injunctions**

    **1.**   **Generally**

Unless otherwise provided in the Plan or the Confirmation Order, all injunctions

and stays provided for in the Chapter 11 Cases pursuant to sections 105 and 362 of the

Bankruptcy Code or otherwise in effect on the Confirmation Date, will remain in full force and

effect until the Effective Date.

    **2.**   **Injunction Related to Rights of Action and
Claims, Administrative Expenses and Interests**

*Except as provided in the Plan or in the Confirmation Order, as of the Effective*

*Date, all Entities that have held, currently hold or may hold a Claim, Administrative Expense,*

*Interest or other debt or liability against or in the Debtors are permanently enjoined from*

*taking any of the following actions against property of the Debtors or their Estates, and the*

*Liquidation Trust on account of all or such portion of any such Claims, Administrative*

*Expenses, Interests, debts or liabilities:  (a) commencing or continuing, in any manner or in*

*any place, any action or other proceeding; (b) enforcing, attaching, collecting or recovering in*

57

*any manner any judgment, award, decree or order, (c) creating, perfecting or enforcing any*

*lien or encumbrance; and (d) commencing or continuing, in any manner or in any place, any*

*action that does not comply with or is inconsistent with the provisions of the Plan.*

3.    **Injunction Related to CCC Class 5 Claims**
      **Pending Completion of ADR Procedures**

*Except as provided in the Confirmation Order, as of the Effective Date, all*

*Holders of CCC Class 5 Claims are prohibited from taking any of the following actions for the*

*purpose of, directly or indirectly, litigating, collecting, recovering, or receiving payment of, on*

*or with respect to any CCC Class 5 Claims, from or against CCC, until such CCC Class 5*

*Claim Holder participates in the ADR Procedures attached as Exhibit B to the Plan,*

*including, but not limited to: (a) commencing, conducting or continuing in any manner,*

*directly or indirectly, any suit, action or other proceeding (including a judicial, arbitral,*

*administrative or other proceeding) in any forum against or affecting the Debtors and/or CCC*

*or any property or interests in property of the Debtors and/or CCC; and (b) proceeding in any*

*manner in any place with regard to any matter that is subject to resolution pursuant to the*

*ADR Procedures, except in conformity and compliance therewith.*

*Pursuant to the terms of the ADR Procedures, if an Unsuccessful Mediation*

*Filing (as defined in the ADR Procedures) is filed in accordance with the ADR Procedures,*

*the injunction set forth in Section X.A.3 of this Plan against the applicable Holder of the CCC*

*Class 5 Claim shall be modified within two business days of the filing of the Unsuccessful*

*Mediation Program to permit such holder to liquidate and fix the value of such claim.*

B.    **Exculpation**

As of, and subject to the occurrence of the Effective Date, for good and
valuable consideration, the Exculpated Parties will neither have nor incur any liability to
any Person or Entity for any act taken or omitted to be taken, on or after the Petition Date,
in connection with, or related to, the formulation, preparation, dissemination,
implementation, administration, Confirmation or consummation of the Plan or any
contract, instrument, waiver, release or other agreement or document created or entered
into, in connection with the Plan, or any other act taken or omitted to be taken in
connection with the Chapter 11 Cases up to and including the Effective Date; provided,
however, that the foregoing provisions of this subsection will have no effect on the liability
of any Person or Entity that results from any such act or omission that is determined in a
Final Order to have constituted gross negligence, willful misconduct or fraud.

C.    **Releases and Released Matters**

(a)    **Releases by Debtors.**  As of the Effective Date, for good and valuable
consideration, including, without limitation, the consideration provided under the Plan
with respect to the Settlement Consideration, the Debtors, for themselves and the Estates
and the Committee, for themselves and their predecessors, assigns and heirs, as applicable,
irrevocably, unconditionally and generally releases and discharges all of the Released
Parties, from any and all Claims, demands, damages, debts, liabilities, accounts, interests,
reckonings, obligations, costs (including attorneys' fees), expenses, liens, promises,
agreements, contracts, covenants, actions and causes of action of every kind and nature

59

whatsoever whether known or unknown, foreseen or unforeseen, liquidated or unliquidated, fixed or contingent, matured or unmatured, in law or equity or otherwise (the "Released Claims"), which the Debtors or their Estates, or the Committee, ever had, now have or hereafter can, will or may have against any of the Released Parties, from the beginning of time to the Effective Date; *provided, however*, that (i) the release of the Released Claims against the Brinkmann Parties shall not occur until the date of the Liquidation Trustee's indefeasible receipt of the full amount of the Settlement Consideration; and (ii) release of the Released Claims against CCC shall not occur until the date of the Liquidation Trustee's indefeasible receipt of the CCC Payment.

(b)    Entry of the Confirmation Order shall constitute the (i) the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the releases set forth in this Article X.C of the Plan and, (ii) the Bankruptcy Court's finding that such releases are (1) in exchange for good and valuable consideration provided by the Released Parties and a good faith settlement and compromise of the Released Claims, (2) in the best interests of the Debtors, and the Estates, (3) fair, equitable and reasonable; and (4) given and made after notice and opportunity for hearing.

(c)    Releases by Creditors. As of the Effective Date, each Holder of a Claim that is unimpaired and that is not entitled to vote on this Plan shall be deemed to grant the release of the Released Claims in this section X.C in favor of the Released Parties. As of the Effective Date, each Holder of a Claim in Class 3 and Class 5 shall be deemed to grant the release of the Released Claims in this section X.C in favor of the Released Parties unless

DOCS_SF:91641.24 10821/007

such holder timely submits a Release Opt-Out indicating such holder's decision not to grant the release of the Released Claims set forth in this section X.C.  Holders of Claims in Class 4(A-C) are providing a release pursuant to the Global Settlement Agreement.

## XI.

## NO REGULATED RATE CHANGE WITHOUT GOVERNMENT APPROVAL

The Debtors do not charge any rates for purposes of section 1129(a)(6) that are regulated by any governmental regulatory commission with jurisdiction under applicable non-bankruptcy law.

## XII.

## EXEMPTION FROM CERTAIN TRANSFER TAXES

Pursuant to section 1146(c) of the Bankruptcy Code, any transfers by the Debtors pursuant to the Plan will not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, stamp act, real estate transfer tax, mortgage recording tax or other similar Tax or governmental assessment.  Consistent with the foregoing, each recorder of deeds or similar official for any county, city or Governmental Unit or parish in which any instrument hereunder is to be recorded shall, pursuant to the Confirmation Order, be ordered and directed to accept such instrument, without requiring the payment of any documentary stamp tax, deed stamps, stamp tax, transfer tax, intangible tax or similar tax.

DOCS_SF:91641.24 10821/007

# XIII.

## RETENTION OF JURISDICTION AND MISCELLANEOUS MATTERS

### A.    Retention of Jurisdiction

Notwithstanding the entry of the Confirmation Order or the occurrence of the Effective Date, the Bankruptcy Court will retain jurisdiction over the Chapter 11 Cases and any of the proceedings related to the Chapter 11 Cases pursuant to section 1142 of the Bankruptcy Code and 28 U.S.C. § 1334 to the fullest extent permitted by the Bankruptcy Code and other applicable law, including, without limitation, such jurisdiction as is necessary to ensure that the purpose and intent of the Plan are carried out.  Without limiting the generality of the foregoing, the Bankruptcy Court shall retain jurisdiction for the following purposes:

> (1)    establish the priority or secured or unsecured status of, allow, disallow, determine, liquidate, classify, or estimate any Claim, Administrative Expense or Interest (including, without limitation and by example only, determination of Tax issues or liabilities in accordance with section 505 of the Bankruptcy Code), resolve any objections to the allowance or priority of Claims, Administrative Expenses or Interests, or resolve any dispute as to the treatment necessary to reinstate a Claim, Administrative Expense or Interest pursuant to the Plan;

> (2)    grant or deny any applications for allowance of compensation or reimbursement of expenses authorized pursuant to the Bankruptcy Code or the Plan, for periods ending on or before the Effective Date;

> (3)    resolve any matters related to the rejection of any executory contract or unexpired lease to which the Debtors are a party or with respect to which the Debtors may be liable, and to hear, determine and, if necessary, liquidate any Claims or Administrative Expenses arising therefrom;

> (4)    ensure that distributions to Holders of Allowed Claims and Administrative Expenses are made pursuant to the provisions of the Plan, and to effectuate performance of the provisions of the Plan;

> (5)    decide or resolve any motions, adversary proceedings, contested or litigated matters and any other matters and grant or deny any applications

involving the Debtors that may be pending before the Effective Date or that may be commenced by the Liquidating Trustee thereafter as provided in the Plan;

(6)    enter such orders as may be necessary or appropriate to implement or consummate the provisions of the Plan and all contracts, instruments, releases, indentures and other agreements or documents created in connection with the Plan, the Disclosure Statement or the Confirmation Order, except as otherwise provided in the Confirmation Order or in the Plan, including, without limitation, any stay orders as may be appropriate in the event that the Confirmation Order is for any reason reversed, stayed, revoked, modified, supplemented or amended;

(7)    resolve any cases, controversies, suits or disputes that may arise in connection with the consummation, interpretation or enforcement of the Plan or the Confirmation Order;

(8)    subject to the restrictions on modifications provided in any contract, instrument, release, indenture or other agreement or document created in connection with the Plan, modify the Plan before or after the Effective Date pursuant to section 1127 of the Bankruptcy Code or modify the Disclosure Statement, the Confirmation Order or any contract, instrument, release, indenture or other agreement or document created in connection with the Plan, the Disclosure Statement or the Confirmation Order, or remedy any defect or omission or reconcile any inconsistency in any Bankruptcy Court order, the Plan, the Disclosure Statement, the Confirmation Order or any contract, instrument, release, indenture or other agreement or document created in connection with the Plan, the Disclosure Statement, the Confirmation Order or any other related documents, in such manner as may be necessary or appropriate to consummate the Plan, to the extent authorized by the Bankruptcy Code;

(9)    issue injunctions, enter and implement other orders or take such other actions as may be necessary or appropriate to restrain interference by any Person with the consummation, implementation or enforcement of the Plan or the Confirmation Order,

(10)    consider and act on the compromise and settlement of any Claim against, or Retained Right of Action of the Debtors or Liquidation Trust;

(11)    decide or resolve any Retained Rights of Action under the Bankruptcy Code;

(12)    enter such orders as may be necessary or appropriate in connection with the recovery of the assets of the Debtors or Liquidation Trust, as applicable, wherever located;

63

(13)     hear and decide any objections to Claims brought by the Debtors or Liquidation Trust;

(14)     hear and decide any litigation, including any Avoidance Claims, brought by the Liquidation Trust;

(15)     hear and determine any motions or contested matters involving Priority Tax Claims or Taxes either arising prior (or for periods including times prior) to the Effective Date or relating to the administration of the Chapter 11 Case, including, without limitation (i) matters involving federal, state and local Taxes in accordance with sections 346, 505 and 1146 of the Bankruptcy Code, (ii) matters concerning Tax refunds due for any period including times prior to the Effective Date, and (iii) any matters arising prior to the Effective Date affecting Tax attributes of the Debtors;

(16)     determine such other matters as may be provided for in the Confirmation Order or as may from time to time be authorized under the provisions of the Bankruptcy Code or any other applicable law;

(17)     enforce all orders, judgments, injunctions, releases, exculpations, indemnifications and rulings issued or entered in connection with the Chapter 11 Cases or the Plan;

(18)     remand to state court any claim, cause of action, or proceeding involving any of the Debtors that was removed to federal court, in whole or in part in reliance upon 28 U.S.C. § 1334;

(19)     determine any other matters that may arise in connection with or relate to the Plan, the Disclosure Statement, the Confirmation Order or any contract, instrument, release, indenture or other agreement or document created in connection with the Plan, the Disclosure Statement or the Confirmation Order, except as otherwise provided in the Plan;

(20)     determine any other matter not inconsistent with the Bankruptcy Code; and

(21)     enter an order or final decree concluding the Chapter 11 Cases.

DOCS_SF:91641.24 10821/007

## XIV.

## MISCELLANEOUS MATTERS

### A.    Final Decree

On the Effective Date, all of the Debtors' Chapter 11 Cases aside from ODC,

MLC and NCOC shall be closed without any further order of this Court.  At any time following

the Effective Date, the Liquidation Trustee will be authorized to file a motion for the entry of a

final decree closing the Chapter 11 Cases of ODC, MLC and NCOC, pursuant to section 350 of

the Bankruptcy Code.

### B.    Records

Upon the entry of a final decree closing all of the Chapter 11 Cases, unless

otherwise ordered by the Bankruptcy Court, the Liquidation Trustee shall offer to transfer to the

Brinkman Parties, with all expenses and costs related to the foregoing to be paid by the

Brinkmann Parties to the Liquidation Trustee in advance, the following property to the extent in

the dominion, control or possession of the Liquidation Trustee:

> Brinkmann.net Domain and IT System.  Access to the Debtors' dormant
> intellectual technology systems, all backup copies and data files in storage at Iron
> Mountain (or at any other storage location), including the email network, and
> transfer of any billing.
>
> Accounting.  All accounting data, records and backup copies and data kept on the
> Debtors' former intellectual technology systems in storage at Iron Mountain (or at
> any other storage location), and all accounting records kept by Debtors on
> QuickBooks and all backup copies, and the transfer of any billing records.
>
> Physical Files and Records.  All files and records (including billing records)
> retained by Debtors onsite at any location and in storage at Iron Mountain (or at
> any other storage location), specifically those accounting, corporate and other
> records retained by Debtors dated from 2007 to date that they were located at the
> Debtors' former locations located at (a) 4215 McEwen Road, Dallas, Texas; and

65

(b) 4821 Simonton Road, Dallas, Texas, and any existing files and records and backup copies kept by Debtors (the documents, records, files and other property referenced in this paragraph (1) through (3), the "<u>Brinkmann Records</u>")

If the Brinkmann Parties do not respond to the Liquidating Trustee's offer to transfer any or all of the Brinkmann Records within 5 days, then the Liquidating Trustee may destroy or otherwise dispose of all records maintained by the Liquidating Trustee or previously maintained by the Debtors, including the Brinkmann Records. Notwithstanding anything to the contrary (but subject to the above procedures regarding the transfer of the Brinkmann Records to the Brinkman Parties), the Liquidation Trustee may, without Bankruptcy Court approval, destroy any documents or records that it reasonably believes are no longer required to effectuate the terms and conditions of the Plan.

The Brinkmann Records are being transferred to the Brankmann Parties on an "as is where is basis" and neither the Liquidation Trust, Liquidation Trustee nor any of their Professional Persons are making any representations or warranties concerning the Brinkmann Records. Upon receipt of the Brinkmann Records, the Brinkmann Parties shall release any and all potential claims against the Liquidation Trust, Liquidation Trustee, or any of their Professional Persons concerning, regarding or relating to the Brinkmann Records.

## C.    <u>Headings</u>

The headings used in the Plan are inserted for convenience only and neither constitute a portion of the Plan nor in any manner affect the construction of the provisions of the Plan.

**D.**    **Services by and Fees for Professionals and Certain Parties**

All budgeted fees and expenses for each Professional Person shall be maintained in the Professional Fee Account through the Effective Date.  Notwithstanding any other provision herein or in the Plan, Allowed Professional Fee Claims will be paid from the Professional Fee Account in accordance with the terms of the order(s) authorizing such payments as promptly as possible after the Effective Date for any outstanding amounts due as of the Effective Date, and as soon as practicable thereafter as such obligation to pay becomes due unless otherwise agreed upon by the applicable Professional Person.  After the Debtors' Professional Persons receive full and final payment of all amounts owed pursuant to their final Fee Applications, they shall return any excess retainers to the Liquidation Trust within two (2) Business Days after receiving such final fee payment, provided, however, if on the Effective Date, any of the Debtors' Professional Persons have calculated that any of such Professional Person's retainers are greater than the outstanding Professional Fee Claim (including claims for any unpaid holdback amounts or unreimbursed expenses) owed to such Professional Person, any excess retainer amount shall be returned to the Liquidation Trust within five (5) Business Days after the Effective Date.

From and after the Effective Date, the Liquidation Trustee will in the ordinary course of business and without the necessity for any approval by the Bankruptcy Court, pay the reasonable fees and expenses of professionals thereafter incurred by the Liquidation Trust.

## E.    **Bar Date for Administrative Expenses**

Requests for payment of all Administrative Expenses, other than for those for which a Bar Date was previously set (including the Bar Dates set by the Bar Date Orders) or for which a request and/or proof of Claim has previously been filed, must be Filed and served on the Liquidation Trustee and the United States Trustee by no later than thirty (30) days after the Effective Date.  Any Administrative Expense subject to a prior bar date and not filed (including the Bar Dates set by the Bar Date Orders) shall be considered Disputed Claims and not Timely Filed.  The Liquidation Trustee will have until ninety (90) days after the Effective Date to bring an objection to a Timely Filed request for payment of an Administrative Expense (as may be extended pursuant to this section, the "Administrative Expense Objection Deadline"), provided that the Liquidation Trustee may seek extension(s) thereof subject to Bankruptcy Court approval and with notice only to parties that have requested such notice pursuant to Bankruptcy Rule 2002.  Nothing in the Plan will prohibit the Liquidation Trustee from paying Administrative Expenses in the ordinary course in accordance with applicable law during or after the Chapter 11 Cases, but after the Effective Date, the Liquidation Trustee's obligation to pay an Administrative Expense will depend upon the claimant's compliance with this section and such Administrative Expense being Allowed under the provisions of the Plan.

## F.    **Non-Voting Equity Securities**

If and to the extent applicable, the Plan Proponents will comply with the provisions of section 1123(a)(6) of the Bankruptcy Code.

**G.**    **Subordination Agreements**

Pursuant to section 510(a) of the Bankruptcy Code, to the extent there is any
subordination agreement in place between creditors that is enforceable under nonbankruptcy law,
the Liquidation Trustee shall honor such subordination agreement and turn over any distributions
required to be turned over pursuant to the terms of such agreements and the Bankruptcy Code.

**H.**    **Notices**

All notices and requests in connection with the Plan shall be in writing and shall
be hand delivered or sent by mail or facsimile addressed to:

Debtors:

Mr. David M. Baker
Aurora Management Partners
112 South Tryon Street
Suite 1770
Charlotte, North Carolina 28284
T: 704-377-6010
F: 704-943-9893

Debtors' Counsel:

Pachulski Stang Ziehl & Jones LLP
Attn:   Jeffrey N. Pomerantz, Esq.
        Joshua M. Fried, Esq.
10100 Santa Monica Blvd.
13th Floor
Los Angeles, CA 90067-4003
T: 310.277.6910
F: 310.201.0760

DOCS_SF:91641.24 10821/007

Liquidation Trustee:

Lowenstein Sandler LLP
Attn:   Bruce S. Nathan, Esq.
        Eric S. Chafetz, Esq.
1251 Avenue of the Americas
New York, New York 10020
T: 212/262-6700
F: 212/262-7402

Blank Rome LLP
Attn:   Victoria A. Guilfoyle, Esq.
1201 Market Street, Suite 800
Wilmington, DE 19801
Telephone: 302/425-6404
Facsimile: 302/428-5101

All notices and requests to any Person of record holding any Claim,

Administrative Expense or Interest shall be sent to such Person at the Person's last known

address or to the last known address of the Person's attorney of record.  Any such Person may

designate in writing any other address for purposes of this section of the Plan, which designation

will be effective on receipt.

**I.      Successors and Assigns**

The rights, duties and obligations of any Person named or referred to in the Plan

shall be binding upon, and shall inure to the benefit of, the successors and assigns of such

Person.

**J.      Severability of Plan Provisions**

If, prior to Confirmation, any non-material term or provision of the Plan is held by

the Bankruptcy Court to be invalid, void or unenforceable, the Bankruptcy Court will have the

power to alter and interpret such term or provision to make it valid or enforceable to the

maximum extent practicable, consistent with the original purpose of the term or provision held to

70

be invalid, void or unenforceable, and such term or provision will then be applicable as altered or interpreted. Notwithstanding any such holding, alteration or interpretation, the remainder of the terms and provisions of the Plan will remain in full force and effect and will in no way be affected, impaired or invalidated by such holding, alteration or interpretation. The Confirmation Order will constitute a judicial determination that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to their terms.

Neither the filing of the Plan nor any statement or provision contained in the Plan or in the Disclosure Statement, nor the taking by any party in interest of any action with respect to the Plan, shall (a) be or be deemed to be an admission against interest, and (b) until the Effective Date, be or be deemed to be a waiver of any rights any party in interest may have (i) against any other party in interest, or (ii) in any of the assets of any other party in interest, and, until the Effective Date, all such rights are specifically reserved. In the event that the Plan is not confirmed or fails to become effective, neither the Plan nor the Disclosure Statement or any related documents, nor any statement contained in the Plan or in the Disclosure Statement or any related documents, may be used or relied upon in any manner in any suit, action, proceeding or controversy within or without these Chapter 11 Cases involving the Debtors, except with respect to Confirmation of the Plan.

## K.    No Waiver

Neither the failure of the Debtors to list a Claim in the Debtors' Schedules, the failure of the Debtors to object to any Claim or Interest for purposes of voting, the failure of the

71

Debtors to object to a Claim or Administrative Expense prior to Confirmation or the Effective

Date, the failure of the Debtors to assert a Retained Right of Action prior to Confirmation or the

Effective Date, the absence of a proof of Claim having been filed with respect to a Claim, nor

any action or inaction of the Debtors or any other party with respect to a Claim, Administrative

Expense, Interest or Right of Action other than a legally effective express waiver or release shall

be deemed a waiver or release of the right of the Debtors or the Liquidation Trustee, before or

after solicitation of votes on the Plan or before or after Confirmation or the Effective Date to (a)

object to or examine such Claim, Administrative Expense or Interest, in whole or in part or (b)

retain and either assign or exclusively assert, pursue, prosecute, utilize, otherwise act or

otherwise enforce any Rights of Action.

**L.     Inconsistencies**

In the event the terms or provisions of the Plan are inconsistent with the terms and

provisions of the exhibits to the Plan or documents executed in connection with the Plan,

excluding the Liquidation Trust Agreement, the terms of the Plan shall control.

**M.     U.S. Trustee Fees**

All fees payable on or before the Effective Date pursuant to section 1930 of title

28 of the United States Code shall be paid by the Debtors on or before the Effective Date. From

and after the Effective Date, the Liquidation Trustee shall pay, on behalf of the Debtors, the fees

assessed against their Estates until such time as the particular chapter 11 case is closed,

dismissed or converted.  In addition, the Liquidation Trustee shall file post confirmation

quarterly reports in conformity with the U.S. Trustee guidelines until entry of an order closing or

converting the Chapter 11 Cases.

**N.**     **Plan Supplement**

No later than ten (10) days prior to the Confirmation Hearing, the Plan Proponents

shall File with the Bankruptcy Court the Plan Supplement, which shall contain such substantially

final agreements, other documents and information as may be necessary or appropriate to

effectuate and further evidence the terms and conditions of the Plan. Holders of Claims or

Interests may obtain a copy of the Plan Supplement upon written request to the Claims Agent.

**O.**     **Preservation of Insurance**

The Debtors' release from and payment of Claims as provided in the Plan shall

not diminish or impair the enforceability of any insurance policy that may cover any Claims.

**P.**     **Debtors' Privileges as to Rights of Action**

Effective as of the Effective Date, all Privileges of the Debtors relating to the

Liquidation Trust Assets (which include the Rights of Action) shall be deemed transferred,

assigned, and delivered to the Liquidation Trust, without waiver or release, and shall vest with

the Liquidation Trust. The Liquidation Trustee shall hold and be the beneficiary of all such

Privileges and entitled to assert such Privileges. No such Privilege shall be waived by

disclosures to the Liquidation Trustee of the Debtors' documents, information, or

communications subject to attorney-client privileges, or other immunities (including those

related to common interest or joint defense with third parties), or protections from disclosure

held by the Debtors. The Debtors' Privileges relating to the Liquidation Trust Assets will remain

73

subject to the rights of third parties under applicable law, including any rights arising from the common interest doctrine, the joint defense doctrine, joint attorney-client representation, or any agreement. Nothing contained herein or in the Confirmation Order, nor any Professional Person's compliance herewith and therewith, shall constitute a breach of any Privileges of the Debtors.

**Q.     Certain Actions**

By reason of entry of the Confirmation Order, prior to, on or after the Effective Date (as appropriate), all matters provided for under the Plan that would otherwise require approval of directors or stockholders of the Debtors under the Plan, including, without limitation, (i) the distribution of Cash pursuant to the Plan, (ii) the adoption, execution, delivery, and implementation of all contracts, leases, instruments, releases, and other agreements or documents related to the Plan, and (iii) the adoption, execution, and implementation of other matters provided for under the Plan involving the company or organizational structure of the Debtors, shall be deemed to have occurred and shall be in effect prior to, on or after the Effective Date (as appropriate), pursuant to the applicable general corporation, limited liability, or partnership law of the states in which the Debtors are chartered, organized or incorporated, without any requirement of further action by the directors and stockholders of the Debtors.

**R.     Dissolution of Committee and Debtors' Professional Persons**

On the Effective Date, the Committee shall dissolve and all members, employees agents, and Professional Persons thereof shall be released and discharged for all rights and duties arising from or related to the Chapter 11 Cases. The Professional Persons retained by the

Committee and the members thereof will not be entitled to assert any fee claims for any services rendered or expenses incurred after the date on which the Committee is dissolved, except for reasonable fees for services rendered, and actual and necessary costs incurred, in connection with any applications for allowance of Professional Fees pending on the Effective Date or filed and served after the Effective Date pursuant to the Plan.

On the Effective Date, the Debtors' Professional Persons shall be deemed terminated, but may be re-hired in the Liquidation Trustee's discretion after the Effective Date.

## S.    Waiver of Stay

The Plan Proponents request as part of the Confirmation Order a waiver from the Bankruptcy Court of the fourteen (14) day stay of Bankruptcy Rule 3020(e) and, to the extent applicable, a waiver of the fourteen (14) day stay of Bankruptcy Rule 6004(h).

## T.    Substantial Consummation

On the Effective Date, the Plan shall be deemed substantially consummated under Bankruptcy Code sections 1101 and 1127(b).

## U.    Choice of Law

Except to the extent a rule of law or procedures is supplied by federal law (including but not limited to the Bankruptcy Code and the Bankruptcy Rules), this Plan shall be governed by, and construed in accordance with, the laws of the State of Delaware applicable to contracts executed in and to be performed in that State.

# XV.

## CONDITIONS TO EFFECTIVENESS

The Plan will not be consummated and the Effective Date will not occur unless and until: (A) the Confirmation Order is in a form acceptable to the Plan Proponents, (B) all documents to be provided in the Plan Supplement are in form and substance acceptable to the Plan Proponents, (C) the Confirmation Order shall be a Final Order, (D) Cash in the amount of not less than the Liquidation Trust Minimum Funding is transferred to the Liquidation Trust, (E) the Brinkmann Downpayment is released to the Debtors or the Liquidation Trust, as applicable, from account number M28996003 held at JPMorgan Chase Bank, N.A. and (F) the parcels of land covered by the deed of trust securing the Brinkmann Note shall be free and clear of any liens, claims or encumbrances. Any such waiver shall not require any notice, Bankruptcy Court order, or any further action.

# XVI.

## EFFECT OF CONFIRMATION

A. **Binding Effect of Confirmation**

Confirmation will bind the Debtors, all Holders of Claims, Administrative Expenses, or Interests and other parties in interest to the provisions of the Plan whether or not the Claim, Administrative Expense, or Interest of such Holder is Impaired under the Plan and whether or not the Holder of such Claim, Administrative Expense, or Interest has accepted the Plan.

DOCS_SF:91641.24 10821/007

**B.**     **Good Faith**

        Confirmation of the Plan shall constitute a finding that:  (i) the Plan has been proposed in good faith and in compliance with applicable provisions of the Bankruptcy Code; and (ii) all Persons' solicitations of acceptances or rejections of the Plan and the offer, issuance, sale, or purchase of a security offered or sold under the Plan have been in good faith and in compliance with applicable provisions of the Bankruptcy Code.

**C.**     **No Limitations on Effect of Confirmation**

        Nothing contained in the Plan shall limit the effect of Confirmation as described in section 1141 of the Bankruptcy Code.

## XVII.

## MODIFICATION OR WITHDRAWAL OF PLAN

**A.**     **Modification of Plan**

        The Plan Proponents may seek to amend or modify the Plan at any time prior to Confirmation in the manner provided by section 1127 of the Bankruptcy Code or as otherwise permitted by law without additional disclosure pursuant to section 1125 of the Bankruptcy Code, except as the Bankruptcy Court may otherwise order, and except as otherwise set forth herein, the Plan Proponents reserve the right to amend the terms of the Plan or waive any conditions to Confirmation, effectiveness or consummation, if the Plan Proponents determine that such amendments or waivers are necessary or desirable to confirm, effectuate or consummate the Plan.

77

**B.    Defects, Omissions and Amendments**

After the Effective Date, the Liquidation Trustee may apply to the Bankruptcy Court to remedy defects or omissions in the Plan or to reconcile inconsistencies in the Plan. The Plan may be altered or amended before or after Confirmation as provided in section 1127 of the Bankruptcy Code if, in the opinion of the Bankruptcy Court, the modification does not materially and adversely affect the interests of Holders of Claims, so long as the Plan, as modified, complies with sections 1122 and 1123 of the Bankruptcy Code and the Plan Proponents have complied with section 1125 of the Bankruptcy Code. The Plan may be altered or amended before or after the Confirmation Date but, prior to substantial consummation, in a manner which, in the opinion of the Bankruptcy Court, materially and adversely affects Holders of Claims, so long as the Plan, as modified, complies with Bankruptcy Code sections 1122 and 1123, the Plan Proponents have complied with Bankruptcy Code section 1125 and, after notice and a hearing, the Bankruptcy Court confirms such Plan, as modified, under Bankruptcy Code section 1129.

**C.    Withdrawal of Plan**

The Plan Proponents reserve the right to revoke and withdraw the Plan at any time prior to the Effective Date, in which case the Plan will be deemed to be null and void. If the Plan Proponents revoke or withdraw the Plan, or if Confirmation or the Effective Date does not occur, then: (i) the Plan will be null and void in all respects; (ii) any settlement or compromise embodied in the Plan (if any), assumption or rejection of executory contracts or unexpired leases affected by the Plan, and any document or agreement executed pursuant to the Plan, will be deemed null and void; and (iii) nothing contained in the Plan will: (a) constitute a waiver or

78

release of any Claims or Interests or Claims by the Plan Proponents against any other Entity; (b)

prejudice in any manner the rights of either of the Plan Proponents or any other Entity; or (c)

constitute an admission, acknowledgement, offer or undertaking of any sort by either of the Plan

Proponents or any other Entity.

*[Remainder of Page Intentionally Left Blank]*

DOCS_SF:91641.24 10821/007

## XVIII.

## __CONFIRMATION REQUEST__

The Plan Proponents request that the Bankruptcy Court confirm the Plan and that it do so, if applicable, pursuant to section 1129(b) of the Bankruptcy Code notwithstanding the rejection of the Plan by any Impaired Class.

Date: June 14, 2017

_/s/ David M. Baker_
David M. Baker
Chief Restructuring Officer

PACHULSKI STANG ZIEHL & JONES LLP
Jeffrey N. Pomerantz (CA Bar No. 143717)
James E. O'Neill (DE Bar No. 4042)
Joshua M. Fried (CA Bar No. 181541)
919 North Market Street, 17th Floor
Wilmington, DE 19801
Telephone: 302/652-4100
Facsimile: 302/652-4400
E-mail:      jpomerantz@pszjlaw.com
             joneill@pszjlaw.com
             jfried@pszjlaw.com

Counsel for the Debtors and Debtors in Possession

and

_/s/ Al Fennell_
Al Fennell, Pratt Industries, Inc.
Member of Official Committee
of Unsecured Creditors

LOWENSTEIN SANDLER LLP
Attn:   Bruce S. Nathan, Esq.
        Eric S. Chafetz, Esq.
1251 Avenue of the Americas
New York, New York 10020
T: 212/262-6700
F: 212/262-7402

BLANK ROME LLP
Attn:   Victoria A. Guilfoyle, Esq.
1201 Market Street, Suite 800
Wilmington, DE 19801
Telephone: 302/425-6404
Facsimile: 302/428-5101

Counsel for the Official Committee of Unsecured Creditors